UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL SCHILLER, *et al.*,

                              Plaintiffs,

        -v-

THE CITY OF NEW YORK, *et al.*,

                              Defendants.

No. 04 Civ. 7922 (RJS) (JCF)
ORDER[1]

RICHARD J. SULLIVAN, District Judge:

        Defendants have filed objections, pursuant to Rule 72(a) of the Federal Rules of Civil

Procedure, to a January 23, 2008 Memorandum and Order (the "January 23 Order") issued by the

Honorable James C. Francis IV, Magistrate Judge, granting Plaintiffs partial leave to amend their

complaints.  For the reasons stated below, the Court affirms the January 23 Order in its entirety.

I. Background

        The instant action involves thirty-seven cases that are part of a larger group of cases relating

to protests surrounding the 2004 Republican National Convention (the "RNC Cases"), which have

been consolidated before this Court and referred to Magistrate Judge Francis for general pretrial

purposes.[2]  Plaintiffs in this action were arrested by the New York Police Department (the "NYPD")

during the RNC.  The Court presumes the parties' familiarity with the facts and procedural history

----

[1] This Order should be docketed in the following cases: 04 Civ. 7922, 04 Civ. 7921, 04 Civ. 9216, 05 Civ. 5080, 05 Civ. 9985, 05 Civ. 9930, 05 Civ. 7623, 05 Civ. 7624, 05 Civ. 7668, 05 Civ. 7669, 05 Civ. 7670, 05 Civ. 7672, 05 Civ. 7673, 05 Civ. 7541, 05 Civ. 8453, 05 Civ. 9484, 05 Civ. 9738, 05 Civ. 9483, 04 Civ. 10178, 05 Civ. 3705, 05 Civ. 5152, 05 Civ. 5528, 05 Civ. 6780, 05 Civ. 1562, 05 Civ. 1563, 05 Civ. 1564, 05 Civ. 1565, 05 Civ. 1566, 05 Civ. 1567, 05 Civ. 1568, 05 Civ. 1570, 05 Civ. 1571, 05 Civ. 1572, 05 Civ. 7577, 05 Civ. 7579, 05 Civ. 7580, and 05 Civ. 9901.

[2] The RNC Cases, including the instant actions, were previously assigned to the Honorable Kenneth M. Karas, District Judge.  These actions were reassigned to the undersigned on October 2, 2007.

of this action, including those facts specifically related to the instant application. Below, the Court briefly recites only those facts necessary to resolution of the instant objections.

The original complaints in these thirty-seven RNC cases were filed in 2004 and 2005. Many of the Plaintiffs in these actions had amended their complaints previously and some of the proposed amended complaints are being amended for the third or fourth time. In August 2007, Plaintiffs filed the pending motions just as the three-year statute of limitations for Section 1983 claims approached. Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, the various Plaintiffs sought, *inter alia*, to: (1) add numerous Defendants and assert claims for individual supervisory liability; (2) challenge on both constitutional and state law grounds the alleged policy of the City of New York (the "City") of detaining and fingerprinting all persons arrested in connection with the RNC; (3) raise constitutional challenges to the City's alleged policy of fabricating false sworn statements supporting the arrests; (4) assert constitutional challenges to the City's parade ordinance[3] and to New York State's disorderly conduct statute;[4] and (5) make additional changes that are set forth in the proposed amended complaints.

Defendants filed a single opposition memorandum to Plaintiffs' motions to amend their complaints on October 23, 2007. (*See* No. 04 Civ. 7922, Docket Entry ("D.E.") 295.) In the January 23 Order, Magistrate Judge Francis granted in part and denied in part Plaintiffs' motions to amend their complaints. On February 25, 2008, Defendants filed objections pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, seeking to set aside portions of the January 23 Order (the

---

[3] New York City prohibits parading without a permit. *See* N.Y.C. Admin. Code § 10-110(a), (c).

[4] *See* N.Y. Penal Law, § 240.20(5), (6) (McKinney 2008).

"Objections").[5]  (*See* Defs.' Mem., No. 04 Civ. 7922, D.E. 267.)

## II. Standard of Review

### A. Leave to Amend a Complaint

"A party may amend its pleadings once as a matter of course," and in all other cases it may do so "only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(1), (2).  While the decision whether to grant leave "is within the sound discretion of the court," the law is clear that leave to amend the pleadings "should be granted '[i]n the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party . . . .'"  *Abbatiello v. Monsanto*, 571 F. Supp. 2d 548, 552 (S.D.N.Y. 2008) (quoting *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) and *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Therefore, while such leave shall generally be "freely given," "the trial court [is] required to take into account any prejudice that might result to the party opposing the amendment."  *Ansam Assoc., Inc., v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (quoting *Zenith Radio Corp.*

---

[5] Defendants have also submitted a letter to the Court dated May 16, 2008 "advis[ing] the Court of a recent decision by the United States Supreme Court," which "further supports" their argument that "[P]laintiffs' theory that it was unconstitutional for the NYPD to arrest them . . . because they engaged in only 'minor' violations of the law — is defective as a matter of law."  (*See* Defs.' Lt'r dated May 16, 2008, citing the Supreme Court's decision in *Virginia v. Moore*, __ U.S. __, 128 S. Ct. 1958 (2008).)  In *Virginia*, the Supreme Court addressed the issue of "whether a police officer violates the Fourth Amendment by making an arrest [for a misdemeanor traffic infraction] based on probable cause but prohibited by state law," which instead required that a summons be issued.  *See Virginia*, 128 S. Ct. at 1601-02.  The Supreme Court "conclude[d] that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections."  *Id.* at 1607.  Plaintiffs, by contrast, have alleged, *inter alia*, that the City engaged in "indiscriminate mass arrests without individualized determinations of probable cause" and "use[d] mass arrests to unlawfully suppress First Amendment conduct."  (*See* Decl. of Clare Norins in Support of Plaintiffs' Motion for Leave to File Second Amended Complaint, Ex. A, ¶¶ 1, 70, No. 04 Civ. 9216, D.E. 200 (emphasis omitted).)  Accordingly, the Court finds that the Supreme Court's holding in *Virginia* does not merit any change in the analysis employed or the conclusions reached by Judge Francis in the January 23 Order.

*v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971) (internal quotation marks omitted)).  A district court's denial of a party's request for leave to amend a complaint is reviewed for abuse of discretion.  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2000).

### B. Review of a Magistrate's Non-Dispositive Order

Rule 72(a) and the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(A), provide that a district court may designate a magistrate judge to hear and decide non-dispositive pretrial matters.  The district court shall reverse a magistrate judge's order only where the ruling is "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007).  An order is "clearly erroneous" if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Thompson v. Keane*, No. 95 Civ. 2442 (SHS), 1996 WL 229887, at *1 (S.D.N.Y. May 6, 1996) (internal quotation marks omitted).  A party may file objections to the magistrate's order within ten days of having been served with a copy of that order, and the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a).

The Second Circuit has indicated that a motion granting leave to amend a complaint is considered "non-dispositive" and, thus, subject to the highly deferential clear error standard of review.  *See Fielding*, 510 F.3d at 178 (noting that "[A] district judge may refer nondispositive motions, such as a motion to amend the complaint, to a magistrate judge for decision without the parties' consent."); *Kilcullen v. New York State Dep't of Transp.*, 55 Fed. App'x. 583, 584-85 (2d

Cir. 2003) (characterizing plaintiff's motion to amend the complaint and add a claim as "non-dispositive," and noting that the plaintiff's objection to the magistrate judge's denial of "his non-dispositive motion" was reviewed pursuant to Rule 72(a)).  However, some courts in this Circuit have held that a magistrate judge's *denial* of a motion to amend a complaint is dispositive because it "foreclose[s] potential claims."  *See Wilson v. City of New York*, No. 06 Civ 219 (ARR) (VVP), 2008 WL 1909212, at *4 (E.D.N.Y. Apr. 30, 2008) (collecting cases and noting that "[c]ourts in this Circuit are divided on the issue of whether, and under what circumstances, motions to amend a pleading are dispositive or nondispositive," and that "[t]he Second Circuit has not yet ruled on the issue").

Notwithstanding the possibility that a magistrate judge's *denial* of a motion to amend a complaint may be dispositive, the Court concludes that Judge Francis's January 23 Order *granting* Plaintiffs' motion to amend their complaints is non-dispositive, and as such, subject to clear error review only.[6]  *See Bridgeport Music Inc., v. Universal Music Group*, 248 F.R.D. 408, 410 (S.D.N.Y. 2008) (noting that while "the weight of opinion appears to favor treating such rulings [by a magistrate *denying* a motion to amend pleadings] as nondispositive[,] . . . the prevailing view should apply with greater force to a Magistrate Judge's *granting* a motion to amend a complaint" (emphasis added)).

### III. Discussion

Defendants assert two principal grounds for challenging the January 23 Order in their

---

[6] The Court notes that despite Defendants' contention that the applicable standard of review to be applied to a motion to amend a complaint "appears to be an unsettled area of law,"  Defendants nonetheless apply the clear error standard to Judge Francis's January 23 Order in their Objections.  (*See* Defs.' Mem. at 4, 5, 15, 29, 33.)

Objections.[7]  First, Defendants "generally object[] to the proposed amendments that include new constitutional and statutory claims on grounds of undue delay, futility and prejudice . . . ."  (*See* Defs.' Mem. at 3.)  Second, Defendants object to proposed amendments that seek to add claims against Commissioner David Cohen, Deputy Commissioner for Intelligence for the New York City Police Department, "chiefly on grounds of futility."  (*See id.*)  Defendants also argue that even if such claims against Commissioner Cohen are valid, he would be entitled to qualified immunity because such claims are based upon a novel theory of constitutional law.  (*See id.* at 29-30, 32.)

A. New Causes of Action

As previously noted, most of the original complaints in the instant RNC actions were filed in 2004 and 2005, and Plaintiffs have, in many instances, already amended their complaints several times as discovery progressed.  (*See* Defs.' Mem. at 2.)  On May 16, 2005, certain Plaintiffs entered into a stipulated case management order (the "CMO"), which provided that any amendments to their complaint were to have been served by July 1, 2005, absent leave of Court.[8]  (*See id.* at 2.)  Defendants note that "Judge Karas directed that the scheduling order entered in each of the remaining RNC cases shall be modeled on" this CMO.  (*See id*. at 2.)  Defendants argue that Plaintiffs were bound by the July 1, 2005 deadline in the CMO that governed amendments and which "had expired long before" Judge Francis granted Plaintiffs' motions to amend.  (*See id.* at 6.)

Defendants contend that the effect of the January 23 Order "is to add another layer of

---

[7] As previously stated, Judge Francis granted in part and denied in part Plaintiffs' motions to amend their complaints. Pursuant to Rule 72(a), the Court does not address those portions of the Jan. 23 Order to which Defendants have not raised any objections.

[8] This CMO was first entered in the *MacNamara* case and was signed by Judge Karas on May 16, 2005.  (*See* No. 04 Civ. 9216, D.E. 272.)

complexity to these numerous RNC cases at a point when fact discovery is at a very late stage — and may be closed." (*See* Defs.' Mem. at 4.)  According to Defendants, Judge Francis "failed to consider Rule 16, the deadlines set forth in the CMOs, and the good cause standard, which [P]laintiffs cannot satisfy in any event."  (*See id.* at 8.)  Pursuant to Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent."  *See* Fed. R. Civ. P. 16(b)(4).  Defendants argue that Plaintiffs have failed to satisfy the good cause standard to permit additional amendments to their pleadings beyond the CMO deadline; therefore, the January 23 Order "is clearly erroneous and contrary to law."  (*See* Defs.' Mem. at 8.)

The Second Circuit has discussed the interplay between Rule 15(a), which allows leave to amend pleadings to be "freely given when justice so requires," and Rule 16(b), which limits a party's right to "obtain a modification of a scheduling order only 'upon a showing of good cause,'" and noted that Rule 16(b) "provides the district courts discretion to ensure that limits on time to amend pleadings do not result in prejudice or hardship to either side."  *Kassner v. 2nd Ave. Delicatessen*, *Inc.*, 496 F.3d 229, 243-44 (2d Cir. 2007) (noting that "good cause" under Rule 16(b) "depends on the diligence of the moving party" (internal citations and quotation marks omitted)); *see also Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) ("Where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'").

The Court finds that, contrary to Defendants' assertion that Judge Francis failed to consider whether Plaintiffs had shown good cause for their delay in adding the proposed amendments, Judge Francis carefully weighed Plaintiffs' stated  reasons for each of the proposed amendments against

7

any resulting prejudice that Defendants might suffer, and, he applied the relevant law in each instance.  In response to Defendants' charge that the complaints had failed to "put the City on proper notice from the outset of the scope of the litigation," and therefore the proposed amendments should be denied,  Judge Francis noted that "[i]n determining whether the defendants would be prejudiced by the amendment, I must consider whether it 'would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute." (*See* Jan. 23 Order at 16 (quoting *Block v. First Blood Ass'n*, 988 F.2d 344, 350 (2d Cir. 1993)).)  In permitting Plaintiffs' facial constitutional challenges to the parade ordinance, Judge Francis found that:

> [D]efendants have not demonstrated any prejudice that would result from the addition of a facial constitutional challenge to Section 10-110.  The City will already be required to defend against the claim, as it has already been included in other RNC actions dating back to 2005 . . . and discovery is not likely to be burdensome . . . . Thus, the interest in judicial economy and the liberality of Rule 15(a) tip the scale in favor of amendment.

(*See id.* at 15-16.)  Similarly, in assessing Plaintiffs' new as-applied challenges to the same ordinance, Judge Francis examined Defendants' contention "that significant and burdensome additional discovery would be required, delaying the final resolution of cases that are nearing the close of discovery," and concluded that Plaintiffs' claims would "not generate the kind of discovery the City complains of . . . because these issues will no doubt be litigated in other RNC cases, [therefore] amendment will be permitted to the extent that the claims are thus limited in scope." (*See id.* at 16-17.)

Moreover, Judge Francis denied some of Plaintiffs' amendments on the very grounds that Defendants raised in their Objections.  For example, Defendants objected to proposed constitutional

challenges brought by certain Plaintiffs to New York's disorderly conduct statute "on grounds of futility, delay, and prejudice." (*See id.* at 17-18.) Judge Francis concluded that "it would be futile to permit [an] amendment to include facial constitutional challenges," in light of the relevant case law.[9] (*See id.* at 18-20.)

The Court concludes that Defendants have failed to demonstrate that Judge Francis abused his discretion by allowing the proposed amendments regarding the constitutional and statutory claims and, therefore, these portions of the January 23 Order are neither "clearly erroneous" nor "contrary to law." Accordingly, the Court affirms the partial grant of leave to plead these new causes of action in the January 23 Order.

### B. Addition of Commissioner Cohen as a Defendant

Plaintiffs in twenty-seven cases seek leave to add claims against Commissioner Cohen in his individual capacity and as a *Monell* defendant for purposes of municipal liability. (*See* Jan. 23 Order at 7.) A motion to amend a complaint is normally governed by Rule 15(a), however, "proposed amendments seeking to join new defendants" are controlled by Rule 21, which "provides that a party may be added 'at any time, on just terms . . . .'" *See In re Fosamax Prod. Liab. Litig.*, No. 06 Civ. 9449 (JFK), 2009 WL 137087, at *3 (S.D.N.Y. Jan. 21, 2009) (quoting Fed. R. Civ. P. 21). Rule 21 "is 'intended to permit the bringing in of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or

---

[9] Plaintiffs' proposed facial challenges to New York's disorderly conduct statute included assertions that (1) the statute did not define the meaning of "obstructing" traffic; and (2) did not require that a person receive a warning before being arrested. (*See* Jan. 23 Order at 18.) Judge Francis found that these challenges were futile because (1) the Supreme Court and the Second Circuit have held that the use of the term "obstruct" in a state statute is not unconstitutionally vague since its meaning is sufficiently clear to the average person without further definition; and (2) a warning before an arrest for obstructing traffic is not constitutionally required because the term "obstruct" provides sufficient notice of the prohibited conduct. (*See id.* at 18-19 (quoting *Cameron v. Johnson*, 390 U.S. 611, 616 (1968); *Arbeitman v. Dist. Ct. of Vermont*, 522 F.2d 1031, 1033 (2d Cir. 1975); *People v. Tichenor*, 89 N.Y.2d 769, 775 (N.Y. 1997)).)

desirable.'" *Id.* (quoting *United States v. Commercial Bank of N. Am.*, 31 F.R.D. 133, 135 (S.D.N.Y. 1962)).  Rule 21 motions to amend pleadings are afforded the "same standard of liberality" as motions to amend pleadings brought under Rule 15.  *Id.* (quoting *Soler v. G & U, Inc.*, 86 F.R.D. 524, 528 (S.D.N.Y. 1980)).

Defendants argue that Plaintiffs' proposed amendments adding Commissioner Cohen as a Defendant "are defective as a matter of law," and should be dismissed on grounds of futility because "[th]e proposed amended pleadings do not contain any facts supporting essential elements of a Section 1983 claim, including facts relating to Cohen's personal involvement."  (*See* Defs.' Mem. at 3, 15, 17.)  According to Defendants, the proposed claims against Commissioner Cohen are "wholly devoid of any factual pleading," and as such, would not survive a motion to dismiss brought under Rule 12(b)(6).  (*See* Defs.' Mem. at 22-23.)  "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."  *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citation omitted). To survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations . . . [but must provide] more than labels and conclusions . . . .  Factual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Bell Atlantic v. Twombly*, 550 U.S. 544, __, 127 S. Ct. 1955, 1964-65 (2007).

While Plaintiffs' proposed amended pleadings present various theories of liability to establish Commissioner Cohen's personal involvement, the only theory approved by Judge Francis in the January 23 Order was one which alleged that Commissioner Cohen "formulat[ed] policy through the presentation of distorted intelligence data that 'culminated in the formulation and adoption of the no-

summons and blanket fingerprinting policies.'"[10] (*See* Defs.' Mem. at 18 (quoting the Jan. 23 Order at 10 (internal quotation marks omitted)).) Specifically, Judge Francis detailed Plaintiffs' allegations that "Commissioner Cohen manipulated the information he presented to the relevant decision makers[,] . . . [and] grossly misinformed the RNC Executive Committee . . . of the security threat posed by the people and groups who were planning to protest during the RNC." (*See* Jan. 23 Order at 11 (citing various Plaintiffs' briefs)).) Judge Francis noted that courts have found liability in analogous situations "where an officer 'withholds relevant and material information or creates false information likely to influence a jury's decision and forwards that information to prosecutors.'" (*See id.* at 11 (quoting *Caraballo v. City of New York*, No. 05 Civ. 8011 (GEL), 2007 WL 1584202, at *7 (S.D.N.Y. May 31, 2007)).) Moreover, according to Judge Francis, "discovery ha[d] not closed and the plaintiffs [were] not required to prove the truth of their claims at this stage." (*See* Jan. 23 Order at 12.) Judge Francis disagreed with Defendants' contention that the record did not support a claim that Commissioner Cohen misrepresented intelligence data concerning the security threat, especially given that Commissioner Cohen "holds a high rank in the NYPD and was therefore in a position to understand and influence policymaking for the RNC. . . .  The record indicates that Commissioner Cohen initiated the RNC surveillance program." (*See id.* at 12.) Judge Francis concluded that while the allegations might not "survive summary judgment, [they are] adequate to 'raise a right to relief above the speculative level.'"[11] (*See id.* at 13 (quoting *Twombly*, 127 S. Ct. at

---

[10] Judge Francis dismissed the remaining claims of supervisory liability asserted against Commissioner Cohen. (*See* Jan. 23 Order at 9-10.)

[11] Judge Francis found that not all of the Plaintiffs' proposed amended complaints contained sufficiently "specific allegations regarding Commissioner Cohen's misrepresentation of intelligence data," and he conditioned their "amendment[s] on the inclusion of allegations to this effect." (*See* Jan. 23 Order at 12, n. 6.)

1965).)

The Court finds that Judge Francis did not abuse his discretion by concluding that certain Plaintiffs had sufficiently pleaded the proposed claims against Commissioner Cohen concerning misrepresentation of intelligence information. (*See* Jan. 23 Order at 11-13.) Accordingly, the Court affirms Judge Francis's grant of partial leave to add Commissioner Cohen as a Defendant in the January 23 Order.

### C. Qualified Immunity for Commissioner Cohen

Defendants alternatively argue that Commissioner Cohen is entitled to qualified immunity if the Court determines that the complaints properly state claims against him under "the novel theory posited in the [January 23] Order . . . because Cohen could not have been aware of the possibility of liability under such a theory." (*See* Defs.' Mem. at 29.) As a government official who is sued in his official capacity, Commissioner Cohen is entitled to qualified immunity in any of the following three circumstances:

> (1) if the conduct attributed to him is not prohibited by federal law; (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct; or (3) if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.

*Husain v. Springer*, 494 F.3d 108, 131 (2d Cir. 2007) (internal citation and quotation marks omitted). The Second Circuit has explained that according to Supreme Court precedent, "clearly established law" for purposes of qualified immunity means that "in light of pre-existing law, the unlawfulness [is] apparent." *Id.* The Supreme Court has held that "officials can still be on notice that their conduct violates established law even in novel factual circumstances. . . . . [T]he salient question . . . is whether the state of the law [during the relevant year] gave respondents fair warning that their

12

alleged treatment of [plaintiffs] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (citing *United States v. Lanier*, 520 U.S. 259, 270-71 (1997))).

In this case, Defendants assert that Commissioner Cohen enjoys qualified immunity because "[e]ven if the Court finds that . . . Cohen's conduct violated [Plaintiffs'] constitutional rights, . . . it would not have been clear to a reasonable official in Cohen's position that his conduct was unlawful." (*See* Defs.' Mem. at 31-32.) Judge Francis addressed the issue of qualified immunity and noted that the Second Circuit has held that an officer is not entitled to qualified immunity where that officer "'creates false information likely to influence a jury's decision . . . .'" (*See* Jan. 23 Order at 11 (quoting *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)).) Judge Francis also cited cases in which "courts have reasoned that the proffering of false information overcomes the presumption that the official acting on that information exercises independent judgment, such that the defendant can be said to have 'played an active role.'" (*See* Jan. 23 Order at 10-11 (quoting *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 227-28 (S.D.N.Y. 2006)).) In comparing Commissioner Cohen's alleged conduct to that of an official of lower rank, Judge Francis found that "plaintiffs are more likely to be able to show that [Commissioner Cohen] knew, or should have known, that the threats identified by his briefings would lead to particular policy outcomes." (*See* Jan. 23 Order at 12.)

The Court agrees with Judge Francis's reasoning that it is likely that Plaintiffs can show that it would have been clear to a reasonable officer in Commissioner Cohen's position that falsifying intelligence data was unlawful. However, even if Defendants might be able to establish that it was "objectively reasonable" for Commissioner Cohen to falsify intelligence data at the time he allegedly acted, courts are reluctant to find that defendants are entitled to qualified immunity at the initial

13

stages of the pleadings. *See Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191-92 (2d Cir. 2006) ("[A] qualified immunity defense can be presented in a Rule 12(b)(6) motion, but . . . the defense faces a formidable hurdle when advanced on such a motion and is usually not successful." (internal citation and quotation marks omitted)); *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) ("[A] defendant presenting [a qualified] immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route. . . . [T]he motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." (internal citations and quotation marks omitted)); *Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996) (concluding that "the denial of leave to amend was not justified by considerations of qualified immunity," because qualified immunity is an affirmative defense that defendants must raise in their answer or establish at trial or on a motion for summary judgment, and that therefore, "a plaintiff, in order to state a claim of constitutional violation, need not plead facts showing the absence of such a defense"); *Oliver Schs., Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991) (finding that "the qualified immunity hurdle . . . is not a valid basis for denying leave to amend the complaint," even though the plaintiff might "ultimately be unable to prevail because of that defense.").

Accordingly, the Court finds no clear error in Judge Francis's determination that Defendants are not entitled to the defense of qualified immunity at this stage of the pleadings.

## IV. Conclusion

The Court concludes that the January 23 Order is extremely thorough and well-reasoned. The Court, having found no clear error in either Judge Francis's analysis or his conclusions, rejects Defendants' Objections and affirms the January 23 Order in its entirety.

SO ORDERED.

DATED:      February 24, 2009
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

15