UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————

N⁰ 04 Civ. 9216 (RJS) (JCF)

———————————

DEIRDRE MACNAMARA, ET AL.,

Plaintiffs,

VERSUS

THE CITY OF NEW YORK, ET AL.,

Defendants.

———————————

N⁰ 04 Civ. 7922 (RJS) (JCF)

———————————

MICHAEL SCHILLER, ET AL.,

Plaintiffs,

VERSUS

THE CITY OF NEW YORK, ET AL.,

Defendants.

———————————

N⁰ 04 Civ. 7921 (RJS) (JCF)

———————————

HACER DINLER, ET AL.,

Plaintiffs,

VERSUS

THE CITY OF NEW YORK, ET AL.,

Defendants.

———————————

MEMORANDUM AND ORDER
December 10, 2009

———————————

RICHARD J. SULLIVAN, District Judge:

Before the Court are Defendants' objections, pursuant to Rule 72 of the Federal Rules of Civil Procedure, to an Order issued on August 13, 2008 and modified on October 6, 2008 by the Honorable James C. Francis IV, Magistrate Judge, requiring disclosure of certain confidential New York City Police Department ("NYPD") intelligence documents prepared for the Republican National Convention ("RNC") held in New York City ("the City") in 2004. *Schiller v. City of N.Y.*, No. 04 Civ. 7922 (RJS) (JCF), 2008 WL 933645 (S.D.N.Y. Oct. 6, 2008) ("October 6 Order"). For the reasons set forth below, the Court affirms the October 6 Order and denies Defendants' objections.

## I. BACKGROUND

This action is part of a larger group of cases relating to protests surrounding the 2004 Republican National Convention (the "RNC cases"), which have been consolidated before this Court and referred to Magistrate Judge Francis for general pretrial purposes. Plaintiffs have challenged the "no summons" and "blanket fingerprinting" arrest policies implemented by the NYPD during the RNC as violating the First, Fourth, and Fourteenth Amendments to the United States Constitution.[1]

Defendants in this action assert that Magistrate Judge Francis erred by compelling Defendants to produce certain intelligence documents prepared by the NYPD Intelligence Division during the eighteen months prior to the RNC (the "Intelligence Documents"). The Court presumes the readers' familiarity with the facts and procedural history of this action, including those facts specifically related to the instant application. Accordingly, the Court will briefly recite only those facts necessary for the resolution of Defendants' objections.

On August 6, 2007, Magistrate Judge Francis reviewed the disputed Intelligence Documents in camera, granted Plaintiffs' motion in part, and ordered Defendants to produce the majority of the documents in redacted form. *Schiller v. City of N.Y.*, 244 F.R.D. 273, 275 (S.D.N.Y. 2007) (the "August 6 Order"). After Defendants filed objections and proffered a declaration from NYPD Deputy Commissioner of Intelligence David Cohen, this Court remanded the matter to Magistrate Judge Francis by Order dated November 28, 2007 (the "November 28 Order") to determine whether Commissioner Cohen's declaration required reconsideration of the August 6 Order.

Magistrate Judge Francis subsequently granted Defendants' motion for reconsideration in part by issuing a Memorandum and Order dated August 13, 2008, correcting certain redactions set forth by the August 6 Order where information had been incorrectly redacted or left unredacted. *Schiller v. City of N.Y.*, 252 F.R.D. 204 (S.D.N.Y. 2008) (the "August 13 Order"). Magistrate Judge Francis then ordered that the Intelligence Documents be produced, provided that they contain: (1) substitute codes for geographic references that would give away an undercover officer's location, and (2) redactions where disclosure could lead to the identification of an undercover officer or certain law enforcement agencies. *Id.* at 209-10. Magistrate Judge Francis also ordered that these documents be labeled "attorneys'-eyes-only," and that Plaintiffs' copy be kept at the New York Civil Liberties Union ("NYCLU"). *Id.* at 213.

Upon receipt of a letter from Defendants dated September 19, 2008, identifying possible inconsistencies in the redacted documents, Magistrate Judge Francis reviewed the purported inconsistencies and modified the August 13

---

[1] Plaintiffs allege that the mass arrest tactics resulted in systematic fingerprinting and unreasonably long detention in unhealthy conditions of those arrested for minor offenses. (*See* Compl. ¶¶ 70-72.)

2

Order in the October 6 Order. Defendants now object to Magistrate Judge Francis' ruling on relevance and privilege grounds. (Defs.' Reply Mem. at 1-20.) Specifically, Defendants argue that: (1) the Intelligence Documents are not relevant to claims or defenses raised in the RNC Cases, and (2) Plaintiffs' alleged need for the documents does not overcome the law enforcement privilege.

II. DISCUSSION

A. Legal Standard

Rule 72(a) of the Federal Rules of Civil Procedure and the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(A), provide that a district court may designate a magistrate judge to hear and decide non-dispositive pretrial matters. The district court shall reverse a magistrate judge's order only where the ruling is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007). As a "non-dispositive matter," a pretrial discovery ruling is reviewed under this highly deferential standard. *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).

An order is clearly erroneous if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *See Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (internal citation and quotation marks omitted). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Thompson v. Keane*, No. 95 Civ. 2442 (SHS) (AJP), 1996 WL 229887, at *1 (S.D.N.Y. May 6, 1996) (internal citation and quotation marks omitted).

A magistrate judge's discovery orders are entitled to considerable deference. *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.*, No. 04 Civ. 6189 (JFK), 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007). "Consistently, it has been held that a magistrate's report resolving a discovery discourse between litigants should be afforded substantial deference and be overturned only if found to be an abuse of discretion." *Nikkal Indus., Ltd. v. Salton, Inc.*, 689 F. Supp. 187, 189 (S.D.N.Y. 1988); *accord Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002).

B. Analysis

Having carefully reviewed the record in this matter, the Court finds that Magistrate Judge Francis's disclosure order was not clearly erroneous or contrary to law. Accordingly, for the reasons stated below, the Court overrules Defendants' relevance and privilege objections and affirms the October 6 Order.

1. Relevance

Rule 26 of the Federal Rules of Civil Procedure (the "Rules") provides a broad scope for discovery requests. Specifically, subsection (b)(1) provides in relevant part:

> Parties may obtain discovery regarding *any matter, not privileged, which is relevant to the subject matter involved in the pending action*, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . .

Fed. R. Civ. P. 26(b)(1) (emphasis added).

The Supreme Court has held that the only express discovery requirements under the Rules are that the information is not privileged and is relevant to the subject matter of the present action. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984); *see also Hoffman-La Roche, Inc.*

3

*v. Sperling*, 493 U.S. 165, 179 (1989). Accordingly, the Rules often "allow extensive intrusion into the affairs of both litigants and third parties." *Seattle Times Co.,* 467 U.S. at 30.

Defendants argue that the Intelligence Documents are not relevant in the present action because: (1) they do not contradict the threat assessment information already produced by Defendants, and (2) RNC policymakers did not rely on this information in formulating the challenged arrest policies. (Defs.' Mem. at 2.) Additionally, Defendants argue that Magistrate Judge Francis erred by ordering the disclosure of the names of organizations and individuals investigated by the Intelligence Division, as Plaintiffs have not shown how such information relates to their claims. (Defs.' Reply Mem. at 8-13.) The Court disagrees.

The Intelligence Documents formed part of the overall threat assessment that Cohen delivered to members of the RNC Executive Committee, the body that ultimately generated the challenged arrest policies. *See Schiller v. City of N.Y.*, No. 04 Civ. 7922 (KMK) (JCF), 2007 WL 1461378, at *1-3 (S.D.N.Y. May 18, 2007). Cohen stated that "[m]y staff discussed the information contained in the [documents] with me as it was being developed, and I considered it as part of the body of information I analyzed on a continuing basis." *Id.* at 3 (quoting Declaration of David Cohen dated May 2, 2007 ("Cohen Decl.") ¶ 13.)[2] Defendants cannot now deny that Cohen based his threat assessment at least in part on such information, even if the documents were at best merely corroborative of data obtained from other sources. This holds true notwithstanding Cohen's assertion that "[n]othing [he] learned in [his] discussions with [his] staff changed [his] assessment that the City faced serious threats of violence and disorder." *Id.*

Moreover, Defendants themselves introduced the relevance of the Intelligence Documents into the underlying action by asserting that they would rely on the documents as part of their defense. *See Schiller v. City of N.Y.*, No. 04 Civ. 7922 (KMK) (JCF), 2007 WL 735010, at *1, 8 (S.D.N.Y. Mar. 12, 2007). Defendants' subsequent decision to forego the documents in order to protect the NYPD's sources and methods from disclosure does not alter or detract from the documents' relevance. (*See* Defs.' Mem. at 32-33.) Unlike the protected government investigations that were ancillary to the forfeiture action in *United States v. $3,000,000 Obligation of Qatar Nat'l Bank*, No. 90 Civ. 6427 (PNL), 1993 WL 267364 (S.D.N.Y. July 12, 1993), here the disputed Intelligence Documents directly relate to Plaintiffs' claims regarding the City's mass arrest policies and are therefore relevant. *See In re World Trade Ctr. Bombing Litig.*, 693 N.Y.S.2d 586, 592 (N.Y. App. Div. 1999); *Alliance to End Repression v. City of Chicago*, 75 F.R.D. 441, 444-45 (N.D. Ill. 1977) (finding that certain information related to defendants' intelligence program directly concerned the subject matter of a civil rights action alleging that defendants had engaged in unconstitutional surveillance activities).

As Plaintiffs point out, to the extent that the documents reveal a threat that would have legally justified the City's challenged policies, they will support the City's defense; to the extent they do not, they will undercut that defense. (Pls.' Mem. at 11.) Although Defendants claim that the RNC Executive Committee never saw

---

[2] Defendants filed Cohen's declaration under seal, but they also submitted for public filing a redacted version of their letter brief in opposition to Plaintiffs' motion, which contains the above statements in unredacted form. *Schiller*, 2007 WL 1461378, at *1, 3 nn. 1-2.

4

the documents, Cohen's own declaration established his role in conveying the information to this decision-making body. (*See id.* at 13-15.)

Accordingly, the Court finds no clear error by Magistrate Judge Francis in holding that Plaintiffs have adequately shown the relevance of this particular information. Clearly, information indicating the NYPD's assessment of the involved groups and the anticipated turnout and likelihood of violence by such groups directly bears on whether the mass arrest policies were constitutionally justified. Plaintiffs have an interest in knowing the names of the groups and individuals surveilled by the NYPD, as well as the number of groups that were investigated, in order to assess Defendant's perception of the threat. Thus, the Court finds that Magistrate Judge Francis's holding that the Intelligence Documents were relevant for discovery was not contrary to law.

### 2. Law Enforcement Privilege

Defendants further contend that Magistrate Judge Francis's disclosure order was clearly erroneous or contrary to law because it was in contravention of the law enforcement privilege. (*See* Defs.' Mem. at 33-43.) Once again, the Court disagrees.

The law enforcement privilege is intended to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't of Investigation of N.Y.*, 856 F.2d 481, 484 (2d Cir. 1988) (citing *Aspin v. Dep't of Defense*, 491 F.2d 24, 29-30 (D.C. Cir. 1973)), and *Frankel v. S.E.C.*, 460 F.2d 813, 817 (2d Cir. 1972)); *see also Tuite v. Henry*, 181 F.R.D. 175, 176 (D.D.C. 1998) ("The federal law enforcement privilege is a qualified privilege designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement.

The privilege serves to preserve the integrity of law enforcement techniques and confidential sources . . . ."), *aff'd* 203 F.3d 53 (D.C. Cir. 1999). "'In order to assert a claim of privilege against disclosure of police materials to a plaintiff raising federal civil rights claims . . . the officers or the police department must do more than alert the court to the [relevant privilege] or the generalized policies which support it.'" *Fountain v. City of N.Y.*, No. 03 Civ. 4526 (RWS), 2004 WL 941242, at *3 (S.D.N.Y. May 3, 2004) (quoting *King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y. 1988)) (additional internal quotation marks and citation omitted). Importantly, the privilege protects the privacy of police officers involved in an investigation, not police officers generally. *Morrissey v. City of N.Y.*, 171 F.R.D. 85, 90 (S.D.N.Y. 1977) ("[T]he focus remains not on privacy concerns, but on the ability of the police department to conduct effective law enforcement.").[3]

---

[3] In addition to the law enforcement privilege, courts in this Circuit have also recognized the existence of an official information privilege in any federal civil rights action brought against local law enforcement agencies. *See Morrissey*, 171 F.R.D. at 90. The official information privilege aims to protect the "wide variety of sensitive and private police material" that would be relevant to a plaintiff's claim under § 1983, in order to protect police personnel files and investigative reports from "fishing expeditions." *Id.* at 91-92. To claim the privilege, the police must make a "substantial threshold showing" that specific harms are likely to accrue from the disclosure of specific materials. *MacNamara v. City of N. Y.*, 249 F.R.D. 70, 79 (S.D.N.Y. 2008); *King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y. 1988) (listing the factors to be examined in balancing the interests favoring and opposing confidentiality). Plaintiffs may then overcome the

5

After reviewing the record before it, the Court is not left with the definite and firm conviction that Magistrate Judge Francis erred in ordering Defendants to produce the redacted Intelligence Documents. Rather, the Court finds that Magistrate Judge Francis effectively determined the relevance of the Intelligence Documents, and balanced the harm of disclosure against the parties' showing of substantial need for the information sought. *See id.* at 92-3; *Borchers v. Commercial Union Assur. Co.*, 874 F.Supp. 78, 80 (S.D.N.Y. 1995).

Although the Court recognizes the severity of the threat environment during the RNC, as well as that generally faced by law enforcement in New York City after the events of September 11, 2001, the Court notes that Magistrate Judge Francis carefully evaluated those risks and crafted safeguards designed to prevent the dissemination of sensitive material and information. For example, Magistrate Judge Francis authorized various protective measures, including redactions and substitute codes for geographic references where disclosure could lead to the identification of locations, undercover officers, or certain law enforcement agencies. (August 13 Order at 209-10.) He also placed attorneys'-eyes-only restrictions on the materials, and limited production to a single set of documents to be held at Plaintiffs' counsel's office. (October 6 Order at 4.) Moreover, it should be noted that Plaintiffs only seek information gathered about RNC protest-related activity and the NYPD's related assessments, and have not requested information about confidential sources or techniques.[4] (Pls.' Mem. at 20.)

Thus, the Court finds that Defendants have not made a "substantial threshold showing that there are specific harms likely to accrue from disclosure" of the now-redacted Intelligence Documents. *See MacNamara*, 249 F.R.D. at 79. Accordingly, it cannot be said that Magistrate Judge Francis clearly erred in applying the law enforcement privilege to the facts of this case.

### III. CONCLUSION

For the reasons set forth above, the Court finds that the October 6 Order was not clearly erroneous or contrary to law. The Intelligence Documents are relevant to the present action and not barred by any applicable privilege. Accordingly, the Court rejects Defendants' objections and affirms the October 6 Order.

SO ORDERED.

_____
RICHARD J. SULLIVAN
United States District Judge

Dated: December 10, 2009
New York, New York

---

privilege by showing, for instance, that their claims depend on proof of conduct that is covered by the documents at issue. *See Morrissey*, 171 F.R.D. at 93. Although Defendants do not specifically raise the official information privilege in the present action, the Court would likewise reach the conclusion that the privilege does not bar the production of the disputed documents at issue here.

[4] In light of the facts before it, the Court rejects Defendants' assertion that the protective measures are inadequate because they only provide a "temporary shield from widespread public disclosure." (Defs.' Reply Mem. at 19.) At the present time, it does not appear "inevitable" to the Court that Plaintiffs will attach the Intelligence Documents to their summary judgment papers and then seek to remove the attorneys'-eyes-only restriction based on that filing. (*Id.*) Should the need arise, Defendants are free to make such a motion for a further protective order, which the Court will address in due course.

6

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/14/09

***

Plaintiffs are represented by Christopher T Dunn, Esq., and Palyn P. Hung, Esq., of the New York Civil Liberties Union, 125 Broad Street, 17th Floor, New York, New York 10004, and Jonathan C. Moore, Esq. and Clare Norins, Esq., of Beldock, Levine & Hoffman, LLP, 99 Park Avenue, New York, New York 10016. Defendants are represented by Peter G. Farrell, Esq., and Tonya Jenerette, Esq., Assistant Corporation Counsel, and Michael A. Cardozo, Esq., Corporation Counsel of the City of New York, 100 Church Street, New York, New York 10007.