UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
HACER DINLER, ANN MAURER,                          :
ASHLEY WATERS,                                     :          ECF Case
                Plaintiffs,           :
                                      :          04 Civ. 7921 (RCS) (JCF)
      vs.                                :
                                      :
The CITY OF NEW YORK; RAYMOND                      :
KELLY, Commissioner of the New York City           :
Police Department; and Inspector JAMES ESSIG,      :
New York City Police Department,                   :
                                      :
                Defendants.          :
------------------------------------------------------------x


**PLAINTIFFS' MEMORANDUM OF LAW IN REPLY TO
DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON FALSE ARREST CLAIMS
FOR PLAINTIFFS ARRESTED AT EAST 16th STREET**


                Respectfully submitted,

                CHRISTOPHER DUNN
                TAYLOR PENDERGRASS
                DANIEL MULLKOFF
                New York Civil Liberties Union Foundation
                125 Broad Street, 19th Floor
                New York, NY  10004

                Counsel for Plaintiffs

Dated:  November 23, 2011
        New York, N.Y.

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .............................................................................................1

I.   DEFENDANTS' RULE 56.1 COUNTERSTATEMENT IS IMPROPER
     GIVEN THE RECORD BEFORE THE COURT.. ........................................................1

II.  UNDISPUTED FACTS SHOW THERE WAS NO PROBABLE CAUSE
     TO ARREST PLAINTIFFS............................................................................................2

III. DEFENDANTS' ERRONEOUS INTERPRETATION OF THE VIOLATIONS
     AT ISSUE DOES NOT REMEDY THE LACK OF PROBABLE CAUSE AND
     IS NO BASIS FOR QUALIFIED IMMUNITY. ............................................................6

     Obstructing Traffic................................................................................................ 6

     Parading Without a Permit....................................................................................6

     Failure to Disperse ................................................................................................9

CONCLUSION.........................................................................................................................10

# TABLE OF AUTHORITIES

Cases

*Allen v. City of New York*, 03-cv-2829, 2007 WL 24796 (S.D.N.Y. Jan. 3, 2007) ...................9

*American-Arab Anti-Discrimination Committee v. City of Dearborn,* 418 F.3d 600 (6th Cir. 2005)....................................................................................................................8

*Carr v. District of Columbia*, 587 F.3d 401 (D.C. Cir. 2009) ...............................................3, 8

*Dickerson v. Napolitano*, 604 F.3d 732 (2d Cir. 2010) .........................................................2

*Lyons v. City of Seattle*, 214 Fed.Appx. 655 (9th Cir. 2006)..................................................10

*Papineau v. Parmley*, 465 F.3d 46 (2d. Cir. 2006) ................................................................6

*People v. Bezjak*, 812 N.Y.S.2d 829 (N.Y. Crim. Ct. 2006)....................................................7

*People v. Coe*, 71 N.Y.2d 852 (N.Y. 1988) ............................................................................7

*People v. Namer*, 812 N.Y.S.2d 824 (N.Y. Crim. Ct. 2006) ...................................................9

*People v. Olwes,* 742 N.Y.S.2d 783 (N.Y. Crim. Ct. 2002) ....................................................7

*Smith v. California*, 361 U.S. 147 (1959) ..............................................................................8

*Video Software Dealers Ass'n v. Webster*, 968 F.2d 684 (8th Cir. 1992) ................................8

*Ybarra v. Illinois*, 444 U.S. 85 (1979) ....................................................................................3

Statutes and Regulations

N.Y. Pen. L. §240.20(5) (McKinney 2011)...............................................................................6

N.Y. Pen. L. §240.20(6) (McKinney 2011).........................................................................9, 10

N.Y.C. Code § 10-110 (McKinney 2011)..............................................................................7, 9

38 RCNY § 19-02 (2004) .....................................................................................................6, 7

PRELIMINARY STATEMENT

The City's opposition to the *Dinler* plaintiffs' motion for partial summary is foreclosed by clearly established law and the undisputed facts in the record before the Court. The City ignores undisputed facts about the lawful conduct of the *Dinler* plaintiffs and relies on sweeping generalizations about the actions of others. The undisputed facts, however, show that the indiscriminate mass arrest that included Ms. Dinler, Ms. Waters, and Ms. Maurer was not supported by probable cause. Defendants' erroneous interpretation of the underlying violations that they claim supported the arrests does not remedy the lack of probable cause and is no basis for Inspector Essig's claim to qualified immunity, which is foreclosed by clearly established law.

I.  DEFENDANTS' RULE 56.1 COUNTERSTATEMENT IS IMPROPER GIVEN THE RECORD BEFORE THE COURT.

Plaintiffs' Rule 56.1 statement ("PF") (Doc. 261) provides detailed facts regarding the experiences of Ms. Dinler, Ms. Waters, and Ms. Maurer.[1] A court order establishes that defendants have no knowledge of the plaintiffs' specific actions. *See* Memo Endorsement by Honorable James C. Francis IV (June 20, 2006) (Doc. 36). The facts show that (1) Ms. Dinler was a bystander simply walking down the sidewalk on East 16th Street from Irving Place; Ms. Waters likewise was a bystander who was curious about the protest and followed it from the sidewalk, and Ms. Waters was a participant who remained on the sidewalk at all times; (2) none of the plaintiffs were ever in the street, and none obstructed or intended to obstruct pedestrian traffic; (3) none knowingly participated in an unpermitted parade; (4) all wanted to leave but were never allowed to exit East 16th Street, and; (5) none heard any police orders or instructions about exiting East 16th Street. PF ¶¶ 1-4, 6, 11, 16-21, 25, 35-39, 44. These facts were drawn

---

[1] In support of plaintiffs' motion for summary judgment and this reply, plaintiffs incorporate their memorandum of law in opposition to the City's motion for summary judgment and their response to the City's Rule 56.1 statement.

directly from plaintiffs' declarations, and a few additional facts regarding Essig were drawn from his own deposition testimony.

The City claims a majority of the facts in plaintiffs' Rule 56.1 statement are disputed. The City's counterstatement, however, is entirely improper. The City cites to sweeping and generic allegations in their Rule 56.1 statement regarding the acts of other individuals, or what defendants characterize as "the 16th Street Parade," that do not contain any admissible evidence controverting the undisputed facts regarding the *Dinler* plaintiffs' specific actions. As detailed in plaintiffs' reply to the counterstatement, these undisputed facts should be deemed admitted.

II. UNDISPUTED FACTS SHOW THERE WAS NO PROBABLE CAUSE TO ARREST PLAINTIFFS.

Given this proper understanding of the record, the only question is whether, despite undisputed evidence regarding the lawful conduct of the *Dinler* plaintiffs, defendants can nevertheless show there was probable cause to arrest the plaintiffs based upon the alleged conduct of others. On this central point, the City runs into trouble with the very first sentence of its argument, in which it asserts that "it is important to note that nowhere in any of the 3 briefs submitted by Plaintiffs do they cite to any evidence whatsoever that the conduct of all the arrestees on East 16th Street was lawful." *See* Defendants' Opposition Brief at 4.

The *Dinler* plaintiffs, however, have no burden with regard to their false arrest claims, as it is the defendants who bear the burden of establishing probable cause. *See Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010). And, given the City's effort to invoke group probable cause, the issue before the Court is whether the City has shown it was reasonable to conclude that "the conduct of all the arrestees on East 16th Street was unlawful."

The City cannot meet this burden.[2]  First, as explained in the plaintiffs' opposition to the City's cross-motion, any argument that plaintiffs' arrests were justified merely because "[p]laintiffs were . . . among the group that was observed violating the law," *see* Defendants' Opposition Brief at 3, was rejected long ago in *Ybarra v. Illinois*, 444 U.S. 85 (1979).  *See* Plaintiffs' Opposition at 7-14 (Doc. 283) ("Pl. Cross Opp.")

Thus, the City is left with the claim that the arrest of the *Dinler* plaintiffs was justified on the theory accepted by the D.C. Circuit in *Carr v. District of Columbia*, 587 F.3d 401 (D.C. Cir. 2009).  This theory is not available to the defendants here, however, because none of the underlying non-criminal violations at issue resemble the criminal "assemblage" law at issue in *Carr* that made a lawful mass arrest even possible there.  *See* Pl. Cross Opp. at 9-11, 15.

Even assuming, however, that the City can seek to invoke the *Carr* theory here, it still would have to establish, at minimum, that a reasonable officer could have believed (1) everyone near Union Square Park was part of a "cohesive unit" acting unlawfully, and; (2) the only people remaining on 16th Street when the mass arrest took place were those who had engaged in unlawful conduct.

For the reasons set out in the plaintiffs' opposition to the City's cross-motion, the City cannot meet this burden given the undisputed facts.  *See* Pl. Cross Opp. at 9-11, 22-25.  Those facts establish that marching bands attracted the attention of hundreds—like Ms. Waters and Ms. Maurer—prompting many individuals to follow them as they left Union Square Park.  PF ¶¶ 17-21, 36-39; Plaintiffs' Additional Facts Submitted in Opposition to Defendants' Motion for

---

[2] Portions of the City's opposition that respond to arguments made by other RNC plaintiffs, but were not made by the *Dinler* plaintiffs, are not addressed in this reply.

Summary Judgment ("APF")³ ¶ 62.  No reasonable officer could have believed each individual in that undifferentiated group, which consisted of onlookers, journalists, legal observers, and other nonparticipants, was part of a "cohesive unit" of lawbreakers near Union Square Park.

The undisputed facts further establish that police officers directed this undifferentiated group down East 16th Street, which was crowded with people who were simply on the block doing what people routinely do on a summer evening.  APF ¶¶ 65-66.  Beyond the fact that many in the group who were routed on the block were acting entirely lawfully, any reasonable officer would have known that arresting everyone on the block would trap innocent people who had nothing to do with the group—such as Ms. Dinler, who was on her way to teach a fitness class when she was seized.  PF ¶¶ 2-5; APF ¶¶ 74-75.

The City seeks to blunt this problem by pointing to "steps that allowed [Essig and Dieckmann] to reasonably believe that those that remained on the block of East 16th Street had in fact committed the violations they had observed."  *See* Defendants' Opposition Brief at 3.  Yet, after the block was sealed off, no reasonable officer could have concluded it was sufficient, as the City claims, to send two police officers to give unamplified instructions for a few minutes to a noisy crowd of hundreds, while at the same time officers forming the barricades were never instructed to allow people to exit.  *See* Pl. Cross Opp. at 24-25; PF ¶¶ 11, 25, 44; APF ¶ 83.

The City also argues Essig could have been reasonably confident that he was arresting only those he sought to arrest because he did not "wait for [the group] to commingle with others; rather, he arrested the group as soon as practicable."  *See* Defendants' Opposition Brief at 19.  The undisputed facts show, however, that "comingling" occurred from the very moment that marching bands attracted the public's attention near Union Square Park.  PF ¶¶ 17-21; APF ¶¶

---

³ Plaintiffs submitted these additional undisputed facts in their Response to Defendant's Rule 56.1 Statement in Support of Their Motion for Summary Judgment (Doc. 281).

65-66, 74. This "comingling" was only exacerbated when the entire mass was steered by police down a crowded city block filled with bystanders, like Ms. Dinler, after which the entire undifferentiated group was seized between two police lines. PF ¶¶ 2-5; APF ¶¶ 65-66, 73-74.

As for the City's speculation that everyone innocently caught between the police lines at each end of 16th Street had exited before arrests were made, that is irrelevant to whether a reasonable officer, with the facts known to Deputy Inspector Essig when he ordered the mass arrest, could reasonably have concluded that the only people left on the block were lawbreakers. Moreover, the undisputed evidence—including video evidence, testimony from officers, and testimony from the plaintiffs—shows that almost immediately after individuals were turned back at Irving Place the police sealed off the entire block and prevented anyone else from leaving. PF ¶¶ 11, 25, 44; APF ¶¶ 85, 87.

While the City points to video of some individuals exiting East 16th Street, none of the evidence cited by the City demonstrates when, or for how long, police permitted individuals to leave. *See* Plaintiffs' Response to Def. Rule 56.1 Statement (Doc. 281) ¶¶ 42-50. The City does not, and cannot, controvert the undisputed testimony of police officers and plaintiffs alike that the block was completely sealed off quickly—as illustrated by the experience of Ms. Dinler, who was on her way to work when she was trapped between the police barricades. PF ¶¶ 2-11, 25, 44; APF ¶¶ 85, 87. Even during the short time when exiting was initially possible, police were quickly forming barricades that many were afraid to approach, like Ms. Waters, and police gave no amplified orders that would have given anyone notice that they should leave or any instructions that people could approach police lines in order to do so. APF ¶¶ 70, 72-76, 85-86.

Given these undisputed facts, no reasonable officer could have believed the only persons left trapped inside police lines were those believed to have previously broken the law near Union

Square Park. The "indiscriminate mass arrest" of everyone present at the scene, including Ms. Dinler, Ms. Waters and Ms. Maurer, violated the Fourth Amendment regardless of what violations some individuals among this undifferentiated group were suspected of committing. *See Papineau v. Parmley*, 465 F.3d 46, 59-60 (2d. Cir. 2006).

III. DEFENDANTS' ERRONEOUS INTERPRETATION OF THE VIOLATIONS AT ISSUE DOES NOT REMEDY THE LACK OF PROBABLE CAUSE AND IS NO BASIS FOR QUALIFIED IMMUNITY.

The City's arguments regarding the particular violations at issues—obstructing traffic, parading without a permit, and failure to disperse—are without merit and do nothing to remedy the fact that the indiscriminate mass arrest that included the *Dinler* plaintiffs violated clearly established law, regardless of the underlying violation at issue.

Obstructing Traffic: None of the *Dinler* plaintiffs intentionally or recklessly obstructed traffic at any time. PF ¶¶ 11, 25, 44. The City's claim that there was probable cause to arrest them for obstructing traffic in violation of N.Y. Pen. L. 240.20(5) is premised entirely on arguments regarding the alleged conduct of the "group," and other arguments not advanced by the *Dinler* plaintiffs. *See* Defendants' Opposition Brief at 19-30. As explained above, since the City's *Carr* theory fails on multiple grounds, there was no probable cause to arrest plaintiffs for obstructing traffic.

Parading Without a Permit: Similarly, the City's arguments regarding section 10-110 cannot remedy the lack of probable cause to arrest everyone on East 16th Street. Because no reasonable officer could have believed a "cohesive unit" was violating section 10-110 or that only those violating the section remained on East 16th Street at the time of the mass arrest, the City's defense fails regardless of its assertions regarding the application of section 10-110.

In addition, the interpretations of section 10-110 advanced by the City are erroneous. The claim that permits are required for sidewalk marches is foreclosed by the plain language of section 10-110's companion regulation, which by its terms does not apply to sidewalk marches. *See* 38 RCNY § 19-02 (2004) (permit requirement applies to "public street or roadway"). In recognition of this limitation, the City sought, unsuccessfully, after the Convention to amend 38 RCNY § 19-02 to extend the permit requirement to sidewalk marches. *See* Exhibits A-C to Declaration of Christopher Dunn (Nov. 23, 2011).[4] The history of this rejected amendment makes clear that no permit was (or is) required for sidewalk marches. The fact that this law was clearly established in 2004 is also evidenced by the City's RNC legal guidelines. PF ¶ 58.

Similarly, there is no merit to the City's argument that section 10-110 can be enforced as a strict liability crime. The legal necessity for a culpable mental state under section 10-110 is underscored by the fact that if the interpretation the City advances were correct, it would mean that any pedestrian on a New York City sidewalk who happened to be near others engaged in an unpermitted street parade—such as Ms. Dinler walking on the sidewalk past the parade on her way to work—would automatically be subject to arrest. Such a result has long been prohibited by state law and by the First Amendment, both of which clearly establish that section 10-110 requires a culpable mental state. Under New York law, "in the absence of a clear legislative intent to impose strict criminal liability, such a construction should not be adopted." *People v. Coe*, 71 N.Y.2d 852, 855 (N.Y. 1988), discussed in *People v. Olwes,* 742 N.Y.S.2d 783, 786 (N.Y. Crim. Ct. 2002) (requiring culpable mental state for violations of NYC code). The City

---

[4] The City proposed to expand the definition of "parade," for which a permit is required, to include "any procession which consists of 35 or more pedestrians proceeding together along a sidewalk on foot . . . "). *See* Exhibit A at 1, Section 1(a) (emphasis added); *see also* Exhibit C, *Criticized, NYPD Withdraws New Definition of "Parade*," Assoc. Press, Aug. 18, 2006 ("Faced with opposition, New York City's police department has withdrawn new rules that would have required any group of 35 people or more walking on a city sidewalk to get a parade permit").

has not pointed to any such legislative intent and, indeed, there is none. *People v. Bezjak*, 812 N.Y.S.2d 829, 839 (N.Y. Crim. Ct. 2006), aff'd, 906 N.Y.S.2d 781 (App. Term 2010) (finding with regard to section 10-110 "no indication of legislative intent to impose strict liability" and requiring a *mens rea*). The City's argument is also foreclosed by Supreme Court precedent establishing, as of 1959, that laws implicating expressive conduct like section 10-110 cannot be constitutionally applied in the absence of a culpable mental state. *See, e.g., Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690-91 (8th Cir. 1992) ("any statute that chills the exercise of First Amendment rights must contain a knowledge element"), citing *Smith v. California*, 361 U.S. 147, 151-53 (1959); *see also American-Arab Anti-Discrimination Committee v. City of Dearborn,* 418 F.3d 600, 610-13 (6th Cir. 2005) (finding parading ordinance unconstitutional because it imposed strict liability).

Thus, not only does the City fail to show there was a "cohesive unit" and that suspected lawbreakers were isolated before arrest, the City also cannot meet the "formidable challenge," *see Carr*, 587 F.3d at 411, of showing an officer could have believed everyone arrested on East 16th Street had "paraded" knowing a permit was required and had not been granted—including those persons who, like Ms. Maurer, intentionally stayed on the sidewalk where they believed no permit was required. PF ¶ 38. No reasonable officer could believe he could infer the mental state of every person in the undifferentiated group of hundreds merely from the "scene" and the "clandestine and furtive manner" in which a few individuals were alleged to have advertised the march (a fact not even known to Essig at the time he ordered the arrests). *See* Defendants' Opposition Brief at 14; *cf. Carr*, 587 F.3d at 411. ("We are not persuaded that the time or character of the march is at all probative as to the marchers' presumed knowledge that a permit was lacking.").

Defendants assert that Essig is nevertheless entitled to qualified immunity because, they allege, it was not clearly established in 2004 if section 10-110 applied to sidewalks or if it was a strict liability crime. *See* Defendants' Opposition Brief at 13-16, 33-34. These arguments, however, are not dispositive of the qualified immunity question before the Court. As explained above, the indiscriminate mass arrest on East 16th Street violated clearly established law and thus forecloses qualified immunity—regardless of what violation Essig believed justified the arrests of some individuals among the group arrested and, more specifically, regardless of whether he erroneously believed section 10-110 was a strict liability crime[5] that applied to sidewalks.[6]

Failure to Disperse:  The City does not dispute that to establish probable cause under Section 240.20(6) it must show that a dispersal order was given, that plaintiffs could have heard it, and that there was time to comply. *See* Defendants' Opposition Brief at 35-38. Instead, the City argues only that questions of fact regarding these elements preclude summary judgment in plaintiffs' favor. The undisputed evidence, however, forecloses the City's argument.

---

[5] As discussed above, there is no merit to the City's claim that there was a lack of clarity about section 10-110's *mens rea* requirement. *People v. Namer*, 812 N.Y.S.2d 824 (N.Y. Crim. Ct. 2006), does not prove otherwise. In *Namer*, the court's unprecedented ruling that section 10-110 was a strict liability crime misconstrued longstanding New York state law and failed to acknowledge, let alone apply, Supreme Court precedent holding that laws implicating expressive conduct require a culpable mental state. At the very most, the holding in *Namer* created some uncertainty about this otherwise clearly established law for the first time in 2006, two years after the arrests in this case, and is no basis for qualified immunity.

[6] There was no doubt in 2004 that section 10-110 did not apply to sidewalks. The City's reliance on *Allen v. City of New York*, 03-cv-2829, 2007 WL 24796 (S.D.N.Y. Jan. 3, 2007), is misplaced. The magistrate judge in *Allen* recommended that the Article III judge find that it was unclear whether section 10-110 applied to sidewalk marches, and grant qualified immunity to the officer. Plaintiffs objected to the recommendations citing, *inter alia*, testimony from the NYPD acknowledging that permits were not required for sidewalk marches. *See* Objection to Report and Recommendation, 03-cv-2829 (Mar. 5, 2007) (Doc. 156). *Allen* settled before the Article III judge conducted *de novo* review of the magistrate judge's recommendations and ruled on the objections, as required under 28 U.S.C. § 636(b)(1)(C).

Undisputed facts establish that Essig never intended to, and never did, give any dispersal order. APF ¶¶ 68, 71, 76-77. Construing the evidence most favorably for the City, the only "dispersal orders" even arguably made on East 16th Street were the unamplified instructions given by two officers for a few minutes as they walked among a noisy crowd of hundreds, well after the block had been sealed off. APF ¶¶ 78-81, 84. No officer could have believed these unamplified instructions were heard by the hundreds seized on East 16th Street. In fact, neither the *Dinler* Plaintiffs nor other arrestees ever heard any such instructions. PF ¶¶ 11, 25, 44; APF ¶ 85.

The undisputed facts also show no reasonable officer could have believed there had been an opportunity to disperse. Officers maintained barricades at both ends while these instructions were given, Essig never instructed these officers to let people exit, and officers testified they did not let people exit. PF ¶¶ 5-10, 21-23, 40-42; APF ¶¶ 70, 73-74, 83.

In sum, the undisputed facts show that no reasonable officer could have believed there was probable cause to arrest everyone seized on East 16th Street, including Ms. Dinler, Ms. Waters, and Ms. Maurer, for violating section 240.20(6). *Cf. Lyons v. City of Seattle*, 214 Fed.Appx. 655, 656-57 (9th Cir. 2006) (finding that repeated, amplified warnings given at multiple locations, while egress was not impeded in any way, sufficient for police to conclude that all present heard dispersal order and had the opportunity to comply). Essig, who had a scripted dispersal order and amplification readily available but chose to utilize neither, *see* APF ¶ 76, is not entitled to qualified immunity based on the undisputed facts above.

## CONCLUSION

For all the foregoing reasons, the *Dinler* plaintiffs urge the Court to grant their motion for summary judgment on their false arrest claims.

                        Respectfully submitted,

                        _____
                        TAYLOR PENDERGRASS (TP-3608)
                        CHRISTOPHER DUNN (CD-3991)
                         DANIEL MULLKOFF
                        New York Civil Liberties Union Foundation
                        125 Broad Street, 19th Floor
                        New York, N.Y.  10004
                        (212) 607-3300

On the brief:  Scarlet Kim

Dated: November 23, 2011           Counsel for the Plaintiffs
        New York, N.Y.