UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

MICHAEL SCHILLER, et al.,

                                             Plaintiff,

                    -against-

THE CITY OF NEW YORK, et. al,                      **04-Civ-7922 (RJS)(JCF)**

                                             Defendants.

------------------------------------------------------------------------- x

CONSOLIDATED RNC CASES                        **(RJS)(JCF)**

------------------------------------------------------------------------- X


**DEFENDANTS' REPLY STATEMENT OF UNDISPUTED MATERIAL FACTS IN
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THE CITY'S "NO-
SUMMONS POLICY" AND "FINGERPRINTING POLICY" DURING THE 2004 RNC
AND COUNTERSTATEMENTS TO PLAINTIFFS' PROPOSED FACTS SUBMITTED
IN <u>OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>[1]**

---

[1] This 56.1 Statement is being submitted in the following forty-four ("44") cases: *Abdell v. City of New York,* 05-cv-8453; *Adams v. City of New York* 05-cv-9484; *Araneda v. City of New York* 05-cv-9738; *Bastidas v. City of New York* 05-cv-7670; *Bell v. City of New York*, 05-cv-3705; *Biddle v. City of New York* 05-cv-1570; *Botbol v. City of New York* 05-cv-1572; *Bunim v. City of New York* 05-cv-1562; *Coburn v. City of New York* 05-cv-7623; *Cohen v. City of New York* 05-cv-6780, *Concepcion v. City of New York* 05-cv-8501; *Crotty v. City of New York* 05-cv-7577; *Dinler v. City of New York* 04-cv-7921; *Drescher v. City of New York* 05-cv-7541; *Dudek v. City of New York* 04-cv-10178; *Eastwood v. City of New York* 05-cv-9483; *Epstein v. City of New York* 05-cv-1563; *Galitzer v. City of New York* 05-cv-7669; *Garbini v. City of New York* 05-cv-1565; *Greenwald v. City of New York* 05-cv-1566; *Grosso v. City of New York* 05-cv-5080; *Jusick v. City of New York* 07-cv-7683; *Kennedy v. City of New York* 07-cv-7678; *Lee v. City of New York* 05-cv-5528; *Lalier v. City of New York* 05-cv-7580; *MacNamara v. City of New York* 04-cv-9216; *Manders v. City of New York* 07-cv-7752; *Meehan v. City of New York* 05-cv-5268; *Moran v. City of New York* 05-cv-1571; *Pagoda v. City of New York* 05-cv-7546; *Phillips v. City of New York* 05-cv-7624; *Pickett v. City of New York* 05-cv-1567; *Portera v. City of New York* 05-cv-9985; *Rigby v. City of New York* 07-cv-7751; *Ryan v. City of New York* 05-cv-1564; *Schiller v. City of New York* 04-cv-7922; *Sikelianos v. City of New York* 05-cv-7673; *Sloan v. City of New York* 05-cv-7668; *Starin v. City of New York* 05-cv-5152 *Stark v. City of New York* 05-cv-7579; *Tikkun v. City of New York* 05-cv-9901; *Tremayne v. City of New York* 05-cv-1568; *Winkleman v. City of New York* 05-cv-2910; and *Xu v. City of New York* 05-cv-7672.

Defendants hereby reply to Plaintiffs' Response to Defendants' Statement of Material Undisputed Facts in Support of Their Motion for Summary Judgment on the City's "No Summons" Policy and the "Fingerprinting Policy" During the 2004 RNC ("Schiller Counter 56.1 Statement") (*Dinler v. City of N.Y.*, 04-cv-7921, Docket Entry. No. 276).[2]  For the convenience of the Court, Defendants restate in **bold typeface** each fact and citation as it was stated in "Defendants Statement of Material Undisputed Facts In Support Of Their Motion For Summary Judgment On the City's "No Summons Policy" and "Fingerprinting Policy" During the 2004 RNC, dated October 3, 2011.  ("Defendants' 56.1 Statement" or "Defs' 56.1"), (*Schiller*, Docket Entry No. 579).  Defendants' reply appears in regular typeface.  ("Defendants Reply 56.1 Statement" or "Defs' Reply 56.1").

Defendants also include in this document a <u>counterstatement</u> and <u>response</u> to the additional facts asserted by Plaintiffs in support of their opposition briefs.  Defendants response and counterstatement to the *Schiller* and *Dinler* Plaintiffs Proposed Undisputed Facts in Opposition to Defendants' Motion for Summary Judgment ("Schiller Facts") (*Dinler*, Docket Entry No. 276) appears after Defendants Reply 56.1 Statement ("Defendants' Responsive Schiller Facts" or Defs' Responsive Schiller Facts").  Defendants also include their response and counterstatement to the facts asserted by the *MacNamara* Plaintiffs in support of their opposition brief ("MacNamara Facts") (*MacNamara v. City of N.Y.*, 04-cv-9216, Docket Entry No. 478), which appears in this document directly proceeding Defendants responses to the Schiller Facts ("Defendants' Responsive MacNamara Facts" or "Defs' Responsive MacNamara Facts").

---

[2] It does not appear that Plaintiffs have docketed any counterstatement or proposed additional facts in *Schiller* (the lead RNC case for purposes of ECF consolidation).

**The 2004 Republican National Convention**

1.      In early 2003, Mayor Michael Bloomberg announced that the 2004 Republican National Convention (the "RNC" or "Convention") would be held in New York City (the "City").  *Dinler v. City of New York*, 607 F.3d 923, 929 (2d Cir. N.Y. 2010); Deposition of Joseph Esposito ("Esposito Depo."), annexed to the Declaration of Jeffrey A. Dougherty ("Dougherty Decl.") as Exs. A-J, at 147:25, 148:2-7.[3]  This fact is undisputed by Plaintiffs.

2.      The Convention was held between Monday, August 30, 2004 and Thursday, September 2, 2004.  The main venue of the Convention was Madison Square Garden ("MSG" or the "Garden") but Convention related activities and events also took place throughout the City during the days immediately preceding the RNC.  2004 RNC NYPD Executive Summary ("RNC Executive Summary"), annexed to Dougherty Decl. as Ex. N, at Bates Nos. 7079-83, 7120-30), Declaration of Bruce Smolka ("Smolka Decl.") at ¶ 2, annexed to the Dougherty Decl. as Ex. P.[4]  This fact is undisputed by Plaintiffs.

3.      The New York City Police Department (the "NYPD" or the "Department") was the lead local law enforcement agency with responsibility for security and public safety during the Convention.  RNC Executive Summary at Bates No. 7082; Smolka Decl. at ¶ 2; Declaration of David Cohen ("Cohen Decl.") at ¶¶ 5, 23.  This fact is undisputed by Plaintiffs.

---

[3] To the extent Defendants have construed any facts stated for purposes of this motion in the light most favorable to the Plaintiffs, Defendants reserve their rights to put in evidence and argue otherwise in the event of any trial and for any purposes other than this motion.

[4] Defendants note that the Smolka Decl. was executed on December 1, 2008 in connection with dispositive briefing in a related RNC Consolidated action, *Marcavage v. City of New York*, 05 Civ. 4949 (RJS)(JCF).

4.      As many as 50,000 people were expected to participate in the Convention, including (a) 2,509 delegates, (b) 2,344 alternates, (c) 15,00 members of the media/press, (d) 15,000 donors, Governors, Congressional delegations and staff, and 15,000 family, friends and other RNC visitors.  **RNC Executive Summary at Bates No. 7082; Smolka Decl. at ¶ 12; *Marcavage v. City of New York*, 05 Civ. 4949, 2010 U.S. Dist. LEXIS 107724, *4 (S.D.N.Y. Sept. 29, 2010)) (Sullivan, J.).**  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting their dispute, admit that the evidence cited by Defendants supports this fact, and otherwise fail to address the other cited authority.  Therefore, this fact should be deemed undisputed.[5]

5.      In addition, the then incumbent Republican President and Vice President of the United States were expected to participate in the RNC.  The First Lady was also scheduled to address the assembly during the Convention.  **RNC Executive Summary at Bates Nos. 7082-83; Smolka Decl. at ¶ 12; Cohen Decl. at ¶ 5.**  This fact is undisputed by Plaintiffs.

6.      From the perspective of the Republican party and the delegates, one of the key missions of the Convention was to legally nominate President George W. Bush and Vice President Dick Cheney as the Republican party candidates for the upcoming national Presidential election.  **RNC Executive Summary at Bates Nos. 7082-83; Deposition of William D. Harris, annexed to Dougherty Decl. as Ex. Q at 6:17-22, 7:1-5, 19-22, 230:12-**

_____

[5] Plaintiffs routinely interject legal argument into their Response to Defendants 56.1 Statement. This practice is improper, Defendants do not respond to it because it is improper, and Plaintiff's legal argument should not be considered.  Defendants do not concede the arguments made by Plaintiffs.  Insofar as Plaintiffs make only legal arguments, or make factual assertions that are themselves unsupported or entirely contradicted by the substantial evidence in the record (an practice endemic to their statement of facts), the Court should deem the Defendants' factual assertions to be undisputed.

**22, 231:1; Deposition of David Cohen ("Cohen Depo."), annexed to Dougherty Decl. as Exs. K-M at 397:13-25, 398:1-25, 399:2-8.** This fact is undisputed by Plaintiffs.

7.     **It was anticipated that New York City would see a volume of protest activity not seen in decades. In fact, hundreds of thousands of protestors were expected to come to the City during the RNC to engage in protest activity and express various messages. RNC Executive Summary at Bates No. 7082; Smolka Decl. at ¶ 7; Cohen Decl. at ¶ 5, End-User Reports incorporated by reference into Cohen Decl. at ¶¶ 10-13 ("End-User Reports"), RNC Intelligence Appendix ("RNC Intelligence Appendix") annexed to Cohen Decl. as Ex. C at p. 11; Cohen Depo at 886:21-24; Esposito Depo. at 143:3-9, 787:3-16.** Plaintiffs seek to dispute this fact yet admit that the evidence cited by Defendants supports this fact. In addition, the testimony cited by Plaintiffs when read in a fair context fails to create a dispute. *See* Deposition of Joseph Esposito ("Esposito Depo.") at pp. 949:17-951:1, annexed to the November 23, 2011 Declaration of Jeffrey A. Dougherty ("11/23/11 Dougherty Decl."), as Exs. A – H.. In addition, Plaintiffs do not dispute related facts. *See Schiller* Counter 56.1 Statement at ¶¶ 211, 228-229. Therefore, this fact should be deemed undisputed.

8.     **Hundreds of thousands of people were expected to come to the City during the RNC to engage in protest. (Cohen Decl. ¶5).** Plaintiffs seek to dispute this fact but fail to cite any evidence supporting their dispute and admit that the evidence cited by Defendants supports this fact. Therefore, this fact should be deemed undisputed.

9.     **It was believed that the overwhelming number of these individuals were coming to the City to express their First Amendment rights and engage in lawful protest activity. Cohen Depo. 884:4, 885:12-25, 886:3.** This fact is undisputed by Plaintiffs.

10.     **Nevertheless, it was widely realized that based on the number of expected protestors expected and the various political and social views and issues they**

would be expressing that emotions would run high and RNC demonstrations would be highly charged.  Cohen Decl. ¶ 7, Cohen Depo. 45:5-25, 46:2-25, 47:2; Smolka Decl. ¶ 7; *see also Marcavage*, 05 Civ. 4949 (RJS)(JCF), 2010 U.S. Dist. LEXIS 107724, *14 (S.D.N.Y. 2010) (recognizing tone of RNC demonstrations as "highly charged").  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting their dispute and admit that the evidence cited by Defendants supports this fact.  Therefore, this fact should be deemed undisputed.

11.    The RNC quickly became a focal point for voicing opposition to the policies of the Bush administration.  Cohen Decl. ¶ 7.  This fact is undisputed by Plaintiffs.

12.    For example, Organizers from United for Peace and Justice, a coalition of local and national organizations opposing the American war against Iraq organized a large march and rally planned for August 29, 2004 and predicted that 250,000 people would participate.  RNC Executive Summary at Bates No. 7082; Smolka Decl. ¶ 7; *United for Peace & Justice v. City of New York*, 243 F. Supp. 2d 19, 20 (S.D.N.Y. 2003).  This fact is undisputed by Plaintiffs.

**The NYPD Immediately Began Planning For The RNC To Ensure For Security And Safety During The RNC.**

13.    When it was announced that New York City would host the RNC, the NYPD immediately began developing plans to provide a safe and secure environment for (i) the participants in the Convention process including the President and Vice President of the United States, (ii) the hundreds of thousands of people expected to come to the City to engage in protest activity, (iii) summer tourists, and (iv) City residents and businesses.  The NYPD's planning and preparations continued up and through the Convention.  Cohen Decl. ¶ 5; Smolka Decl. at ¶ 2; Esposito Depo. 147:25, 148:2-21, 899:16-25, 900:2-20.  This fact is undisputed by Plaintiffs.

14.    **The Convention was the first political convention being held in New York City after 9/11 and in a post-9/11 tactical environment.  Deposition of John Colgan ("Colgan Depo.") at 71:13-15, Declaration of Brian M. Jenkins ("Jenkins Decl.") at ¶¶ 16, 19-20.**  Plaintiffs do not dispute that the RNC was the first political convention held in the City after 9/11 yet otherwise attempt to dispute this fact without citing any supporting evidence. Therefore, this fact should be deemed undisputed.

15.    **In July of 2003, the RNC was deemed a National Special Security Event ("NSSE").  Cohen Decl. ¶5; Esposito Depo 268:16-18, 269:7-25, 270:2, 270:3-9; 597:19-23, 709:11-24, 712:6-23, 713:18-22.**  This fact is undisputed by Plaintiffs.

16.    **NSSE status is declared by the United States Department of Homeland Security for certain events, usually because an event may seem like an attractive target for terrorists or assassins due to the event's visibility or political connection.  (CRS Report for Congress - National Special Security Events". Congressional Research Service, Library of Congress. 2008-03-19.  http://opencrs.cdt.org/getfile.php?rid=63386; "Fact Sheet: National Special Security Events". Office of the Press Secretary, United States Department of Homeland Security. 2006-12-29. http://www.dhs.gov/xnews/releases/pr_1167323822753.shtm;  Jenkins Decl.  ¶¶23-24.**  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting their dispute, pose an irrelevant argument about the date of the cited evidence and otherwise fail to address Defendants other supporting evidence.  Defendants annex the cited publically available CRS Reports annexed to the 11/23/11 Dougherty Decl. as Ex. I, and Department of Homeland Security Fact Sheets annexed to the 11/23/11 Dougherty Decl. as Ex. V.  For all of these reasons, this fact should be deemed undisputed.

17.    **The NSSE designation heightened the "level of concern" the NYPD had about securing the safety of the City and the RNC.  Esposito Depo. 712:6-23, 713:18-22.**  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting their dispute except an excerpt of Chief Esposito's testimony regarding "process[ing]" of "people who were [already] arrested" which neither disputes the asserted fact, the context in which it was presented nor in any credible manner supports their added claim that the RNC's NSSE designation played no role whatsoever in the adoption of the No Summons Policy and the related Fingerprinting Policy (hereinafter the "Policies").  Accordingly, this fact should be deemed undisputed.

18.    **The RNC was one of the largest events ever policed by the NYPD in terms of resource deployment, the scope of the event, and the sheer volume of participants expected to be involved in all aspects of the Convention.  RNC Executive Summary at Bates No. 7082; Esposito Depo 728:20-25, 729:2-8; Smolka Decl. ¶ 12.**  This fact is undisputed by Plaintiffs.

19.    **In addition to the usual policing responsibilities posed by a large-scale political event, both the City and the RNC were prime targets for international terrorism, which compounded the challenge of maintaining public safety.  Cohen Decl. ¶5.**  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting their dispute.  Instead, Plaintiffs quibble over verbatim wording of Commissioner Cohen's Declaration.  Plaintiffs also pose a baseless and improper legal argument that this fact "expressed an expert opinion Deputy Commissioner Cohen, who the City did not designate as an expert."  First, this legal argument is wholly unresponsive to the fact at issue.  Second, this argument completely fails to consider that Commissioner Cohen is a named defendant in the RNC litigation and a fact witness who Plaintiffs admit played a crucial role in the NYPD's preparations for the RNC and was the conduit of intelligence information to Chief Esposito and Commissioner Kelly.  (*See* Schiller

Facts¶¶ 21-27, 30, 41-46, 64).   Thirdly, Plaintiff's current argument is belied by their previous statements and admissions to Defendants, in which Christopher Dunn, Esq., Plaintiffs' attorney, affirmed that "we recognize that Commissioner Cohen has <u>fact testimony</u> that may bear on the no-summons policy, including information about what was conveyed to the RNC Executive Committee (information that might include facts and assessments conveyed).   We <u>agree that this information is non-expert</u> and that his current deposition should be used to discovery that information."   December 20, 2010 email from Christopher Dunn, Esq. to Peter Farrell, Esq. annexed to 11/23/11 Dougherty Decl. as Ex. J (emphasis added).   Therefore, this fact should be deemed undisputed.[6]   For all of these reasons, this fact should be deemed undisputed.

> 20.   **The NYPD was mindful of the City's status as a prime target of international terrorism, and the NYPD was keenly aware that a large political event such as the RNC could attract anarchist violence and unlawful civil disobedience.** *Dinler v. City of New York*, **607 F.3d 923, 929 (2d Cir. N.Y. 2010); Cohen Decl. ¶¶ 7, 14-23; End-User Reports; RNC Intelligence Appendix; Commissioner Cohen's Talking Points ("Talking Points") annexed to Cohen Decl. as Ex. A and Commissioner Cohen's PowerPoint slide presentation ("PowerPoint") annexed to Cohen Decl. as Ex. B.** Plaintiffs seek to dispute this fact but fail to cite any evidence sufficient to create a genuine dispute of material fact.   First, Plaintiffs' argument that this fact is based on expert opinion must be rejected for all of the reasons stated by Defendants in Paragraph 19 *supra*.   Second, Plaintiffs' argument regarding the circumstances and time period is unresponsive to the fact at issue and fails to recognize that both the citations provided and the record as a provide this context.   Third, Plaintiffs are aware that

---

[6] Defendants hereby incorporate this response into of their responses in reply to Plaintiffs' "arguments" suggesting Commissioner Cohen has posed "expert opinion" as part of Defendants 56.1 Statement.

Chief Esposito identified numerous End User Reports as indicating the threat of terrorism during the RNC.  Esposito Depo. at 1221:13-1225:16, End User Report, Bates No. 102549; Esposito Depo. 1237:16-1242:22, End User Reports, Bates Nos. 102584-102585; Esposito Depo. 1255:17-1258:16, End User Report, Bates No. 102589; Esposito Depo. 1244:16-1255:13, End User Reports, Bates Nos. 102592-102595; Esposito Depo. 1255:14-1258:16, End User Report, Bates No. 102598; Esposito Depo. 1385:23-1389:13, End User Reports, Bates Nos. 102785-102786.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the No Summons Policy and related Fingerprinting Policy (the "Policies") is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Therefore, this fact should be deemed undisputed.

**In Order To Properly Prepare For The RNC The NYPD Intelligence Division Began To Investigate And Analyze Potential Threats Facing the City And The RNC.**

21.     **In order to prepare for policing the Convention and to ensure the public safety of the people who live and work in New York, as well as the demonstrators and those involved in the Convention, the NYPD Intelligence Division (the "Intelligence Division"), under the leadership of Commissioner David Cohen began to gather and analyze intelligence information about potential threats facing the City.  Cohen Decl. ¶¶ 4-5, 6, 8-12; End-User Reports; Cohen Depo. 42:12-25, 43:1-8; 45:5-25, 46:2-25, 47:2; Esposito Depo. 358:13, 359:16-22, 361:17-25, 362:2-12, 713:9-11, 777:9-23.**  This fact is undisputed by Plaintiffs.

22.     **David Cohen has served as the NYPD's Deputy Commissioner of Intelligence since February 2002.  In that capacity, he has overall responsibility for the**

leadership and operation of the NYPD Intelligence Division, including the gathering and analysis of information about potential criminal activity and terrorism.  Prior to joining the NYPD, he served for 35 years with the United States Central Intelligence Agency ("CIA") holding positions in both its analysis and operational arms.  As the Director of the CIA's Directorate of Operations from 1995-1997, he was responsible for the Agency's worldwide intelligence and information gathering operations.  As Associate Deputy Director of the Directorate of Intelligence from 1991-1995, he provided day to day leadership for the CIA's analysis program, including the substantive review of all CIA political, economic and military assessments prepared for the President of the United States and his senior national security advisors.  (Cohen Decl. ¶¶ 2-4; *MacWade v. Kelly*, 460 F.3d 260, 266 (2d Cir. N.Y. 2006)).  This fact is undisputed by Plaintiffs.

23.     The role of the Intelligence Division during the RNC was to collect information in order to identify and assess any threat to the safety and security presented by individuals or groups who viewed the RNC and the City as a target for terrorist acts, other acts of violence or civil disorder.  In that capacity, the Intelligence Division also collected information to learn about the extent and nature of expected demonstration activity.  Cohen Decl. ¶ 6; Cohen Depo. 42:12-25, 43:1-8; 45:5-25, 46:2-25, 47:2; 56:4-12; 799:12-21;  Esposito Depo. 358:13, 359:16-22, 361:17-25, 362:2-12, 713:9-11, 777:9-23; *Dinler v. City of New York*, 607 F.3d 923, 929-30 (2d Cir. N.Y. 2010).  This fact is undisputed by Plaintiffs.

24.     **The Intelligence Division gathered information from both non-confidential, open sources, such as the internet and from confidential sources.[7]   Cohen Decl. ¶4, 6, 8-11, End-User Reports; Esposito Depo. 360:2-12.**   This fact is undisputed by Plaintiffs.

25.     **Groups and individuals from across the country availed themselves of the communication potential of the internet for organizing protest.  Cohen Decl. ¶ 7.**  This fact is undisputed by Plaintiffs.

26.     **In connection with planning for the safety and security of the RNC, the Intelligence Division obtained information about potential unlawful activity by monitoring publicly available websites and press reports ("Open-Sources") as well as by other lawful investigative means available to it.  Cohen Decl. ¶ 8.**  This fact is undisputed by Plaintiffs.

27.     **Much of the Open-Source information was also widely and publicly disseminated.   Cohen Decl. ¶8, 10-11, End-User Reports.**   This fact is undisputed by Plaintiffs.

28.     **Some declared an intent to engage in unlawful conduct ranging from civil disobedience at one end of the spectrum, to destruction of property and physical violence at the other.  Cohen Decl. ¶ 7; Esposito Depo. 357:20-25, 358:2-6, 365:2-7, 17-20, 744:7-16, 1080:25, 1081:2-7, 1104:10-25.**  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a dispute.  Plaintiffs' remaining arguments are completely unresponsive and

---

[7] As this Court is aware, Defendants are <u>not</u> relying on the confidential intelligence in these cases.  All references to "intelligence" herein is to the open-source information.

irrelevant to the fact at issue and must be rejected.   Therefore, this fact should be deemed undisputed.

**29.   The threat of unlawful conduct was of great concern to Commissioner Cohen, Chief of Department Joseph Esposito and the NYPD because the history of protest in major cities, including the events in Seattle in 1999 during the meeting of the World Trade Organization, demonstrated that the police could be easily overwhelmed in the absence of adequate preparation.   Cohen Decl. ¶ 7; End-User Reports, Bates No 102564; Cohen Depo. 780:23-25, 781:2-17; Esposito Depo. 1225:17-25, 1226:2-16, 1234:21-25, 1235:2-14; 1226:17-25, 1490:5-25, 1491:2-25, 1492:2, 1942:11-25, 1943:2-10.**   Plaintiffs do not dispute that "the NYPD was concerned about the threat of unlawful conduct."   Plaintiffs otherwise seek to dispute this fact but fail to cite any evidence supporting a dispute.   Plaintiffs' argument that the cites sources do not support the assertions must be rejected because a plain reading of Commissioner Cohen's declaration and the other cited sources supports this fact.   The RNC Intelligence Appendix provides further support.   RNC Intelligence Appendix at pp. 8-12.   Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.   *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.   Therefore, this fact should be deemed undisputed.

**30.   Throughout the preparation process, Commissioner Cohen was kept fully informed of the information being developed by his staff.   It was his duty to analyze that information and to brief the high-ranking members of the Department who were responsible for planning and coordinating the NYPD's overall efforts to provide security**

and ensure the public safety of the City during the Convention (the "RNC Executive Committee").  The RNC Executive Committee consisted of Police Commissioner Kelly, Chief of Department Joseph Esposito and various other NYPD executives.  Generally, these briefings concerned the nature and scope of expected demonstration activity and the threats to the security of the City during the RNC.  Cohen Decl. ¶ 9.  This fact is undisputed by Plaintiffs.

31.     Chief Esposito, as the Chief of Department, is the highest-ranking uniformed member of the NYPD.  He is responsible for directing and controlling the daily operations of the seven major enforcement bureaus within the NYPD.  Chief Esposito's tenure with the NYPD began in 1968 and he has served as Commanding Officer of the Strategic and Tactical Command (SATCOM), where he was in charge of all Patrol, Housing, Narcotics and Detective Operations in the Brooklyn North area.  He has also served as the Commanding Officer of the 34th Precinct, 66th Precinct and the 83rd Precincts.  Chief Esposito has earned some of the Department's highest medals and commendations, which include the Combat Cross, Medal of Valor and the Medal for Exceptional Merit.  Chief Esposito's substantial experience in planning for and policing demonstrations include the February 2002 Anti-War demonstration and the 2003 WEF demonstration,       among       numerous       others.       *See* (**http://www.nyc.gov/html/nypd/html/administration/department_co.shtml**, last visited Oct. 3, 2011).  This fact is undisputed by Plaintiffs.

**Commissioner Cohen Was Aware Of Civil Disorder And Violence That Had Plagued Other Cities Hosting Large Events**

32.     Commissioner Cohen was aware of and analyzed large scale events occurring prior to the RNC that encompassed similar threats to those facing the RNC.

**Cohen Decl. ¶ 7, 14, RNC Intelligence Appendix.**  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a dispute.  Plaintiffs' argument that this fact is based on expert opinion must be rejected for all of the reasons stated by Defendants in Paragraph 19 *supra*.  The similarity between the RNC and other large scale events occurring before it is clearly evident from both the sources cited as well as other facts asserted in Defendants' 56.1 Statement.  *See Dinler v. City of New York,* 607 F.3d 923, 929-930 (2d Cir. 2010); Defs' Reply 56.1 at ¶¶ 32-61. Therefore, this fact should be deemed undisputed.

     33.    **Commissioner Cohen analyzed the record of major protest activity connected to large-scale events around the world between 1999 and 2004.  Cohen Decl. 7, 14, 22;  RNC Intelligence Appendix.**  Plaintiffs do not dispute that "Commissioner Cohen analyzed some events prior to the RNC."  Plaintiffs fail to address the remaining portions of the statement of fact and instead pose an unresponsive argument about the "implication" of this fact without citing any evidence supporting a material dispute.  Accordingly, this fact should be deemed undisputed.  *See also Dinler v. City of New York,* 607 F.3d 923, 929-930 (2d Cir. 2010).

     34.    **Commissioner Cohen reviewed and analyzed the 1999 World Trade Organization's Ministerial Conference in Seattle, Washington ("WTO") which event became known as "The Battle of Seattle" based on the 50,000 – 100,000 protestors who utilized extremist elements to overwhelm law enforcement and were successful in causing the cancellation and delaying of scheduled WTO events by various means including chaining themselves together in roadways.  Cohen Decl. ¶¶7, 14, 22  RNC Intelligence Appendix p. 8.**  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a dispute.  Plaintiffs' argument that this fact reflects an expert opinion must be rejected for all of the reasons stated by Defendants in Paragraph 19 *supra*.  Both the record in this litigation and the cited sources make it obvious that Commissioner Cohen conducted this analysis <u>before the RNC</u>

and in order to assist the NYPD in planning for the RNC.  (*See Dinler v. City of New York,* 607 F.3d 923, 929-930 (2d Cir. 2010); Schiller Facts at ¶¶ 21-24, 30, 33 (indicating certain undisputed facts).  Finally, the fact that the RNC Intelligence Appendix was created in 2007 is irrelevant, and cannot create a material dispute regarding the timing of Commissioner Cohen's analysis of the Battle of Seattle because Commissioner Cohen explained that the information in that document was available to the Intelligence Division and was communicated to Commissioner Kelly and Chief Esposito in connection with their making policy decisions regarding the policing of the RNC.  (Declaration of David Cohen dated October 4, 2011 ("Cohen Decl." at ¶ 24)).[8]  Accordingly, this fact should be deemed undisputed.

>     35.    **The Battle in Seattle also involved acts of vandalism, violence, and property destruction including setting fires, overturning police vehicles and emergency vehicles, and vandalizing and looting local businesses.  Cohen Decl. ¶¶ 7, 20-24, RNC Intelligence Appendix p. 8.**  Plaintiffs fail to clearly indicate whether they dispute this fact and instead pose an unresponsive argument about an "intended" scope or breadth of the fact without citing any evidence supporting a material dispute.  Plaintiffs then cite irrelevant, immaterial and inadmissible evidence regarding a settlement agreement which in no way even closely relates to Defendants asserted facts much less disputes it.  Accordingly, this fact should be deemed undisputed.

---

[8] Defendants note that they obviously do not assert that information post dating the RNC was a basis for the Policies.  Excluding information post-dating the RNC, the RNC Intelligence Appendix represents the "threat environment" that was communicated to NYPD decision makers.  (Cohen Decl. at ¶ 24).  Defendants incorporate their response stated in Paragraph 34 into all subsequent responses regarding Plaintiffs' arguments about the creation of the RNC Intelligence Appendix in 2007.

36.     **Commissioner Cohen also analyzed the violent protests during the Free Trade of the Americas meeting in Miami, Florida in 2003. Cohen Decl. ¶¶ 7, 14, 20-24, RNC Intelligence Appendix.**  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a dispute.  Plaintiffs' argument regarding the timing of Commissioner Cohen's analysis is neither a basis to dispute this fact nor a valid explanation for their purported unwillingness to "respond" to it.  Both the record in this litigation and the cited sources make it obvious that Commissioner Cohen conducted this analysis <u>before the RNC</u> and in order to assist the NYPD in planning for the RNC.  *See Dinler v. City of New York,* 607 F.3d 923, 929-930 (2d Cir. 2010); Schiller Facts at ¶¶ 21-24, 30, 33 (indicating certain undisputed facts).  Accordingly, this fact should be deemed undisputed.

37.     **Commissioner Cohen also analyzed major city protests which occurred in Davos, Switzerland; Quebec City, Canada; Genoa, Italy; San Francisco, California; and Cancun, Mexico. Cohen Decl. ¶¶ 7, 14, 22, RNC Intelligence Appendix at 8-11.**  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a dispute. Plaintiffs' argument regarding the timing of Commissioner Cohen's analysis is neither a basis to dispute this fact nor a valid explanation for their purported unwillingness to "respond" to it. Both the record in this litigation and the cited sources make it obvious that Commissioner Cohen conducted this analysis <u>before the RNC</u> and in order to assist the NYPD in planning for the RNC.  *See Dinler v. City of New York,* 607 F.3d 923, 929-930 (2d Cir. 2010); Schiller Facts at ¶¶ 21-24, 30, 33 (indicating certain undisputed facts).  Accordingly, this fact should be deemed undisputed.

38.     **Based upon Commissioner Cohen's analysis of these events, he surmised that it only takes a small number of extremist elements to trigger spiraling disorder, massive property damage, and violence at large-scale demonstrations.  Cohen**

**Decl. ¶¶ 7, 20-24; RNC Intelligence Appendix; End-User Reports.**  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a dispute.  Plaintiffs' argument that this fact reflects an expert opinion must be rejected for all of the reasons stated by Defendants in Paragraph 19 *supra.*  Accordingly, this fact should be deemed undisputed.

        **39.**      **Commissioner Cohen communicated his analysis to Commissioner Kelly and Chief Esposito.   Cohen Decl. ¶¶4-24; End-User Reports; Talking Points; PowerPoint; RNC Intelligence Appendix; Cohen Depo. 394:4-25, 395:2-25, 396:2-25, 397:2-25, 398:2-25, 399:3-15.**   Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a dispute.   Instead, Plaintiffs pose a pedantic argument about the "analysis" Commissioner Cohen communicated to Commissioner Kelly and Chief Esposito.  The record as a whole, the Cohen Declaration, a plain reading of Defendants 56.1 Statement, and the arguments posed in Defendants Brief unequivocally indicate the "analysis" conveyed was about the security threats posed by violent protests at in other large metropolitan areas prior to the RNC.  *See also Dinler v. City of New York,* 607 F.3d 923, 929-930 (2d Cir. 2010) ("To address those concerns, David Cohen, the NYPD's Deputy Commissioner of Intelligence … researched the security threat posed by violent protests at other large political events. Based on his analysis of the chaos and violence caused by recent protests in other metropolitan areas, including recent large-scale protests in Seattle and Miami, Commissioner Cohen concluded that even a small extremist element could trigger spiraling violence at large political demonstrations. Accordingly, Commissioner Cohen and the NYPD's Intelligence Division recognized that the NYPD needed a strategy to avoid disorder and violence during the RNC.").  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the

evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Therefore, this fact should be deemed undisputed.

      **40.**     **Chief Esposito was also aware of the propensity for civil disorder to become violent and shut down an entire event and disrupt a city based on the history of demonstrations and events such as the Battle of Seattle and the Free Trade of the Americas Meeting in Miami.  Esposito Depo. 1490:5-25, 1491:2-6.**  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a dispute.  Instead, Plaintiffs argue that the citation does not support the fact.  However, the cited evidence along with the citations now provided establish this fact as undisputed.  Esposito Depo. at 1476:25 – 1477:25 ("if you looked at Seattle, if you looked at other venues, Miami, the G8, around the world, all of the events, you've seen the activity that could have taken place"); 1481:7 – 1482:15 ("it goes back to the global view of what happens when you have an event like the RNC in the City.  Like the WEF, like the G8.  It's …what we have learned by looking a those events over the years, when you look at Seattle, when you look at Miami, look at all those countries, all the cities that had G8s, what is the intel that we extract from watching those events, and what we see is large numbers of people engaging in various types of criminal activity, everything from blocking traffic to bombing buildings, bombing police cars, bombing police stations, breaking windows.  So it runs the gamut … we[  ] learned a lot of those people were planning to come [to the RNC]") 1510:21 – 1512:3 ("I talked about Seattle, Washington, Chicago, G8 events around the globe.  If you looked at those events, if you studied those events, if you analyzed those events, if you observed those events, very rarely does the bomb throwing start out as bomb throwing .  It starts out as unlawful civil disobedience a lot of times – marching without a permit, blocking traffic, blocking the door to an event"); 1517:25 – 1518:12 ("…Chief Graham did a presentation about tactics

employed in the burning of Seattle, in the battle in Miami, in the G8s, events around the globe that were analyzed by the disorder[  ] control unit, which is what he was the [Commanding Officer] of, and based on the information he brought to us, part of that played into our no-C-summons policy."); *see also* Esposito Depo. at 1225:23 – 1226:25; 1572:17 – 1573:11; 1583:17 – 1584:12;  (all referencing Battle in Seattle and/or other cities that experienced disruptive, violent protest activity prior to the RNC).  Accordingly, this fact should be deemed undisputed.

**The Intelligence Division Prepared End-User Reports Documenting The Threats Facing the City and The RNC**

**41.    From October of 2003 through June 2004 Commissioner Cohen's staff prepared reports, usually weekly.  As the Convention approached, during July and August of 2004, reports were prepared with greater frequency.  During the week of the RNC, they increased to twice daily (collectively as the "End-User Reports").  The vast majority of information contained in the End-User Reports was drawn from Open-Sources. Cohen Decl ¶ 10; End User Reports.**  This fact is undisputed by Plaintiffs.

**42.    Commissioner Cohen and his staff discussed the information contained in the End-User Reports as it was being developed, and it was considered part of the body of information being analyzed on a continuing basis by Commissioner Cohen and the NYPD.  Cohen Decl. ¶ 12.**  This fact is undisputed by Plaintiffs.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

**43.    Commissioner Cohen met with the RNC Executive Committee regularly and with increasing frequency as the RNC approached.  Cohen Decl. ¶13; Cohen**

20

Depo. 507:24-25, 508:2-25, 509:2-25, 510:2-25, 511:2; Esposito Depo. 266:16-25, 267:7-18, 24-25, 268:2-7, 358:20-25, 359:2-15, 361:8-16 362:15-12, 396:3-8, 713:12-17 777:9-23, 778:2, 899:16-25, 900:2-23, 980 4-19; 988:24-25, 989:2-7, 1447:24-25, 1448:2-13.  This fact is undisputed by Plaintiffs.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

      44.    **The intelligence provided to Chief Esposito and the NYPD in advance of the RNC and regarding the RNC was in written form and through oral communications. Esposito Depo. 712:24-25, 713:8, 975:22-25, 976:2-17, 1413:18-24, 1416:11-18 1447:12-23; Cohen Depo. 274:20-25, 275:2-25, 276:2-4**  This fact is undisputed by Plaintiffs.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Plaintiffs' "qualified objection" regarding the "intelligence" at issue in this matter is neither responsive to the fact as written nor the cited evidence which supports Defendants' statement of fact.  *See also* Cohen Decl. at ¶¶ 9, 13, 15-19, 24; End User Reports; Talking Points; PowerPoint; RNC Intelligence Appendix.  Defendants incorporate this response to all of Plaintiffs' "qualified objections" regarding the intelligence.

**45.     Commissioner Cohen also provided the RNC Executive Committee with the information contained in the End-User Reports and made the reports available to the RNC Executive Committee.  Cohen Decl. ¶¶ 10-13; Cohen Depo. 507:24-25, 508:2-25, 509:2-25, 510:2-25, 511:2; Esposito Depo. 266:16-25, 267:7-18, 24-25, 268:2-7, 358:20-25, 359:2-15, 361:8-16 362:15-12, 396:3-8, 713:12-17 777:9-23, 778:2, 899:16-25, 900:2-23, 980 4-19; 988:24-25, 989:2-7, 1446:4-17, 1447:24-25, 1448:2-13.**  This fact is undisputed by Plaintiffs.

**Commissioner Cohen's Tripartite Threat Assessment**

46.     **Based on the intelligence obtained in advance of the RNC that "[t]he Department had to be ready at every location" and in "every part of the City," Chief Esposito explained, "we had to be alert and aware of the potential for those illegal activities throughout the City during the time that the Convention was here."  Esposito Depo. 386:2-18; Cohen Decl. ¶¶ 7, 14-24;  End-User Reports; Talking Points; PowerPoint; Intelligence Appendix.**  This fact is undisputed by Plaintiffs.

**47.     Based on the culmination of all of the information gathered and the End-User Reports, Commissioner** [Cohen] **concluded that the City faced serious threats of violence and disorder similar to what had occurred in Seattle, Quebec, Genoa, Cancun, San Francisco and Miami.  Cohen Decl. ¶¶ 7, 14-24;  End-User Reports; Talking Points; PowerPoint; Intelligence Appendix.**  This statement of fact does indeed refer to Commissioner Cohen.  His name was inadvertently omitted from this paragraph in Defendants' 56.1 Statement.  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a dispute.  Plaintiffs' argument that this fact reflects an expert opinion must be rejected for all of the reasons stated by Defendants in Paragraph 19 *supra.*  Accordingly, this fact should be deemed undisputed.

48.     **Commissioner Cohen believed these threats were compounded by the heightened status of the City as a target of terrorism during the RNC.  Cohen Decl. ¶ 14.** Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a dispute.  Plaintiffs' argument that this fact reflects an expert opinion must be rejected for all of the reasons stated by Defendants in Paragraph 19 *supra; see also* Defs' Reply 56.1 at ¶¶ 46-79 (regarding the City' and the RNC's status as targets of terrorism).   Accordingly, this fact should be deemed undisputed.

49.     **Specifically, Commissioner Cohen concluded that during the RNC, the City faced a tripartite threat of: (1) international terrorism; (2) anarchist violence; and (3) wide-spread civil disobedience.  Cohen Decl. ¶¶ 14-15.**  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a dispute.  Plaintiffs' argument that this fact reflects an expert opinion must be rejected for all of the reasons stated by Defendants in Paragraph 19 *supra.*  Accordingly, this fact should be deemed undisputed.

50.     **Commissioner Cohen conveyed this multi-faceted threat assessment to the RNC Executive Committee.  Cohen Decl. ¶¶ 14-24.**  Plaintiffs do not dispute that "Deputy Commissioner Cohen conveyed information and opinions to the RNC Executive Committee." Plaintiffs otherwise seek to dispute this fact but fail to cite any evidence supporting a dispute. Plaintiffs' argument that this fact reflects an expert opinion must be rejected for all of the reasons stated by Defendants in Paragraph 19 *supra.*   Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See*

Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

**51.    Commissioner Cohen believes the End-User Reports and his knowledge of prior disorder fairly and accurately reflect the information on which his threat assessment was made, as well as the substance of the information he provided to the RNC Executive Committee.  Cohen Decl. ¶¶ 10-13; End User Reports; Cohen Depo. 272:2-11; 434:12-25, 435: 2-25, 436:2-25, 437:2-25; 438:2-25; 439:2-21; 465:21-25, 466:2-12; 507:24-25, 508:2-25, 509:2-25; 510:2-25; 511:2; 645:2-25, 646:2-15; Esposito Depo. 1446:4-17, 1448:2-13.**  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a dispute.  Plaintiffs' inability to "understand" this fact or unwillingness to interpret it on its face are immaterial and cannot create a material dispute.  Plaintiffs argument that this fact reflects an expert opinion must be rejected for all of the reasons stated by Defendants in Paragraph 19 *supra.*  Accordingly, this fact should be deemed undisputed.

**Commissioner Cohen's PowerPoint Presentation To Ranking Members of the NYPD**

**52.    In or about August 2004, prior to the start of the RNC, Commissioner Cohen provided an intelligence briefing regarding the RNC to the leadership of the NYPD that included an oral briefing and PowerPoint slides explaining the tripartite threat facing the City during the RNC.  Cohen Decl. ¶¶ 16-19; Talking Points; PowerPoint; Cohen Depo 274:20-25, 275:2-25, 276:2-10, 618:25, 619:2-25, 620:2-10, 18-25, 621:2-25, 622:2-25, 623:2-25, 624:2-25, 625:2-25, 626:2-24.**  This fact is undisputed by Plaintiffs.

**53.    Commissioner Cohen also personally prepared talking points to highlight key facets of the presentation concerning the tripartite threat facing the City during the RNC Cohen Decl. ¶¶ 16-19; Talking Points; PowerPoint; Cohen Depo. 628:2-25, 629:2-25, 630:2-25, 631:2-25; 632:2-25; 633:2-25; 634:2-25; 635:2-5.**  Plaintiffs seek to

dispute this fact by making an unresponsive, irrelevant and inaccurate argument that the Talking Points fail to mention "international terrorism."  First, the very first page of the "Talking Points" is titled "<u>RNC AND TERROR THREAT</u>", the fact that the word "international" is missing from this heading is immaterial and cannot provide a basis to dispute this fact.  Second, Commissioner Cohen explained that the Talking Points, which he created, were simply his "expressions of verbal pronouncements to the department" and accompanied and supplemented the information in his PowerPoint presentation.  Deposition of David Cohen ("Cohen Depo.") at pp. 623:13 – 627:25, annexed to the 11/23/11 Dougherty Decl. as Ex. K.  Moreover, the record unequivocally establishes Commissioner Cohen imparted his concerns about terrorism and the overall tripartite threat facing the City during the RNC to Chief Esposito and Commissioner Kelly in advance of the RNC in order to inform their decision making regarding establishing policing policies during the RNC.  *See* Defs' Reply 56.1 at ¶¶ 46-51; 62-64; Cohen Depo. at 274:20 – 276:4 (indicating Commissioner Cohen "provided orally" "over a course of time … information [in order] to help inform the [NYPD's] decision making with respect to the international terrorist threat which had developed rapidly in the wake of 9/11 … as well as the essential subset of international terrorism; that being terrorism directed specifically at New York City, so that the decision makers would understand the full range, scope and dimension of the threat that was posed to New York City and the threat that the NYPD in its capacity of assuring public safety and security during the RNC would need to be informed of so that decision making would be informed.")  Accordingly, this fact should be deemed undisputed.

**54.     The presentation was given in the auditorium at One Police Plaza and officers holding the rank of Captain and above were invited.  Several hundred members of the NYPD attended this presentation, including Commissioner Kelly and Chief Esposito.  Cohen Decl. ¶¶ 16-19; Talking Points PowerPoint; Cohen Depo 274:20-25, 275:2-25, 276:2-**

**10, 618:25, 619:2-25, 620:2-10, 18-25, 621:2-25, 622:2-25, 623:2-25, 624:2-25, 625:2-25, 626:2-24).**  This fact is undisputed by Plaintiffs.

55.     **During the presentation, the PowerPoint slides were shown to the audience and the Talking Points summarized the accompanying oral presentation.  Cohen Decl. ¶¶ 16-19; Talking Points and PowerPoint Slides; Cohen Depo 274:20-25, 275:2-25, 276:2-10, 618:25, 619:2-25, 620:2-10, 18-25, 621:2-25, 622:2-25, 623:2-25, 624:2-25, 625:2-25, 626:2-24.**  This fact is undisputed by Plaintiffs.

### The 2007 RNC Intelligence Appendix

56.     **In 2007, after the litigation of the Consolidated RNC Cases was underway, Commissioner Cohen created a twenty-six ("26") page document titled "The Republican National Convention" to reiterate and summarize what the Intelligence Division was seeing in terms of the threat environment facing the City during the RNC. Cohen Decl. ¶¶ 20-24; RNC Intelligence Appendix; Cohen Depo. 394:4-25, 395:2-25, 396:2-25, 397:2-25, 398:2-25, 399:3-15.**  Plaintiffs seek to dispute this fact but fail to cite any conclusive evidence supporting a dispute.  The excerpt cited by Plaintiffs (also cited by Defendants) does not create a material dispute.  Indeed, Commissioner Cohen explained the RNC Intelligence Appendix "established a written record" of what "the intelligence division was seeing in terms of the threat [during the RNC] environment facing the citizens of New York City, visitors to New York City, the delegates coming to New York City, and … the protestors who were coming to New York City to express their legitimate views." (Cohen Depo. 394:4-25, 395:2-20).

57.     **This 26-page document was appended to a declaration dated June 6, 2007 that Commissioner Cohen submitted previously in this litigation as part of the law enforcement privilege briefing (the "RNC Intelligence Appendix").  Cohen Decl. ¶¶ 20-24;**

RNC Intelligence Appendix; Cohen Depo. 394:4-25, 395:2-25, 396:2-25, 397:2-25, 398:2-25, 399:3-15.  This fact is undisputed by Plaintiffs.

58.    **After completing the RNC Intelligence Appendix it was clear to Commissioner Cohen that its true utility was that it succinctly captured the extent and nature of the tripartite threat environment facing the citizens of New York, visitors to the City, the delegates coming to the Convention, and the hundreds of thousands of individuals coming to the RNC to engage in demonstration activity.  Cohen Decl. ¶¶ 20-24; RNC Intelligence Appendix; Cohen Depo. 394:4-25, 395:2-25, 396:2-25, 397:2-25, 398:2-25, 399:3-15.**  Plaintiffs admit that Commissioner Cohen, the author of the RNC Intelligence Appendix made these statements of fact.  Plaintiffs otherwise seek to dispute this fact but fail to cite any evidence supporting a dispute.  Plaintiffs' argument that this fact reflects an expert opinion must be rejected for all of the reasons stated by Defendants in Paragraph 19 *supra.*  Accordingly, this fact should be deemed undisputed.

59.    **The content of the RNC Intelligence Appendix is derived from Commissioner Cohen's personal knowledge of the terrorist environment, his personal knowledge and analysis regarding events in other locations akin to the RNC (i.e. Seattle in 1999, Davos in 2000, Quebec City in 2001, Genoa in 2001, and Miami in 2003), Open-Source information and the End User Reports.  Cohen Decl. ¶¶ 20-24, RNC Intelligence Appendix; End-User Reports; Cohen Depo. 394:4-25, 395:2-25, 396:2-25, 397:2-25, 398:2-25, 399:3-15.**  This fact is undisputed by Plaintiffs.

60.    **Commissioner Cohen believes the RNC Intelligence Appendix articulates the multifaceted threat, the nature of that threat including the targets, tactics, weaponry, and the training that activists and anarchists were undertaking with enough specificity to render an understanding of the environment that was presented to the NYPD**

decision makers tasked with planning for policing the RNC and establishing policies to ensure the security and safety of the City at that time.  **Cohen Decl. ¶¶ 20-24; RNC Intelligence Appendix; Cohen Depo. 394:4-25, 395:2-25, 396:2-25, 397:2-25, 398:2-25, 399:3-15.**  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a dispute. Plaintiffs' argument that this fact reflects an expert opinion must be rejected for all of the reasons stated by Defendants in Paragraph 19 *supra*.   Accordingly, this fact should be deemed undisputed.

> **61.** **The information in the RNC Intelligence Appendix was both available to the Intelligence Division at the time it was gathering and analyzing information in preparation for the RNC and it was that threat environment that was communicated to Commissioner Kelly, Chief Esposito and the NYPD executives who made policy decisions regarding the policing of the RNC.  Cohen Decl. ¶¶ 20-24; RNC Intelligence Appendix; Cohen Depo. 394:4-25, 395:2-25, 396:2-25, 397:2-25, 398:2-25, 399:3-15.**  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a genuine dispute.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Plaintiffs' unwillingness to interpret this fact on its face are immaterial and cannot create a material dispute.  Moreover, their argument that the "cited authorities provide no support" comprehending this fact is belied by a plain review of the citations provided, which explain the RNC Intelligence Appendix and the "threat environment" it refers to.  Cohen Depo 395: 18-20 ("I wanted to communicate in a thoughtful careful way what were the three elements of the

threat…"); Cohen Depo 397:22-398:4 (explaining "the threat in its three forms, of terrorism, anarchism and illegal – illegal civil disobedience"); Defs' Reply 56.1 at ¶¶ 46-62.  Second, Plaintiffs argument that this fact somehow asserts that the "RNC Intelligence Appendix" itself was available to the RNC Executive Committee prior to the Convention is not responsive, misplaced and cannot create a material dispute.  This fact merely states the "information" in the RNC Intelligence Appendix was provided to the NYPD decision makers in advance of the RNC. Cohen Depo. 398:17-399:8 (describing RNC Intelligence Appendix, "…it was important to me to be able to articulate that <u>multifaceted threat</u>, the responsibilities that I thought we were charged with, the nature of the threat, the targets, the tactics, the weaponry, the training that would be associated with it that we would be facing, and to be able to articulate it with enough specificity sp that someone reading [the RNC Intelligence Appendix] could understand <u>that it was in this threat environment</u> that the policies of the department, <u>that this is the environment that we presented to the decision makers</u> with respect to police enforcement policies for the RNC.  It was my way of making sure it was in one place with as much clarity as I can bring to bear, and that's what it was.") (emphasis added).  Accordingly, Plaintiffs argument that the document should be entitled to no weight must also be rejected.  *See also* Cohen Decl. at ¶¶ 20-24 (incorporating RNC Intelligence Appendix into the record by reference).  For all of these reasons, this fact should be deemed undisputed.

### <u>Specific Threats Faced The City and The Convention Itself During The 2004 RNC</u>

**62.    In addition to the overall tripartite threat of (1) terrorism, (2) anarchist violence; and (3) wide-spread civil disobedience, Commissioner Cohen and the Intelligence Division identified the major threats facing the City and the Convention during the time period of the RNC.  Cohen Decl. ¶ 5-24; RNC Intelligence Appendix; End-User Reports; Talking Points; PowerPoint.**  Plaintiffs do not dispute that "Commissioner Cohen and

the Intelligence Division identified major threats facing New York City during the Convention." Plaintiffs otherwise seek to dispute this fact but fail to cite any evidence supporting a dispute. Plaintiffs' argument that this fact reflects an expert opinion must be rejected for all of the reasons stated by Defendants in Paragraph 19 *supra*.    Accordingly, this fact should be deemed undisputed.

### Terrorism Concerns

63.    **Based on his threat assessment, Commissioner Cohen believed that "in the broad context of New York City" during the time period of the RNC, the City "was in midst of a war, in the midst of … 16 international and local terrorist events that ricocheted back on New York City" and was "in the midst of probably the most intense terrorist environment, certainly in the period up until then, facing New York City." Commissioner Cohen also expressed these concerns to the RNC Executive Committee. Cohen Depo. 583:8-25, 584:2-16; Cohen Decl. ¶¶ 13, 14, 24.** Plaintiffs essentially do not dispute this fact because they do not dispute that Commissioner Cohen conveyed these concerns to the RNC Executive Committee. Plaintiffs otherwise seek to dispute this fact but fail to cite any evidence supporting a dispute. Plaintiffs' argument that this fact reflects an expert opinion must be rejected for all of the reasons stated by Defendants in Paragraph 19 *supra*. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71. Accordingly, this fact should be deemed undisputed.

64.     **Commissioner Cohen provided information to Chief Esposito and the NYPD executive staff regarding the "international terrorist threat which had developed rapidly in the wake of 9/11" and an "essential subset of international terrorism [was] directed specifically at New York City" to allow the "decision makers" to "understand the full range, scope and dimension of the threat that was posed to New York City and the threat that the NYPD in its capacity of assuring public safety and security during the RNC would need" in order to make informed decisions regarding policing the RNC.  Cohen Depo. 274:20-25, 275:2-25, 276:2-10.**  This fact is undisputed by Plaintiffs.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

65.     **The fact that arrests for a terrorist-related conspiracy to bomb the Herald Square subway station, which is just one block from Madison Square Garden, in the time period immediately preceding the RNC, raised the NYPD's concern about terrorism during the RNC.  Cohen Decl. ¶ 5; Esposito Depo. 404:14-22, 506:20-25, 507:2; Cohen Depo. 507:24-25, 508:2-25, 509:2-25, 510:2-25, 511:2; 8-19, 586:13-25, 587:2; RNC Intelligence Appendix.**  This fact is undisputed by Plaintiffs. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking

to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

66.    **Intelligence indicated that terrorism concerns surrounding the RNC were heightened because "the RNC coming to New York City [made] it a much more appealing target for terrorists."   Cohen Decl. ¶ 5; Esposito Depo. 184:8-11, 194 9:13, 709:11-24, 715:6-12, 1082:13-20; Cohen Depo 507:24-25, 508:2-25, 509:2-25, 510:2-25, 511:2.**   This fact is undisputed by Plaintiffs.   Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

67.    **"[I]ntelligence" indicated that " known" and "convicted" "terrorists were going to be coming to New York City" during the RNC.  Esposito Depo. 899:16-25, 900:2-23, 1079:13-25, 1080:2-3, 1035:2-5.**   This fact is essentially undisputed by Plaintiffs. Plaintiffs' argument that the intelligence provided to the NYPD and the RNC Executive Committee did not raise concerns regarding "international" terrorism is belied by the record and also not a basis to create a material dispute of fact.  *See* Cohen Decl. at ¶ 14-20; Defs' Reply 56.1 at ¶¶ 63-78; *see also* Defs' Responsive Schiller Facts at ¶ 57.

68.    **The NYPD "had specific information about specific people coming in[to the City for the RNC] who had a history of bombing [and] [t]hat is a terrorist [threat] as far as [they were] concerned."  Esposito Depo. 986:14-25, 987:2-4.**   This fact is undisputed by Plaintiffs.  *See also* Defs' Responsive Schiller Facts at ¶ 57.

69.     **Intelligence briefings regarding terrorism suggested "weapons of mass destruction" were "a concern … for a terrorist attack" during the RNC.  Esposito Depo. 715:6-12.**  Plaintiffs essentially do not dispute this fact.  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a genuine dispute.  Chief Esposito's testimony clearly establishes both terrorism and "weapons of mass destruction" were concerns facing the City and the RNC.  Esposito Depo 714:3-715:21; Defs' Reply 56.1 at ¶¶62-79.  Accordingly, this fact should be deemed undisputed.

70.     **The NYPD "looked upon" "the RNC in general" "as a bigger target for terrorism" because "the eyes of the world [were] on it" and felt it posed a "bigger threat" to being a terrorist target.  Esposito Depo. 407:11-19.**  This fact is undisputed by Plaintiffs.

71.     **The threat of terrorism during the RNC was memorialized in documents utilized by the NYPD.  The paragraph titled "Situation and Threat Assessment" in the document, "2004 Republican National Convention – New York City Police Department Executive Summary," which is dated 6/24/04, states,** *inter alia*, **that:**

> **[p]olitical conventions and elections are potential terrorist targets.   The vehicle borne improvised explosive device remains one of the most readily available and frequently used tactics by terrorists worldwide.   The use of hazardous materials, including chemical and biological weapons, possesses a significant threat as well.   RNC Executive Summary, Bates No. 000007082, Esposito Depo Ex. 15.**

This fact is undisputed by Plaintiffs.

72.     **Chief Esposito affirmed that the paragraph titled "Situation & Threat Assessment" "was accurate, the whole paragraph." Esposito Depo. 787:3-16; RNC Executive Summary.**  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a genuine dispute.  Chief Esposito's testimony when provided in a wider context clearly

indicates he affirmed the accuracy of the quoted language.  (Esposito Depo. 784:14 – 787:18) (reviewing document bearing Bates No. 7082 and affirming it's accuracy and further noting the nature and number of threats "became more intense" as the Convention approached).

> **73.    Based on the intelligence information, the NYPD was concerned that every large gathering during the RNC, including demonstrations, would be "a wonderful target for terrorism because the eyes of the world [were] already on it."  Esposito Depo. 407:11-25, 408:2-24, 410:22-25, 411:2-16; Cohen Decl. ¶ 5.**   This fact is undisputed by Plaintiffs.

> **74.    The terrorism concern was also focused on "trains, large gatherings," [m]ass transit" and "large groups."  Esposito Depo. 404:3-9, 410:6-15.**   This fact is undisputed by Plaintiffs.

> **75.    The NYPD felt that "[t]he threat of terrorism is always [present]" at "any" "large gathering" because large gatherings are "appealing to the terrorists." Esposito Depo. 406:4-18.**   This fact is undisputed by Plaintiffs.

> **76.    The NYPD was specifically concerned about the threat of terrorism at demonstrations and whether they would "be the subject of the attack."  Esposito Depo. 405:21-25, 406:2-3, 1083:7-11.**   Plaintiffs statement about the "implication" of the fact is unresponsive and fails to create any genuine dispute.  Accordingly, this fact should be deemed undisputed.

> **77.    The NYPD was equally concerned that Madison Square Garden, certain hotels, transportation centers, and Convention related events and venues would be terrorist targets.  Esposito Depo. 410:22-25, 411:2-10; Cohen Depo. 866:3-25, 867:2-25, 868:2-12.**   Plaintiffs do not dispute that the NYPD was concerned about the identified locations.

Plaintiffs seek to dispute this fact by quibbling over the term "equally" is unresponsive and fails to create any genuine dispute.  Accordingly, this fact should be deemed undisputed.

78.     **In July 2004, a laptop computer of an Al Qaeda operative was recovered containing detailed reconnaissance plans – a prerequisite for attack – of the New York City Stock Exchange and Citigroup headquarters in midtown Manhattan.  RNC Intelligence Appendix at 2.**  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a genuine dispute.  The evidentiary validity of the RNC Intelligence Appendix is discussed above in Paragraph 61.  Additional evidence in the record also supports this fact.  (*See* Cohen Depo 506:7 – 511:2 (explaining that information contained in the End User Reports as well as other briefings were provided to Chief Esposito, including "the uncovering of the Al Hindi case …. Surveilling the Stock Exchange and the Citigroup Building on 53rd and Lexington…"); Cohen Depo. 866:3 – 870:13 (discussing numerous terrorist targets during the RNC, including "the Stock Exchange and the Citigroup building"); Cohen Depo. 957:11 – 958:7 (detailing Commissioner Cohen's discussions with the RNC Executive Committee regarding potential terrorist threats during the RNC, including the "Al Hinidi events" and that "[Al Hindi] had surveilled the Stock Exchange and Citigroup").  Accordingly, this fact should be deemed undisputed.

79.     **Dhiren Barot, aka Aba Esi al-Hindi was convicted on November 7, 2006 and sentenced to life in prison for his role in plotting the destruction of London hotels, in addition to New York financial institutions. RNC Intelligence Appendix at 2.**  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a genuine dispute.  The evidentiary validity of the RNC Intelligence Appendix is discussed above in Paragraph 61.

**Anarchist Violence & Individuals Of Concern**

80.     **Intelligence indicated that the City and the RNC faced distinct threats of anarchist violence.   Cohen Decl. ¶¶ 7, 14-15; RNC Intelligence Appendix; End User Reports; Talking Points; PowerPoint.**   Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a genuine dispute.   Plaintiffs' argument that this fact reflects an expert opinion must be rejected for all of the reasons stated by Defendants in Paragraph 19 *supra*. Plaintiffs argument that the intelligence Commissioner Cohen provided regarding the anarchist threat as having no bearing on the decision to adopt the Policies is belied by the record. Additionally, Plaintiffs citation to Chief Esposito's deposition, when provided in a fair context in no way whatsoever suggests that the intelligence revealing a threat of anarchist violence during the RNC did not inform the decision to adopt the Policies.  *See* Esposito Depo. 365:2 – 369:20 (discussing intelligence that violent criminals were coming to the City during the RNC to engage in civil disobedience indicating Chief Esposito "did not know how to define them" yet noting a concern about "criminal activity").   Chief Esposito also identified specific End-User Reports as well as intelligence he received regarding "anarchist groups" and "anarchist" tactics which he explained <u>did</u> inform the decision to adopt the Polices.  (Esposito Depo. 1225:17 – 1229:23; End User Reports Bearing Bates No. 102564-67); Esposito Depo 1257:22 – 1258:16; End User Reports Bearing Bates Nos. 102598; Esposito Depo 1305:6 – 1308:15, End User Reports Bearing Bates No. 102655); Esposito Depo. 1595:15 – 1602:20 (End-User Reports Bearing Bates No. 102565-66; Esposito Depo. 1847:14 – 1848:11; End User Reports Bearing Bates No. 102596; Esposito Depo 1850:7-18).  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive

Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

81.     **The Intelligence Division gave briefings to Chief Esposito indicating "they had information on people that were going to come to New York during the Convention to commit criminal acts" and engage in "criminal activity."  Esposito Depo. 367:6-18, 369:8-11, 16-20.**  This fact is undisputed by Plaintiffs.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

82.     **The intelligence indicated that of a lot of people with past criminal histories would come in to the City during the RNC and attempt violent acts.  Esposito Depo. 184:8-11, 194 9:13, 367:6-18, 369:8-11, 16-20.**  This fact is essentially undisputed by Plaintiffs.  *See also* Defs' Responsive Schiller Facts at ¶ 57.  Plaintiffs argument that "the End User Reports" solely "constitute the actual 'intelligence'" is belied by the record as explained in Defendants' Reply Brief.  Chief Esposito repeatedly explained that neither the End User Reports alone nor "one particular document" did not provide the entire and conclusive basis for adopting the Policies:

A.      Camp Shutdown, resist the GOP, these
        two statements have to do with the fact that the
        information we had was that people were going to
        come into New York to resist, their word, and the
        convention, to shut down the convention.  Camp
        Shutdown.
        That <u>coupled with the intelligence we
        received</u> led us to believe that they were going to

continually engage in unlawful activity in their
attempt to shut down the RNC.

Q.        OK.

….

Q.        You identified one of the
justifications specifically as being the concern about continuous unlawful activity.
So you are saying that this document,
that it's the Camp Shutdown, the name and the
resist the GOP, gave you reason to believe that
there were people who were coming to the
convention who would engage in summons-eligible
activity and then would go on to engage in
additional unlawful activity?


A.        Chris, I think what you're trying to
do is to show that one particular document said
everything, made us believe everything you just
said.  That's not the truth.  It's everything put
together.
A lot of these documents don't stand
alone.  It's part of the bigger picture.  So this
perhaps coupled with intel division saying, Hey,
they're going to come here and shut down.  What
tactic are they going to use?  They are going to
resist the GOP by continually doing A, B, C and D.
So this may not stand by itself, but
this in my mind with other information they have
given me equals continuous unlawful activity and
shutting down the RNC.


Q.        I understand that and I accept it.

A.        Do you understand it?

Q.        I think I do.

A.        Do you accept it?

Q.        I do.

A.        You keep asking the same question
though.

(Esposito Depo 1543:12 – 1546:7). (emphasis added).  For all of these reasons, this fact should be deemed undisputed.

83.   **Specifically, intelligence indicated that "known criminals" were coming to the RNC, "for instance there were a couple of names that were given out about people that had been arrested, some convicted of some criminal acts, whether it be bombings, assaults, things of that nature, and in fact the information was about some of those people actually coming to New York" and this was "discussed" in deciding to adopt a no-summons policy.  Esposito Depo. 968:13-25, 969:2-7; 986:14-25, 987:2-4.**  This fact is undisputed by Plaintiffs.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

84.   **The "intelligence" the NYPD received indicated that "known anarchists" and "people who had been convicted and done time for bombings and arson were going to be coming to New York City to try and disrupt the City though unlawful conduct and disrupt the RNC through unlawful conduct."  Esposito Depo. 899:16-25, 900:2-23.**  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a genuine dispute.  Plaintiffs' argument regarding the use of the term "known anarchists" in this fact should rejected for all of the reasons stated by Defendants in Paragraph 80 *supra*.  Accordingly, this fact should be deemed undisputed.

85.   **The NYPD had information that "individuals who has a history of using explosive devices were coming to New York during the RNC" and felt there was**

"potential" that explosive devices may be used during the RNC. **Esposito Depo. 797:16-24.** This fact is essentially undisputed by Plaintiffs. Their quibble over immaterial semantics fails to create a genuine dispute. Plaintiffs otherwise fail to cite any evidence whatsoever supporting a dispute. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71. Accordingly, this fact should be deemed undisputed.

**86.     Based on the intelligence he received, Chief Esposito believed "that people with past criminal records, serious criminal records, records of bombing, assaulting officers, [and/or assaulting] elected officials were going to be coming to the City to engage in criminal activity." Esposito Depo. 268:16-18, 269:7-25, 270:2, 270:3-9, 793:20-25, 784:2-5.** Plaintiffs do not dispute that Chief Esposito testified that he had the identified concerns. Plaintiffs cite no authority for their argument regarding the intelligence referred to in this fact and the record and therefore it must be disregarded. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71. Accordingly, this fact should be deemed undisputed.

**87.     The NYPD believed these types of individuals "were coming for the Republican National Convention" but they "didn't know exactly what location they were**

**going to go to."  Esposito Depo. 793:20-25, 784:2-5.**  Plaintiffs admit that Chief Esposito's

testimony supports this fact.  Plaintiffs' otherwise seek to dispute this fact yet the testimony they

cite does not support their position and when read in context with other testimony by Chief

Esposito and Commissioner Cohen, illustrates that Plaintiffs lack any basis to dispute this fact.

*See* Esposito Depo. 791:23 – 794:5.  In addition, a plain reading of Defendants 56.1 Statement

makes it obvious that the "individuals" referenced in this fact are people with past criminal

records, serious criminal records, records of bombing, assaulting police officers, and/or

assaulting elected officials.  Defs. 56.1 at ¶¶ 80-95.  Accordingly, this fact should be deemed

undisputed.

> 88.    **The paragraph titled "Situation and Threat Assessment" in the
> document, "2004 Republican National Convention – New York City Police Department
> Executive Summary," which is dated 6/24/04, provides, *inter alia*, that "Open Source
> information indicates that [during the RNC] there will be some individuals and groups,
> who advocate the use of violence in opposition to the government, seeking to engage in
> criminal conduct that could significantly endanger public safety."   RNC Executive
> Summary, Bates No. 7082.**  This fact is undisputed by Plaintiffs.

> 89.    **When presented with this document, Chief Esposito affirmed that the
> paragraph titled "Situation & Threat Assessment" "was accurate, the whole paragraph."
> Esposito Depo. 787:3-16, Esposito Depo. Ex. 15-RNC Executive Summary.**  This fact is
> undisputed by Plaintiffs.

> 90.    **Chief Esposito explained that, to a degree that document detailed the
> threat, "[o]pen sources indicate that there will be some individuals and groups who
> advocate the use of violence in opposing [and] in opposition to the government, seeking to
> engage in criminal conduct that could significantly endanger public safety."   Esposito**

Depo. 788:2-8.  This fact is essentially undisputed by Plaintiffs.  Plaintiffs additional argument is immaterial and cannot create a genuine dispute as to this fact.

91.    **Intelligence also indicated that anarchist and extremist groups coming to the RNC were conducting martial arts training for those activists who were planning on engaging in civil disobedience during the RNC.  End User Reports, Bates No. 102596, 102598; Esposito Depo. 1254:15-25, 1255:2-13, 1257:22-25, 1258:2-16.**  Plaintiffs seek to dispute this fact but fail to cite any evidence supporting a genuine dispute.  Plaintiffs' argument that the cited authority does not support this fact is inaccurate.  First, the End User Report with Bates No. 102596 clearly identifies a "A <u>Coalition</u> of Anarchists", which suggests multiple entities.  Second, the characterization of "extremist" is fair when considering the cited authority as a whole and when read in context with other evidence in the record.  Defs' Reply 56.1 at ¶¶ 46-62, 80-95; Cohen Decl. at ¶¶ 14, 23-24; RNC Intelligence Appendix; Cohen Depo 395: 18-20; Cohen Depo 397:22-399:8; Esposito Depo 1543:12 – 1546:7 (explaining that information in End User Reports do not stand alone, is "part of the bigger picture", and is "coupled" with information provided by the Intelligence Division).  Accordingly, this fact should be deemed undisputed.

92.    **Intelligence information revealed that anarchists and extremists intending on participating in protest demonstrations were targeting the 2004 Republican National Convention and would utilize "Nail Bomb" tactics.  End User Reports 102584-85; Esposito Depo. 1237:20-25, 1238:2-25, 1239:2-17.**  Plaintiffs seek to dispute this fact yet fail to cite any evidence supporting a genuine dispute.  The evidence cited by Defendants indicates "Animal rights groups <u>known to use nail bombs</u> <u>will be likely participants</u> in the protests regarding the 2004 Republican National Convention… [and] that [certain] RNC delegations …

will be the target [of their] protests."  Accordingly, this fact should be deemed undisputed or be undisputed as edited above.

93.  **Information also described other specific "weapons" that anarchist groups had used in the past and may utilize during the RNC.  These included large puppets, gasmasks, spray paint, placards and shields, rocks, slingshots, Molotov Cocktails, ladders, bags of urine, projectile launchers, toxic and flammable liquids, grappling hooks, Sleeping Dragons, ball bearings, rolling barrels, and Super-Soakers filled with flammable liquids, chemical irritants, homemade pepper spray, and urine. End User Reports, Bates No. 102565, RNC Intelligence Appendix p. 14-18; Esposito Depo 1229:7-23, 1234:21-25, 1235:2-14; Cohen Depo. 551:11-25, 552:2-15.**  Plaintiffs seek to dispute this fact yet fail to cite any evidence supporting a genuine dispute.  Plaintiffs' argument regarding the use of the term "known anarchists" in this fact should rejected for all of the reasons stated by Defendants in Paragraph 80 *supra*.  Accordingly, this fact should be deemed undisputed.

94.  **During intelligence briefings, Chief Esposito received and reviewed "pictures" of some of the individuals of concern.  Esposito Depo. 365:24-25, 366:2-3, 10-12.**  This fact is undisputed by Plaintiffs.

95.  **The NYPD also learned that "[s]ome of the individuals of concern were on the streets during the RNC."  Esposito Depo. 798:15-24.**  Plaintiffs seek to dispute this fact yet fail to cite any evidence supporting a genuine dispute and essentially admit that the cited evidence supports the stated fact.  Accordingly, this fact should be deemed undisputed.

## Destruction of Property & Attacking Businesses

96.  **The intelligence that the NYPD received regarding the potential that businesses would be attacked and property would be damaged during the RNC informed the decision to adopt the No-Summons Policy.  Esposito 712:6-23, 744:7-16, 1104:10-25;**

RNC Intelligence Appendix at 12-14; Cohen Decl. ¶¶ 7, 14, 23; Cohen Depo. 500:6-25, 501:2-22; RNC Intelligence Appendix; End User Reports.  This fact is undisputed by Plaintiffs.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

97.    **Chief Esposito explained that information and intelligence briefings received indicated people were "coming into the City" during the RNC "for the purpose of destroying property" and "attacking businesses."  Esposito Depo 712:6-23, 744:7-16.**  This fact is undisputed by Plaintiffs.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

**A Spectrum of Unlawful Activity Was Expected During The RNC Ranging From Large-Scale Civil Disobedience To Violence.**

98.    **The NYPD believed "the violations were going to run the gamut" because "the information" obtained indicated people were going to try to "shut down the City, shut down the RNC, attack businesses, attack people" and "ran the spectrum from terrorism to sitting in traffic."  Esposito Depo.744:7-16, 1080:25, 1081:2-7, 1104:10-25.**  This fact is undisputed by Plaintiffs.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the

foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

99.      **The intelligence provided to the NYPD "articulated" "that groups were going to come into the City and engage in [un]lawful activity, a variety of unlawful activity" and "[e]verything was possible from bombings to assaults to civil disobedience." (Esposito Depo. 357:20-25, 358:2-6, 365:2-7, 17-20).**   This fact is undisputed by Plaintiffs. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

100.      **Based on this information, the NYPD believed it "had to be ready for all scenarios, including a full-scale riot" and/or "a full-scale terrorist attack."   (Esposito Depo 1079:13-25, 1080:2-3).**   This fact is undisputed by Plaintiffs.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

**Widespread, Continuous Unlawful Activity Geared At Shutting Down the City and the RNC Was Anticipated**

**101.   The Intelligence Division provided information and briefings to Commissioner Kelly, Chief Esposito and the RNC Executive Committee indicating people were coming to the RNC to engage in continuous unlawful activity.  Cohen Decl. ¶¶ 10-13, 16-19; Esposito Depo. 357:2-11.**  Plaintiffs do not dispute that the Intelligence Division provided information to the RNC Executive Committee but otherwise attempt dispute this without citing any evidence whatsoever supporting a genuine dispute.  The evidence cited by Defendants when read as cited and in context with other testimony by Chief Esposito and Commissioner Cohen along with other evidence in the record clearly establishes this fact as both material and undisputed.  *See* Defs' Reply 56.1 at ¶¶ 101-103; Esposito Depo. 1543:12 – 1546:7; RNC Intelligence Appendix; Talking Points; Power Point.  Plaintiffs' argument or suggestion that the intelligence information is limited to the End User Reports must be rejected for all of the reasons stated by Defendants in Paragraph 82 *supra*.  In addition, Chief Esposito identified numerous End User Reports as containing information indicating a threat of continuous unlawful activity during the RNC.  Esposito Depo. 1526:20-1529:24, End User Reports, Bates Nos. 102515-102516; Esposito Depo. 1221:13-1225:16, End User Report, Bates No. 102549; Esposito Depo. 1225:17-1234:20, End User Reports, Bates Nos. 102564-102566; Esposito Depo. 1237:16-1242:3, End User Reports, Bates Nos. 102584-102585; Esposito Depo.1244:16-1255:13, End User Reports, Bates Nos. 102592-102596; Esposito Depo. 1255:14-1258:16, End User Report, Bates No. 102598; Esposito Depo. 1258:17-1260:13, End User Report, Bates No. 102605; Esposito Depo. 1262:13-1270:14, End User Reports, Bates Nos. 102614-102615; Esposito Depo.1270:15-1273:6, End User Reports, Bates Nos. 102617-102618; Esposito Depo. 1274:2-1276:15, End User Report, Bates No. 102621; Esposito Depo. 1276:16-1284:2, End User Reports, Bates Nos. 102626-102627; Esposito Depo. 1285:7-1286:10, End User Report, Bates No. 102629; Esposito Depo. 1286:11-1289:25, End User Report, Bates No. 102632; Esposito

Depo. 1290:2-1292:6, End User Report, Bates No. 102636; Esposito Depo. 1293:4-1294:15, End User Report, Bates No. 102644; Esposito Depo. 1296:17-1305:5, End User Reports, Bates Nos.102652-102653; Esposito Depo. 1305:6-1307:17, End User Report, Bates No. 102655; Esposito Depo. 1310:7-1318:20, End User Reports, Bates Nos. 102662-102663; Esposito Depo. 1319:19-1321:13, End User Report, Bates No. 102668; Esposito Depo. 1321:19-1327:4, End User Reports, Bates Nos. 102676-102677; Esposito Depo. 1333:23-1335:5, End User Report, Bates No. 102690; Esposito Depo. 1336:7-1337:24, End User Report, Bates No. 102693; Esposito Depo. 1341:19-1343:17, End User Report, Bates No. 102699; Esposito Depo. 1346:14-1351:10, End User Reports, Bates Nos. 102705-102707; Esposito Depo. 1355:23-1360:18, End User Reports, Bates Nos. 102719-102721; Esposito Depo. 1362:13-1363:20, End User Report, Bates No. 102725; Esposito Depo. 1363:21-1365:13, End User Report, Bates No. 102732; Esposito Depo. 1367:16-1369:21, End User Reports, Bates Nos. 102742; Esposito Depo. 1370:5-1373:10, End User Report, Bates No. 102761; Esposito Depo. 1376:8-1377:9, End User Report, Bates No. 102763; Esposito Depo. 1377:10-1381:2, End User Report, Bates No. 102765; Esposito Depo. 1382:15-1383:23, End User Report, Bates No. 102780; Esposito Depo. 1389:25-1391:8, End User Report, Bates No. 102792. Plaintiffs' additional argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71. Accordingly, this fact should be deemed admitted.

**102. Intelligence indicated that "many people" coming to the City for the RNC "were intent on shutting down the RNC, shutting down the City," by "engaging in**

continued criminal offenses." **Esposito Depo. 1079:13-25, 1080:2-3.** Plaintiffs' argument that this fact should be disputed must be rejected for all of the reasons stated by Defendants in Paragraph 101 *supra*. Accordingly, this fact should be deemed undisputed.

103. **Based on the intelligence the NYPD believed the purpose of the continuous unlawful conduct was to "shut down some venues, shut down the City, shut down the RNC" went "hand in hand with the continued criminal activity." Esposito Depo. 972:25, 973:2-25, 974:2-5.** Plaintiffs do not dispute the citations to Chief Esposito's deposition support this fact. Plaintiffs' argument that this fact should be disputed must be rejected for all of the reasons stated by Defendants in Paragraph 101 *supra*. Accordingly, this fact should be deemed undisputed.

**Shutting Down the Convention Itself**

104. **The NYPD received specific intelligence indicating "people [were] coming into the City for the purpose of shutting the RNC [the Convention itself] down." Esposito Depo. 184:8-11, 194:9-21, 712:6-23, 714:3-18, 715:6-9, 1001:11-25, 1002:2-9, 1829:6-13, 16-25, 1831:2-6.** This fact is undisputed by Plaintiffs. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

105. **The "Intelligence Division" provided briefings to Chief Esposito and high-ranking NYPD officials "as they were getting information" about people who were coming to New York to shut down venues relating to the Republican National Convention. Esposito Depo. 362:18-24, 1829:6-13, 16-25, 1831:2-6.** This fact is undisputed by Plaintiffs.

Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

106.   **During the RNC, the NYPD was "protecting everyone" and not just the delegates but "based on the intelligence we received, we knew that many of the venues that the delegates were going to go [attend] were going to be targeted for criminal activity." Esposito Depo 377:6-18.**  This fact is undisputed by Plaintiffs.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

107.   **The intelligence information indicated that "[s]ome of the conduct that would be used to shut down some of the venues, whether it was trying to enter some of the venues, trying to enter some of the hotels that delegates were staying at, taking over certain locations, preventing some of the venues from occurring, those types of things were discussed."   Esposito Depo. 968:13-25, 969:2-7.**   This fact is undisputed by Plaintiffs.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context,

and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

108.   **The "Intelligence Division" provided information to Chief Esposito about people wanting to shut down "the [Broadway] theaters that the delegates were to go to" and prevent ingress and egress to the theaters.  Esposito Depo. 363:25, 364:2-8.**  This fact is undisputed by Plaintiffs.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

109.   **Intelligence also indicated that restaurants and hotels and Madison Square Garden were venues targeted for criminal activity.  Esposito Depo. 377:20-25, 378:2-6.**  This fact is undisputed by Plaintiffs.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

110.   **The intelligence indicated people were going to be "[b]locking streets, blocking entrances [to] events that the delegates were going to go to, chaining themselves [together], [and] sitting down" at "[j]ust about every venue … that the delegates were going to be at."  Esposito Depo. 362:25, 363:2-15, 376:21-24.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs seek to otherwise dispute this fact by citing evidence that

has nothing to do with the asserted fact.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Therefore, this fact should be deemed undisputed.

**Shutting Down New York City**

111.  **The NYPD obtained "information" "from [the] intelligence [division], [and] open sources that people were coming to the City during the RNC for the purpose of shutting down the City." Esposito Depo. 184:8-11, 194 9:13, 712:6-23, 1001:11-25, 1002:2-9.**  Plaintiffs seek to dispute this fact but cite no evidence from the record to contradict it. Accordingly, this fact should be deemed undisputed.

112.  **Intelligence indicated that "Times Square was mentioned a number of times" as a location that "could be targeted for mass demonstrations" or being "shut down." Esposito Depo. 504:4-12.**  This fact is undisputed by Plaintiffs.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

113.  **Intelligence information provided to the NYPD indicated that Broadway theaters, restaurants and hotels were venues targeted for criminal activity.**

**Esposito Depo. 377:20-25, 378:2-6.** This fact is undisputed by Plaintiffs. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

114. **Intelligence also indicated that Herald Square and Macy's were possible targets for being shut down. Esposito Depo. 506:10-19.** This fact is undisputed by Plaintiffs. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

115. **Intelligence indicated there was a threat to disrupt the normal flow of vehicular traffic during the RNC. Cohen Depo. 515:11-25, 516:2-22; End-User Reports, Bates No. 102549-50; Esposito Depo. 1224:11-25, 1225:2-15; RNC Intelligence Appendix.** This fact is undisputed by Plaintiffs. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

116.    Some of the tactics to disrupt traffic were expected to include (a) hundreds of people getting in cabs at the same time and directing them in the same location, such as Madison Square Garden; (b) hundreds of people on bicycles riding slowly five abreast to clog vehicle traffic; and (c) people abandoning cars at designated points to clog traffic.  **End User Reports, Bates No. 102549-50; Esposito Depo. 1224:11-25, 1225:2-15; Cohen Depo. 515:25, 516:2-22.**  This fact is undisputed by Plaintiffs.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

117.    The NYPD also received intelligence advising them to "expect large numbers" of bicyclists on the Friday during the RNC and possibly throughout the Convention generally.  **Esposito Depo. 507:5-13.**  This fact is undisputed by Plaintiffs. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

118.    The intelligence specifically indicated, "the bicyclists' strategy would be employed to block streets" or "shut down some of the traffic, clog up traffic in the theater district."  **Esposito Depo. 507:20-23.**  This fact is undisputed by Plaintiffs.  Plaintiffs'

argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

119. **The NYPD also had information regarding tactics that may be employed to shut down the City, which included the "Sleeping Dragon" technique. Esposito Depo. 969:8-20, 1101:14-20, 1102:7-12.** This fact is undisputed by Plaintiffs. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

120. **The "Sleeping Dragon" technique involved using "fortified sections of pipe (plastic or metal)" with a "securing device" that "is anchored in the center of the pipe" and "a strong chord" is "looped" around an extremist's "wrist" "to secure the extremist to the Sleeping Dragon" and "once the device is secure, the extremist cannot easily be moved." End User Reports, Bates No. 102593-94, Esposito Depo. 1251:12-25, 1252:2-3.** This fact is undisputed by Plaintiffs. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is

immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

**August 31st 2004 Was Hailed As "A/31" And Designated For Widespread Civil Disobedience And Known As "A Day of Rage"**

**121.    Intelligence provided to Chief Esposito and Commissioner Kelly in advance of the RNC indicated that activists were planning a day of "Direct Action" for August 31, 2004.   End User Reports, Bates Nos. 102711, 102719-20, 102731, 102754, 102761, 102765-66, 102776-77, 102792, 102835, 102871, 102893; Esposito Depo. 1377:18-25, 1378:2-25, 1379:2-4.** This fact is undisputed by Plaintiffs. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

**122.    The intelligence information provided to Chief Esposito and the Executive Committee, indicated "Direct Action can best be described as large-scale civil disobedience, which *incorporates a physical resistance* that often results in conflict with the police."   Esposito Depo Ex. 25; End User Reports, Bates No. 102617-18 (emphasis in the original);   Esposito Depo 1270:15-25, 1271:2-25, 1272:2-6.** This fact is undisputed by Plaintiffs. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of

context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

123.    **Individuals who planned on engaging in unlawful conduct on August 31, 2004 called the day "A/31."  This day was also hailed as the "Day of Rage" or the "Day of Anarchy."  A/31Flyer, annexed to Dougherty Decl. as Ex. P; Colgan Depo. 860:20-24.**  Plaintiffs seek to dispute this fact, but cite no evidence from the record contradicting it.  Therefore, this fact should be deemed undisputed.

**Many Individuals Coming to the RNC Were Expected To Have False Identification Or No Identification**

124.    **The NYPD intelligence revealed that people who were coming to New York City to engage in unlawful activity "were being encouraged to bring fake identification or no identification."  Esposito Depo. 99:16-25, 100:2-20, 712:6-23, 990:25, 991:2-11, 1001:11-25, 1002:2-9, 1028:13-25, 1029:2-9, 1756:9-25, 1757:2-5, 1829:6-13, 16-25, 1831:2-6.**  Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument or suggestion that the intelligence information is limited to the End User Reports must be rejected for all of the reasons stated by Defendants in Paragraph 82 *supra*.  In addition to the entries cited by Plaintiffs, Chief Esposito explained that other End User Reports also contained information regarding the use of false identification.  Bates No. 102618 contained information relating to the use of false identification. Esposito Depo. at 1270:15-1273:6.  End User Reports, Bates Nos. 102566 ("Don't carry your identification or address book.", "Have a plan to go to the hospital (fake name and SS# needed))"; 102690 ("Anti-RNC activists have likely applied to the RNC Host committee to serve as volunteers during the upcoming August 2004 Republican National Convention").  Accordingly, this fact should be deemed undisputed.

125. **The intelligence suggested "a lot of open source material [was] recommending that if you come to New York to be engaged in unlawful activity, you should bring fake, phony identification." Esposito Depo. 99:16-25, 100:2-20, 991:12-22.** Plaintiffs seek to dispute this fact. However, this fact should be deemed undisputed for the same reasons stated by Defendants in Paragraph 124 *supra* (regarding false identification and no identification).

126. **The NYPD was also concerned that "people would have phony New York City or New York State identification" Esposito Depo. 1028:13-25, 1029:2-9.** Plaintiffs seek to dispute this fact. However, this fact should be deemed undisputed for the same reasons stated by Defendants in Paragraph 124 *supra* (regarding false identification and no identification).

127. **Briefings from the NYPD Intelligence division also suggested the "purpose" of "bringing false I.D." was to "confuse the police." Esposito Depo. 373:19-23, 374:24-25, 375:2-3.** Plaintiffs seek to dispute this fact. However, this fact should be deemed undisputed for the same reasons stated by Defendants in Paragraph 124 *supra* (regarding false identification and no identification).

128. **The intelligence also indicated that false identification would be used during interactions with the police and "would be used when asked to be produced." Esposito Depo. 375:15-21.** Plaintiffs seek to dispute this fact. However, this fact should be deemed undisputed for the same reasons stated by Defendants in Paragraph 124 *supra* (regarding false identification and no identification).

129. **The intelligence suggested one purpose of bringing false identification was that "if they were taken into custody or detained they could possibly avoid prosecution." Esposito Depo. 1756:9-25, 1757:2-15.** Plaintiffs seek to dispute this fact.

However, this fact should be deemed undisputed for the same reasons stated by Defendants in Paragraph 124 *supra* (regarding false identification and no identification).

130.   **An additional concern was that suspected terrorists or persons with histories of bombings would use false identification or not have identification.   Esposito Depo. 990:11-24, 986:14-25, 987:2-4, 1034:20-24.**   Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.   Plaintiffs' argument or suggestion that the intelligence information is limited to the End User Reports must be rejected for all of the reasons stated by Defendants in Paragraph 82 *supra*; *see also* Declaration of Brian M. Jenkins dated October 3, 2011 at ¶¶ 35-37, 41-42; *see also* Defendants' Response to ¶ 124 *supra*.

131.   **The NYPD also "knew that terrorists had their eye on [the RNC] and the NYPD did not believe terrorists "would be carrying real identification."   Esposito Depo. 100:4-20, 102:2-15.**   This fact is undisputed by Plaintiffs.   Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

132.   **The NYPD believed that, "that terrorists would tend to hide their true identity when looking to perpetrate acts of terrorism, and they would have false ID, they would have no ID." Esposito Depo. 985:8-23.**   This fact is undisputed by Plaintiffs.   Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and

mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.

**133.    The intelligence provided to the NYPD also indicated "a terrorist could" initially be "involved with lesser offenses" including summons eligible offenses. Esposito Depo. 1836:8-16**.  Plaintiffs seek to dispute this fact, but do not cite any evidence from the record to contradict it.  Plaintiffs' argument or suggestion that the intelligence information is limited to the End User Reports must be rejected for all of the reasons stated by Defendants in Paragraph 82 *supra*.  Accordingly, this fact should be deeded undisputed.

**134.    The intelligence also indicated there was a "substantial risk" that persons who fell into any of the three arenas relating to the overall tripartite threat – the terrorist threat, the anarchist threat, and those intent on "perpetrat[ing] unlawful civil disobedience" would utilize false identification or not carry any identification during the RNC.  Cohen Depo. 645:2-25, 646:2-15.** Plaintiffs seek to dispute this fact.  However, this fact should be deemed undisputed for the same reasons stated by Defendants in Paragraph 124 *supra* (regarding false identification and no identification).

**135.    Additionally, Chief Esposito indicated that "if a person" or "a terrorist, a person who was committed to continuous unlawful activity, was that committed to his or her cause … obtaining quality phony identification would not have been that hard and probably would have been part of their strategy."  Esposito Depo. 1025:19-25, 1026:2-18.** Plaintiffs do not dispute that the citation supports this fact  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.

*See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this should be deemed undisputed.

**The Ease Of Obtaining False Identification**

136.   **Driver's licenses are the most commonly used form of identification and are   the most frequently falsified.   "False" drivers' licenses fall into two general categories: authentic driver's licenses which contain false information, and fake driver's licenses. Jenkins Declaration ¶ 45.**  This fact is undisputed by Plaintiffs.

137.   **Authentic driver's licenses may be sold by corrupt state officials to individuals wishing to establish a new identity.  Individuals may also lie to state authorities when applying for a driver's license, providing false information or concealing true information about themselves.  To obtain driver's licenses, they may provide falsified documents such as birth certificates. Jenkins Decl. ¶ 46.**  This fact is undisputed by Plaintiffs.

138.   **Instructions are available on the Internet on how to create aliases, obtain, and alter birth certificates or create other fake paperwork in order to get authentic driver's licenses. Jenkins Decl. ¶ 47.**  This fact is undisputed by Plaintiffs.

139.   **Driver's licenses rely on "breeder documents" to confirm the applicant's identity.  Such documents typically include birth certificates, which are easily counterfeited.  There are in the United States thousands of jurisdictions issuing birth certificates.  Those jurisdictions, in turn, use over 6,000 different forms, and there is no easy way to confirm their authenticity.  Instructions on the Internet tell readers how to obtain and alter a birth certificate, which can then be used to obtain an authentic driver's license. Jenkins Decl. ¶ 48.**  This fact is undisputed by Plaintiffs.

140.   **Another common breeder document is a driver's license from another state.  Some states' licenses are easier to replicate than others, and some states are less**

rigorous in confirming applications.  Virginia, for example, was seen as a state where it was easy to obtain driver's licenses.  This enables one to easily graduate from a state with a less rigorous system to one with a more rigorous system.  **Jenkins Decl. ¶ 49.**  This fact is undisputed by Plaintiffs.

141.   **A 2003 General Accounting Office study reported that GAO agents operating undercover in seven states and the District of Colombia, using fake identification documents, meant to be obviously recognizable as fakes, were nonetheless able to obtain driver's licenses in every jurisdiction.  Even when authorities spotted problems with the phony documents, the fake paperwork was never confiscated and law enforcement was never notified.  In some cases, the GAO agents merely left the office, fixed the documents, reapplied, often on the same day, and still managed to successfully obtain driver's licenses. Jenkins Decl. ¶ 51.**  This fact is undisputed by Plaintiffs.

142.   **Authentic driver's licenses containing false information, fake or counterfeit driver's licenses can also be obtained.  These are available on the Internet and, although described as novelty items, are also promoted as authentic or real-looking with holograms and other confirming markers.  The replica is clearly marked on the back that it is not a state document, but it can be re-laminated and used as an authentic document. Templates for state driver's licenses are also available on the Internet, allowing individuals to "photo-shop" their photo and individual information to produce convincing replicas. Jenkins Decl. ¶ 55.**  This fact is undisputed by Plaintiffs.

143.   **Fake driver's licenses can also be obtained from illegal street vendors in most cities.  The locations where the vendors do business are as widely known as are the locales for prostitution or purchasing drugs.  In Los Angeles, for example, there are 15 to 20 "mills" continuously operating and constantly moving to avoid police detection.  They**

cater primarily to illegal aliens and are often operated by illegal aliens themselves.  The documents they produce are very good, containing the state logo, real license numbers (chosen at random) and real holograms or a glittering facsimile of a hologram.  The entire process, from approaching a runner on the street to receiving the complete set of documents, takes about two hours.  A good quality California driver's license goes for about $50, but for $70, one may obtain a complete set of counterfeit documents including a Social Security card, an immigration card, and a driver's license.  Although this is a technically-sophisticated organized crime, albeit cottage level industry, prosecutors are reluctant to prosecute individual cardholders.  The resources required, given the volume of the crime, are too extensive.  When they can be apprehended, counterfeit producers are prosecuted. **Jenkins Decl. ¶ 56.**  This fact is undisputed by Plaintiffs.

144.   Individuals may also use various graphics programs and desktop publishing to create reasonable facsimiles of genuine documents.  Computer savvy teenagers have provided this service for their classmates.  Stolen and altered driver's licenses -- a combination of real and fake—add to the population of false driver's licenses. **Jenkins Decl. ¶ 57.**  This fact is undisputed by Plaintiffs.

145.   Readily available online instructions and templates of driver's licenses, computer graphics, and high quality color printers, and laminating equipment have facilitated copying and altering authentic licenses and creating counterfeit documents. This technology was available in 2004.  As a result, law enforcement faced in 2004 and continues to face a huge problem of fraud based upon convincing supporting documents (letters of credit, bearer bonds, shares, etc.), counterfeit goods (pharmaceuticals with packaging so convincing that legitimate companies find it hard to distinguish their product

from the fakes), and false identification documents.  Jenkins Decl. ¶ 58.  This fact is
undisputed by Plaintiffs.

**The Convention's Status As a National Special Security Event**

146.  **Specifically, the NYPD felt that the NSSE designation "raise[d] the**
**level of concern" regarding the "possibilities of … shutting down an event, terrorism,**
**continuous criminal activity," people with "criminal histories coming in[to] [the City for**
**the RNC]."  Esposito Depo. 1490:5-25, 1491:2-16.** This fact is undisputed by Plaintiffs.
Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played
no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be
rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii)
because the evidence cited seeking to dispute this fact is immaterial, is presented out of context,
and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25,
27, 28-71.

147.  **Chief Esposito explained that for example, "when the federal**
**government declare[d]" the RNC a "national security event" it "shows the concern for it**
**becoming something like the Seattle incident" where certain activists "shut the city down"**
**or the G8 events "around the world" where [certain activists "destroy[ed] property and**
**lives."  (Esposito Depo 1490:5-25, 1491:2-6; Cohen Decl. ¶¶ 7, 14; RNC Intelligence**
**Appendix.** Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict
it.  Accordingly, this fact should be deemed undisputed.

148.  **Additionally, the NYPD felt that because of the NSSE designation,**
**"some of the people, who attempted to burn down Seattle [during the WTO protests], shut**
**down other venues like the G8 and other [political] conventions and other World Economic**
**Forums" would be more likely to come to the RNC – the  NYPD felt "some of those folks**

would make this trip to New York." **Esposito Depo. 1490:5-25, 1491:2-25, 1492:2.** Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it. Accordingly, this fact should be deemed undisputed.

**The NYPD Adopted A No Summons Policy And A Fingerprinting Policy In Response To All Of The Specific Threats & Because Of The Overall Tripartite Threat**

**149.  There were special meetings of high-level NYPD officials that took place prior to the RNC and focused specifically and exclusively on RNC issues and planning for policing and ensuring public safety during the RNC. Esposito Depo. 81:12-19 561:22-25, 562:2-7, 689:13-24, 874:5-17, 901:24-25, 1051:12-19 1420:13-25, 1421:2-25, 1422:2-8; 1431:18-25, 1432:2-6.** This fact is undisputed by Plaintiffs.

**150.  Both Chief Esposito and Commissioner Kelly were present at these RNC planning meetings. Esposito Depo. 181:2-15, 182:3-12, 689:13-24, 874:5-17, 876:8-17, 879:20-25, 880:2-17, 1052:12-15, 1053:2-11, 1419:24-25, 1420:2-8.** This fact is undisputed by Plaintiffs.

**151.  The NYPD implemented a policy of not issuing summonses to individuals engaged in criminal conduct that was related to the RNC in favor of custodial arrest (the "No Summons Policy"). Esposito Depo. 958:23-25, 959:2-17, 960:4-9, 961:24-25, 962:3, 967-2-25, 968:2-25, 969:2-7.** Plaintiffs seek to dispute this fact, but fail to cite to any evidence from the record to contradict it. Plaintiffs attempt to raise a dispute regarding the phrase "criminal conduct" is immaterial because the record indicates that the Policies applied to illegal activity or illegal conduct. Defs' Reply 56.1 at ¶¶ 165 – 172. The record also indicates that the Policies were adopted based on the intelligence regarding concerns about "crimes" such as misdemeanors and felonies as well as the threat of escalating disorder Defs' Reply 56.1 at ¶¶ 32-40, 187, 190; *Dinler v. City of New York,* 607 F.3d 923, 929-930 (2d Cir. 2010) and the threat of continuous unlawful conduct. Defs' Reply 56.1 at ¶¶ 101-123, 175-199. *See also* Defs'

Responsive Schiller Facts at ¶¶ 13-15, 16, 19-20.  Accordingly, this fact should be deemed undisputed or undisputed insomuch as it indicates that the NYPD implemented a policy of not issuing summonses to individuals engaged in <u>unlawful</u> conduct that was related to the RNC in favor of custodial arrest.

**152.   Individuals arrested pursuant to the "No Summons Policy" would either receive a desk appearance ticket ("DAT") if they qualified or be arraigned. (Esposito Depo. 192:6-11, 199:19-25, 200:2-22, 687:20-25, 688:2-3, 1809:16-25, 1810:2-13; Deposition of Gary Galperin ("Galperin Depo."), annexed to Dougherty Decl. as Ex. Q, at 24:24-25, 25:2-7).**  This fact is undisputed by Plaintiffs.

**153.   A policy related to the No-Summons Policy was implemented by the NYPD that all RNC arrestees and all individuals arrested pursuant to the were to be fingerprinted as part of their arrest processing (the "Fingerprinting Policy") (collectively the "Policies").  Esposito Depo. 199:19-25, 200:2-22; Galperin Depo. 24:24-25, 25:2-7.**  This fact is undisputed by Plaintiffs.

**154.   The NYPD analyzed the RNC as a whole event and took all of the intelligence into consideration including the tripartite threat identified by Commissioner Cohen in deciding to adopt the Policies.  (Esposito Depo. 183:11-25, 184:2-21, 195:5-13, 711:12-15, 712:2-5, 899:16-25, 900:2-23, 1035:2-5, 1083:7-21, 1211:19-25, 1212:2-5; Cohen Depo. 645:2-25, 646:2-15; Cohen Decl. ¶¶ 5-24; End-User Reports; Intelligence Appendix; Talking Points; PowerPoint.**  Plaintiffs seek to dispute this fact, but fail to cite to any evidence from the record to contradict it.  Any argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is

immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

155.   **The decision regarding the Policies "was an evolving process" "[a]nd as information kept coming in about unlawful activity, attempts to shut down the RNC, shut down the City, about known criminals coming in with histories of anarchy and bombings, and attacks on establishments[,] [a]s all of that was coming forward, ultimately that decision was made." Esposito Depo. 891:19-25, 892:2-25, 893:2-11.**  Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.  Any argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

156.   **Chief Esposito participated in the decision to adopt the Policies, but ultimately that decision was approved by Commissioner Kelly.  Esposito Depo. 185-86, 193:11-14, 271:6-10; 559:4-10, 1052:12-15, 1053:2-11, 1071:18-25, 1072:2-10, 1419:24-25, 1420:2-8.**  Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.  Accordingly, this fact should be deemed undisputed.

157.   **Chief Esposito explained the process for decision making regarding the RNC, which encompassed making the decision to adopt the Policies:**

> **When [New York City was] awarded the RNC, committees were formed, meetings were held.  At those meetings there are working groups and plans were formulated and they evolved. … So we talked about a lot of things and a lot of things were presented at us throughout the whole course of that over a year getting ready for the**

**RNC.  But ultimately the final decisions are made very close to when the RNC was going to happen.  There was a final presentation, okay, we're ready to go, its game day, let's go.**

Esposito Depo. 890:24-25, 891:2-18.  Plaintiffs do not dispute that the citation supports the fact. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

158.    **The "decision" to adopt the Policies, "as all the decisions of the RNC, would have been made on that final game-day meeting … we made final decisions as close to the convention as possible."  Esposito Depo. 891:19-25, 892:2-25, 893:2-11, 1030:22-25, 1031:2-3, 1423:6-13.**  Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.  The evidence cited by Plaintiffs is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 23-24, 27. Accordingly, this fact should be deemed undisputed.

159.    **The final meeting in which the NYPD made the "final, ultimate decision" to adopt the Policies occurred "close to when the Convention was starting." Esposito Depo. 884:3-19, 891:19-25, 892:2-25, 893:2-11, 948:10-16, 1072:11-17.**  Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.  The evidence cited by Plaintiffs is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited

seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 23-24, 27.  Accordingly, this fact should be deemed undisputed.

160.     **Chief Esposito believes that final decision making meeting took place in August of 2004.  Esposito Depo. 884:3-19, 948:20-25, 949:2-12, 960:4-9, 961:24-25, 962:3, 1071:18-25,1072:2-10, 1420:13-25, 1421:2-25, 1422:2-8.**  Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.  The evidence cited by Plaintiffs is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 23-24, 27.  Accordingly, this fact should be deemed undisputed.

**Processing RNC Arrestees For DATs And Fingerprinting**

161.     **Eligibility for a Desk Appearance Ticket ("DAT") encompassed obtaining information on the DAT Investigation Worksheets used at the time of the RNC. That entailed obtaining the following information regarding the arrestee: (1) First, last and middle name; (2) Complete address including county of residence; (3) Date of Birth; (4) Driver's License No.; (5) Social Security No.; (6) Employment Status – including name, address and telephone number of employer; (7) Social Status (i.e. single, married, etc.); (8) Who arrestee resides with; (9) whether there is a co-defendant and whether the co-defendant received a DAT; (10) Home telephone number and any additional contact numbers; (11) If given a DAT whether someone will attend arraignment with defendant and name/relationship of that individual; and (12) Warrant check information.  Sample DAT Investigation Worksheet, annexed to Dougherty Decl. as Ex. Q.**  This fact is undisputed by Plaintiffs.

162.  **The identification check for issuing a DAT is more thorough than what is required to issue a summons and requires fingerprints to be taken. Fingerprints are also required when processing an arrestee for arraignment. Esposito Depo. 112:6-25, 113:11-21, 127:25-128:2, 118:18-19, 285:3-18, 710:4-21.** This fact is undisputed by Plaintiffs. The additional argument posed by Plaintiffs is unresponsive to this fact.

163.  **It is routine NYPD practice to fingerprint for custodial arrests. O'Connell Depo. 68:7-10.** This fact is undisputed by Plaintiffs.

164.  **The fingerprint records for all individuals arrested in Manhattan during the time period of the RNC, August 25, 2004 to September 4, 2004, for whom a violation was the top charge were deleted from the NYPD's Automated Fingerprint System and the NYPD Archival System on October 25, 2004.  Declaration of James Simon, annexed to Dougherty Decl. as Ex. P.** This fact is undisputed by Plaintiffs.

**"RNC-Related" Unlawful Conduct**

165.  **The Policies were directed at "all illegal activity directly related to the RNC." Esposito Depo. 1142:20-25, 1143:2-3.** Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.  The evidence cited by Plaintiffs is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 16, 19-20.  Accordingly, this fact should be deemed undisputed.

166.  **For purposes of determining whether illegal conduct was RNC-related and subject to the Policies, the NYPD focused on "the illegal activity" to "determine[ ] [if it] was geared toward the RNC" and "not the demonstration." Esposito Depo. 174:5-14.**

69

Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it. The evidence cited by Plaintiffs is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 16, 19-20. Accordingly, this fact should be deemed undisputed.

167. **Chief Esposito explained that for purposes of the Policies, criminal acts were RNC-related if they involved criminal activity or violations of law that revolved around the RNC or was connected to the RNC.  Esposito Depo. 173:9-13, 175:4-15.** Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it. The evidence cited by Plaintiffs is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 16, 19-20. Accordingly, this fact should be deemed undisputed.

168. **"RNC-related" conduct was linked to the intelligence that was gathered about anticipated unlawful conduct during the RNC and if certain anticipated unlawful conduct "materialized" it "would have been considered RNC related."  Esposito Depo. 175:16-22, 387:19-25, 388:2-14.**  Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it. The evidence cited by Plaintiffs is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

**169.    For example, the NYPD "gathered" "information [and] intelligence …
that people coming to the City during the course of the RNC would target certain stores,
certain places for attack" and "if that materialized" it "would have been considered RNC
related" conduct.  Esposito Depo. 175:16-22.** Plaintiffs seek to dispute this fact, but cite no
evidence from the record to contradict it.  The evidence cited by Plaintiffs is unresponsive to the
foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence
provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is
immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive
Schiller Facts at ¶¶ 13-15, 16, 19-20; *see also* Defendants' Response as stated in Paragraph 151
above (addressing Plaintiff's arguments about felonies and misdemeanors).  Accordingly, this
fact should be deemed undisputed.

**170.    The crucial distinction in determining whether unlawful conduct was
"RNC-Related" and therefore, subject to the Policies was "the intelligence [the NYPD] had
regarding RNC-related conduct, the potential was there, the threat was there, the
intelligence was there that people were going to … be involved in terrorism … to be
involved in civil disobedience, attempting to shut down the City, attempting to shut down
the RNC, attacks on police, attacks on businesses in the City."  Esposito Depo. 387:19-25,
388:2-14.** Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.
The evidence cited by Plaintiffs is unresponsive to the foregoing fact and also must be rejected
(i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because
the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and
mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 16, 19-20.
Accordingly, this fact should be deemed undisputed.

**171.    Only those individuals whose unlawful activity was "RNC-Related" were subject to the Policies.  Esposito Depo. 174:5-14, 387:19-25, 388:2-14, 1142:20-25, 1143:2-3.**  Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.  The evidence cited by Plaintiffs is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 16, 19-20.  Accordingly, this fact should be deemed undisputed.

**172.    The Policies applied during the time period of the RNC.  Esposito Depo. 860:12-21.**  Plaintiffs do not dispute that the Policies were in effect "shortly before and during the Convention."  Accordingly, this fact is undisputed by Plaintiffs.

**The NYPD Believed The Policies Addressed The Specific Threat Environment Facing The During The RNC**

**173.    The Policies were adopted based on the specific threats and because of the overall tripartite threat environment facing the RNC, including the City and the RNC.  (Esposito Depo 85:4-12, 183:11-25, 184:2-21, 194 9:13, 195:5-13, 268:16-18, 269:6-25, 270:2, 365:2-7, 17-20, 367:6-18, 369:8-11, 16-20, 403:19-25, 404:2-25, 405:21-25, 406:2-25, 407:2-25, 408:2-25, 410:6-15, 708:25, 709:2-24, 710:2-21, 711:12-15, 712:2-25, 713:2-17, 714:23-25, 715:2-12, 744:7-16, 899:16-25, 900:2-23, 972:20-25, 973:2-5, 974:2-5, 985:8-23, 986:14-25, 987:2-4, 990:11-24, 1009:10-22, 1010:5-18, 1027:11-20, 1028:13-25, 1029:2-9, 1030:19-25, 1031:2-3, 1033:17-25, 1034:20-24, 1080:25, 1081:2-7, 1104:10-25, 1211:19-25, 1212:2-25, 1213:2-3; Cohen Depo 274:20-25, 275:2-25, 276:2-10; 583:8-25, 584:2-25, 585:2-12; 645:2-25, 646:2-15; Cohen Decl. 7, 14-19; End-User Reports; Cohen PowerPoint; RNC Intelligence Index).**  Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.  The evidence cited by Plaintiffs is unresponsive to the foregoing fact and also must

be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 28-71. Accordingly, this fact should be deemed undisputed.

174. **The NYPD believed that summonsed individuals could "continue" in their "criminal activity," "produce false identification" and more easily avert "responsibility" for their "criminal activity because of the false identification." Esposito Depo. 710:4-21, 995:12-18.** Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71. Accordingly, this fact should be deemed undisputed.

**Combating Continuous Unlawful Activity And Clearing The Unlawful Condition**

175. **Chief Esposito explained that the NYPD adopted the Policies because the NYPD "want[ed] to stop any criminal activity from occurring," "[i]t could be breaking a window, it could be attacking people, it could be anything." Esposito Depo. 733:23-25, 734:2-13.** Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of

context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

176.   **The intelligence regarding "the threat of continuous and repetitive unlawful activity" also informed the decision to adopt the Policies.  Esposito Depo. 1211:19-25, 1212:2-18, 1829:6-13, 16-25, 1831:2-6.**  Plaintiffs do not dispute that  the citation supports this fact.  Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  In addition, Chief Esposito identified numerous End User Reports as containing information indicating a threat of continuous unlawful activity during the RNC.  *See* Defendants Response to Paragraph 101 *supra*.  Plaintiffs' argument or suggestion that the intelligence information is limited to the End User Reports must be rejected for all of the reasons stated by Defendants in Paragraph 82 *supra*.  Accordingly, this fact should be deemed undisputed.

177.   **One specific issue "discussed" in deciding to adopt the Policies was information "from intelligence … that people were stating that they were going to come to New York City and engage in "continuous unlawful behavior" and "continuous, recurring unlawful civil disobedience" "and, through unlawful acts"  shut down the City of New York and the RNC.  Esposito Depo. 194:9:13, 714:3-18, 715:6-9, 899:16-25, 900:2-23, 1104:10-25. 1211:19-25, 1212:2-18, 1829:6-13, 16-25, 1831:2-6.**  Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the

Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71. Plaintiffs' statement time period is unresponsive to the fact at issue and fails to recognize that both the citations provided and the record provides this context. Accordingly, this fact should be deemed undisputed.

178. **The NYPD believed the threat of "continued illegal activity" was a "paramount" concern. Esposito Depo. 1011:4-1.** Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71. Accordingly, this fact should be deemed undisputed.

179. **In making the decision to adopt the Policies another factor considered was that the intelligence indicated RNC-related "criminal activity" would continue after a summons was issued. Esposito Depo. 349:17-25, 350:2-3, 729:9-21.** Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.

*See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Plaintiffs' argument or suggestion that the intelligence information is limited to the End User Reports must be rejected for all of the reasons stated by Defendants in Paragraph 82 *supra*.  In addition, Chief Esposito identified numerous End User Reports as containing information indicating a threat of continuous unlawful activity during the RNC.  *See* Defendants Response to Paragraph 101 *supra*.  Accordingly, this fact should be deemed undisputed.

180.  **The intelligence also suggested that it was "very likely" that people who were not "remove[d]" from the scene would "just continue in the[ir] illegal activity" Esposito Depo. 87: 20-25, 88: 2-5, 1801:13-21.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

181.  **Chief Esposito explained that "if a person is committing criminal activity and perhaps is eligible for a C summons, if we were to issue that C summons right there on the scene, which is in many cases what we would do under normal circumstances, then that person could just continue his or her criminal activity, which may be resulting in a venue being shut down, a hotel being shut down."  Esposito Depo. 973:6-25, 974:2-5.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact

should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

**182.   Chief Esposito explained that the NYPD "want[ed] to stop the criminal activity from continuing" and he believed "many times" issuing a "summons is not the best way to do that." Esposito Depo. 184:8-11, 194 9:13.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

**183.   The NYPD believed issuing summonses did not address the threat of continuous unlawful conduct because  "[a] C-Summons can be issued right there at the scene" but "that person can go right back and engage in the same criminal activity." Esposito Depo. 729:22-25, 730:2-8, 1801:13-21.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the

foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

**184.   The NYPD felt an inherent problem with issuing summonses during the RNC was that after being issued a summons the individual "could almost immediately come back" and engage in illegal activities.  Esposito Depo. 87: 20-25, 88: 2-5, 1801:13-25, 1802:2-14.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

**185.   By way of example, a "person could get a summons at 12 o'clock in the afternoon, be issued a C summons by 12:05 and start continuing his criminal activity at 12:10." Esposito Depo. 993:21-25, 994:2-4.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is

presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

186.   **Because the NYPD "knew that the criminal activity was meant to be ongoing and continuous in an attempt to shut down the City and shut down the RNC," the NYPD "felt" processing RNC arrestees for DATs would "combat" that threat.  Esposito Depo. 709:11-24.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

187.   **The NYPD believed the Policies addressed their concern regarding the threat of continuous unlawful activity because it could prevent escalating disorder, repetitive violations, as well as escalating offenses such as violations followed by misdemeanors, felonies or acts of terrorism.  Esposito Depo 87:20-25, 88: 2-5, 347:24-25, 348:2-7, 1006:20-25, 1007:2-25, 1008:3-23, 1801:13-25, 1802:2-14.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive

Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

   **188.** **The Policies required "removing that person for a period of time" and the NYPD felt that therefore, it was "more difficult" for them to "re-engage in that criminal activity in a timely fashion."  Esposito Depo. 729:22-25, 730:2-8.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

   **189.** **Chief Esposito explained that "removing the law-breaker from the scene, [and] issuing a desk appearance ticket, prevents that law-breaker from coming back to that scene and engaging in any type of criminal activity from bomb throwing, to blocking traffic, it runs the gamut."  Esposito Depo. 733:23-25, 734:2-13.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See*

Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

190.   **Chief Esposito explained that "besides the crime that they were committing, which may just be laying down in the street, blocking an entrance to a location," the no summons policy "could also prevent [an] act of terrorism if we get them early enough, [or prevent] that other felony of misdemeanor."  Esposito Depo. 1006:20-25, 1007:2-22.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

191.   **The NYPD believed that "a DAT policy, [and] a no C-Summons policy would be the best policy to … combat" the concern about shutting down the City. Esposito Depo. 709:11-24, 1211:19-25, 1212:2-25, 1213:2-10.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive

Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

192.    **The NYPD believed the Policies addressed their concerns regarding the threat of people engaging in continuous unlawful activity or engaging in subsequent greater offense because arrest "remove[d] them for a time period, it takes them off the location [and] verify their identity, you in fact have a good idea of who they are and that makes it less likely they will come back" and continue in additional or greater illegal conduct.  Esposito Depo 1801:13-25, 1802:2-14.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

193.    **The concern about the potential impact false identification would have on the threat of continuous unlawful conduct informed the decision to adopt the no summons policy.  Esposito Depo. 992:18-25, 993:2-20, 994:5-12, 1005:6-21.**  Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the

record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

194.   **The NYPD decision makers were concerned that issuing summonses would not address their concerns about the threat of continuous unlawful activity and the prevalence of demonstrators with false identification because they felt if they issued "C summonses" to people with "phony identification" and who were from outside New York who could return to their home state or country without penalty and that it foster more continued unlawful activity.  Esposito Depo. 100:4-20, 992:18-25, 993:2-20.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

195.   **The NYPD believed that issuing summonses was not the most efficacious way to address their concerns regarding the RNC because "[a] C-Summon many times can be issued right at the scene" so the individual is not removed "from the scene" and the "identification check is not as thorough as with a desk appearance ticket [or being processed online]."  Esposito Depo. 710:4-21, 995:12-18.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the

foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

**Strain On Police Resources**

196.    **The NYPD felt that in the context of the RNC, issuing summonses to would create a strain on police manpower and resources.  Esposito Depo. 1802:15-25, 1803:2-8.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

197.    **Chief Esposito explained that "if you're taking in hundreds of people for C summonses … that volume removes a lot of officers from the scene" who have "to write those summonses [and] check the IDs."  Esposito Depo. 1802:15-25, 1803:2-8, 24, 1804:2-25, 1805:2-3.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii)

because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

**198.    This process "could take hours" and could result in NYPD officers being "off the scene for a lengthily period of time" before they "can go back out and continue policing the RNC."  Esposito Depo. 1802:15-25, 1803:2-8, 24, 1804:2-25, 1805:2-3.** Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

**199.    "In an arrest situation, it was distinctly possible to lodge the prisoners and have the officer go back to the location … and do police work again." Esposito Depo. 1802:15-25, 1803:2-8, 24, 1804:2-25, 1805:2-3.** Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

**Fraudulent Identification & No Identification**

**200.   The NYPD did not want to issue summonses during the RNC to individuals without identification or with false identification because they "would want to make sure [they] could find out for certain who that person is." Esposito Depo. 986:14-25, 987:2-4.** Plaintiffs do not dispute that the citation supports this fact. Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71. Accordingly, this fact should be deemed undisputed.

**201.   The NYPD believed the more thorough identification process resulting from the Policies could lead to identifying known terrorists. Esposito Depo. 1835:21-25, 1836:2-3.** Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71; *see also* Defendants' Response to Paragraph 124 *supra* (regarding false identification and no identification). Accordingly, this fact should be deemed undisputed.

202.    **The Policies addressed the concerns regarding false identification because, "if there's a no C summons policy, people were going to [be processed] online and be fingerprinted" so the NYPD would better be able "to determine their true identity." Esposito Depo. 995:12-18.**    Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.    Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.    *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71; *see also* Defendants' Response to Paragraph 124 *supra* (regarding false identification and no identification).    Accordingly, this fact should be deemed undisputed.

203.    **Chief Esposito explained that "one set of facts that helped us decide there would be [a] no-C-summons policy" was "the information" the NYPD received indicating people coming to the RNC that were planning on engaging in unlawful acts would have "no identification, [and] people would come with phony identification." Esposito Depo. 99:16-25, 100:2-20, 184:8-11, 194 9:13, 709:11-24, 971:9-22, 1003:4-20, 1034:2-19, 1211:19-25, 1212:2-18.**    Plaintiffs do not dispute that the citation supports this fact. Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25,

27, 28-71; *see also* Defendants' Response to Paragraph 124 *supra* (regarding false identification and no identification).  Accordingly, this fact should be deemed undisputed.

   **204. Processing for a DAT requires " a more stringent policy …  for getting proper identification, getting thorough identification, than there is for a C summons." Esposito Depo. 996:3-10, 22-25, 997:2-5.** This fact is undisputed by Plaintiffs.

   **205. Unlike the process in issuing a summons "part of the process to [issue] a DAT" included "verify[ing] whether the information [and] the identification given" to the NYPD "is fake or not" and the NYPD felt a no-summons policy was a more effective way to address their concerns regarding identification.  Esposito Depo. 716:6-17, 184:8-11, 194 9:13, 709:11-24, 971:9-22, 1003:4-20, 1211:19-25, 1212:2-18.** Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71; *see also* Defendants' Response to Paragraph 124 *supra* (regarding false identification and no identification).  Accordingly, this fact should be deemed undisputed.

   206. **The NYPD believed, "the [DAT] process itself would lend toward more accurate identification." Esposito Depo. 996:3:10.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the

foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71; *see also* Defendants' Response to Paragraph 124 *supra* (regarding false identification and no identification).  Accordingly, this fact should be deemed undisputed.

207.    **The intelligence indicating people coming to the City to engage in unlawful conduct would be using false identification "played into the strategy of [offering] desk appearance tickets and no C summonses" during the RNC.  Esposito Depo. 99:16-25, 100:2-20, 102:2-15.**  Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71; *see also* Defendants' Response to Paragraph 124 *supra* (regarding false identification and no identification).  Accordingly, this fact should be deemed undisputed.

208.    **Chief Esposito believed that attempting to determine whether identifications were false during the RNC would have been "very difficult."  Esposito Depo. 1025:19-25, 1026:2-18.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be

rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

209.   **The NYPD believed "determ[ining] whether an out of city, out of state, out of country IDs were in fact valid or not valid would have been a tremendous undertaking" during the RNC.  Esposito Depo. 1009:10-25, 1010:2-4, 1025:19-25, 1026:2-18.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71 *see also* Defendants' Response to Paragraph 124 *supra* (regarding false identification and no identification).  Accordingly, this fact should be deemed undisputed.

210.   **Based on the intelligence information, the NYPD was "anticipating large numbers" of individuals coming to the RNC "from outside the City and outside the state" or even from "other parts of the world" for the purpose of participating in RNC related events.  Esposito Depo. 1027:11-20, 1212:20-25, 1213:2-10.**  Plaintiffs  seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking

to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71; *see also* Defendants' Response to Paragraph 124 *supra* (regarding false identification and no identification). Accordingly, this fact should be deemed undisputed.

211. **Some of these individuals would commit unlawful acts at RNC-related events.  Esposito Depo. 183:11-25, 184:2-20, 1009:10-22, 1010:5-13, 1027:11-20, 1212:20-25, 1213:2-10.** This fact is undisputed by Plaintiffs.

212. **An additional "issue[ ] discussed that supported [the Policies]" was information "from intelligence" that people coming to the RNC "were going to be coming with no ID, in an attempt to jam up the criminal justice system" and "people were going to be coming with phony ID to try and deceive the Criminal Justice Bureau" or "deceive law enforcement."  Esposito Depo. 268:16-18, 269:7-25, 270:2, 270:3-9, 899:16-25, 900:2-23.** Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

213. **"[N]o ID and bad ID is going to lead to poor, inaccurate identification and prosecution."  Esposito Depo. 990:25, 991:2-5, 992:18-25, 993:2-20. 971:23-24, 972:2-3, 8-14.** This fact is undisputed by Plaintiffs.

214. **The NYPD believed that issuing summonses was not the most efficacious way to address their concerns regarding the RNC because "[a] C-Summon**

many times can be issued right at the scene" so the individual is not removed "from the scene" and  the "identification check is not as thorough as with a desk appearance ticket [or being processed online]."  **Esposito Depo. 710:4-21, 995:12-18.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Accordingly, this fact should be deemed undisputed.

## The NYPD Wanted To Ensure The Best Possible Criminal Prosecutions

215.    The "intelligence" the NYPD received indicated that "people who live outside the City and state who are issued summonses are less likely to come back and answer that C summons" when compared to being arrested.  **Esposito Depo. 1831:7-25, 2-7.** Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71.  Plaintiffs' argument or suggestion that the intelligence information is limited to the End User Reports must be rejected for all of the reasons stated by Defendants in Paragraph 82 *supra*.  In addition, Chief

Esposito identified End User Reports bearing upon the NYPD's concern about making the best criminal prosecutions possible during the RNC.  See Esposito Depo. 1225:17-1234:20, End User Reports, Bates Nos. 102564-102566; Esposito Depo. 1243:13-1244:15, End User Report, Bates No. 102589; Esposito Depo. 1252:12-1253:7, End User Report, Bates No. 102595; Esposito Depo. 1270:15-1273:6, End User Reports, Bates Nos. 102617-102618; Esposito Depo. 1310:7-1315:8, End User Report, Bates No. 102662; Esposito Depo. 1323:19-1324:18, End User Report, Bates No. 102676; Esposito Depo. 1333:23-1335:5, End User Report, Bates No. 102690; Esposito Depo. 1355:23-1356:23, End User Report, Bates No. 102719; Esposito Depo. 1359:20-1360:18, End User Report, Bates No. 102721.   Accordingly, this fact should be deemed undisputed.

**216.    The NYPD was also concerned that if out-of-state individuals were issued summonses they would have the "mindset" that the NYPD would not pursue a criminal prosecution once they returned "to their home state." Esposito Depo. 1010:5-13.** Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71; *see also* Defendants' Response to Paragraph 124 *supra* (regarding false identification and no identification). Accordingly, this fact should be deemed undisputed.

**217.    The NYPD was also concerned that out-of-state individuals "would continue in their illegal activity" with the "mindset" that they "could [commit criminal**

acts] over and over" without consequence.  Esposito Depo. 1010:5-25, 1011:2-3, 20-25, 1012:2.  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71; *see also* Defendants' Response to Paragraph 124 *supra* (regarding false identification and no identification).  Accordingly, this fact should be deemed undisputed.

218.   **The NYPD was concerned with the prospect that out-of-state individuals would not return to New York for prosecution if they received a summons. Esposito Depo. 1010:19-25, 1011:2-3.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71; *see also* Defendants' Response to Paragraph 124 *supra* (regarding false identification and no identification).  Accordingly, this fact should be deemed undisputed.

219.   **The issue of obtaining "a proper identification" was also a concern with out of state individuals because "a proper identification is necessary to go forward"**

with **"the best possible [criminal] prosecution" which was a special consideration during the RNC, because many "of these people were coming in from out of the City [and state]." Esposito Depo. 184:12-21.**   Plaintiffs do not dispute that the citation supports this fact. Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71; *see also* Defendants' Response to Paragraph 124 *supra* (regarding false identification and no identification).  Accordingly, this fact should be deemed undisputed.

> **220.   Based on the intelligence received, the NYPD was concerned that individuals with false identification or no identification would not be prosecuted because they may "not show up for a return date [and] because" the NYPD did not "have the proper identification, there [would be] no  prosecution." Esposito Depo. 990:25, 991:2-5, 992:18-25, 993:2-20.**   Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71; *see also* Defendants' Response to Paragraph 124 *supra* (regarding false identification and no identification).  Accordingly, this fact should be deemed undisputed.

221.   **The NYPD wanted to ensure proper criminal prosecutions of those who engaged in illegal conduct during the RNC.  Esposito Depo. 1211:19-25, 1212:2-18.**  Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71; *see also* Defendants' Response to Paragraph 124 *supra* (regarding false identification and no identification).  Accordingly, this fact should be deemed undisputed.

222.   **In "respon[ding] [to and] analy[zing]" the intelligence received regarding the RNC, the NYPD focused on the fact that in order "to make a better criminal case" they needed "good identification."  Esposito Depo. 100:4-20, 102:2-15, 1211:19-25, 1212:2-18.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71; *see also* Defendants' Response to Paragraph 124 *supra* (regarding false identification and no identification) and Defendants' Response to Paragraph 215 *supra* (regarding making the best criminal prosecutions during the RNC).  Accordingly, this fact should be deemed undisputed.

**223. Based on the intelligence indicating the prevalence of "fake" identification, "continuous unlawful activity, shutting down the RNC, deceiving the police, the tactics of defeating [the NYPD's] strategies [and] methods of policing, all of that came into play" in making the NYPD "believe" that people issued summonses would be less likely to return for criminal court appearances. Esposito Depo. 1832:8-19.** Plaintiffs do not dispute that the citation supports this fact. Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it. Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record. *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71; *see also* Defendants' Response to Paragraph 124 *supra* (regarding false identification and no identification) and Defendants' Response to Paragraph 215 *supra* (regarding making the best criminal prosecutions during the RNC). Accordingly, this fact should be deemed undisputed.

**224. "NYPD intelligence sources" indicated that people "from outside New York City" were "being advised to come to New York" during the RNC and "demonstrate" and "commit illegal acts, shut down the RNC" and "bring fake ID" so "based on [that] intelligence" it was "the opinion of the NYPD" and Chief Esposito that "a number of the people coming [to New York] for the RNC who were going to engage in continuous unlawful activity would be less likely to come back and answer for their [criminal] court date[s]" if they were issued summonses. Esposito Depo. 100:4-20, 1829:6-13, 1830:16-25, 1831:2-6, 1832:8-19.** Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it. The intelligence information and the record as a whole supports this fact as

presented.  *See* Defs' Reply 56.1 at ¶¶ 98-135.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71; *see also* Defendants' Response to Paragraph 124 *supra* (regarding false identification and no identification). Accordingly, this fact should be deemed undisputed.

**225.    Chief Esposito explained, that during the RNC, the NYPD was "looking to make the best case for criminal activity if [they made] arrests" and accordingly, "felt the desk appearance ticket" or processing online "would have been the best option." Esposito Depo. 710:4-21, 995:12-18.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71; *see also* Defendants' Response to Paragraph 124 *supra*. Accordingly, this fact should be deemed undisputed.

**226.    The fact that "a proper identification" is necessary to go forward with "the best possible [criminal] prosecution" was a special consideration during the RNC, because many of the people who were expected to engage in unlawful conduct "were coming in from out of the City" outside the state, and would be carrying false identification**

**or no identification.  Esposito Depo. 99:16-25, 100:2-20, 102:2-15, 184:12-21.**  Plaintiffs do not dispute that the citation supports this fact.  Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Plaintiffs' argument that this fact should be disputed to the extent it implies that this fact played no role in the adoption of the Policies is unresponsive to the foregoing fact and also must be rejected (i) based upon the totality of the undisputed evidence provided by Defendants; and (ii) because the evidence cited seeking to dispute this fact is immaterial, is presented out of context, and mischaracterizes the record.  *See* Defs' Responsive Schiller Facts at ¶¶ 13-15, 19-20, 23, 25, 27, 28-71; *see also* Defendants' Response to Paragraph 124 *supra* (regarding false identification and no identification) and Defendants' Response to Paragraph 215 *supra* (regarding making the best criminal prosecutions during the RNC).  Accordingly, this fact should be deemed undisputed.

### The NYPD's Mission In Planning For The RNC Included Facilitating The Right of the People To Assemble and Express Their First Amendment Rights.

227.    **"The high point of the NYPD's actions was the department's handling of the United for Peace and Justice (UFPJ) antiwar march on Sunday, August 29, [2004], when as many as half a million people peacefully marched past Madison Square Garden, largely without incident, and with generally good cooperation." Christopher Dunn et al., Rights and Wrongs at the RNC 1 (New York Civil Liberties Union 2005).**  This fact is undisputed by Plaintiffs.

228.    **"Over the course of the RNC, tens of thousands of protesters engaged in anti-war, labor, human rights, and other political rallies within the demonstration area. News reports also documented various protests in Chelsea, Harlem, Midtown, Queens, Union Square, and other locations across the City."  *Marcavage*, 2010 U.S. Dist. LEXIS 107724 at *22.**  This fact is undisputed by Plaintiffs.

229.    **Commissioner Cohen testified that nearly 800,000 people engaged in protest during the RNC.  (Cohen Depo. 775:23-25, 776:2-25, 777:2-20, 826:18-25, 827:2-25, 828:2-8).**  This fact is undisputed by Plaintiffs.

230.    **There were approximately 1,800 RNC related arrests.**  Plaintiffs do not dispute that approximately 1,800 people were arrested during the RNC. Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.

231.    **In planning for the RNC, the NYPD's mission included the following four objectives:  (1) "Ensure the safety of the citizens of New York and its visitors"; (2) "Provide for the security of the RNC"; (3) "Minimize the inconvenience to commuters, residents and merchants"; and (4) "Facilitate the rights of others to lawfully protest against the convention."  RNC Executive Summary, Bates 7082; RNC Training Materials, Bates 7025, annexed to the Dougherty Decl. as Ex. N; NYPD Officers' Guide to the RNC, Bates 7302, annexed to the Dougherty Decl. as Ex. N; Demonstration Area Sub-Committee After Action Report, Bates 127466, annexed to the Dougherty Decl. as Ex. N (the City's objective was to "provide a safe and orderly venue for rally participants, visitors and spectators", "[m]aintain the flow of pedestrian and vehicular traffic", and to "[m]aintain a business as usual atmosphere in the immediate area").**  This fact is undisputed by Plaintiffs.

232.    **The policy of the NYPD was to protect the right of people to protest. Thomas Graham Depo. at 582:11-16, annexed to the Dougherty Decl. as Ex. O; Thomas Galati Depo. at 458:17-20, annexed to the Dougherty Decl. as Ex. N.**  Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.  Accordingly, this fact should be deemed undisputed.

233.    **In addition to concerns about illegal activity that may occur, in planning for the Convention, the NYPD was "also concerned about legal activities" and**

wanted to "protect the rights" of lawful demonstrators.   **Esposito Depo. at 1105:2-16.** Plaintiffs seek to dispute but do not provide evidence creating a true dispute.  Accordingly, this fact should be deemed undisputed.

234.  **In planning for the RNC, "the process [the NYPD] put in place" encompassed a "mission" to protect the First Amendment rights [of] the people who were [in New York City] to demonstrate legally against the RNC."  Esposito Depo. 1813:11-25, 1814:2-5.**  Plaintiffs seek to dispute but do not provide evidence creating a true dispute. Accordingly, this fact should be deemed undisputed.

235.  **The NYPD made preparations to ensure that the rights of others to lawfully assemble and protest was done "in a lawful manner that [was] respectful of other citizens' rights."  RNC Executive Summary, Bates 7090.**  Plaintiffs seek to dispute but do not provide evidence creating a true dispute.  Accordingly, this fact should be deemed undisputed.

236.  **One measure taken by the City to "facilitate the rights of others to lawfully protest against the convention" included the training and education of law enforcement officials on First Amendment rights. No Summons Policy Video Compilation (hereinafter "NSPV") at Ch. 1, annexed to the Dougherty Decl. as Ex. R.**  Plaintiffs seek to dispute but do not provide evidence creating a true dispute.  Accordingly, this fact should be deemed undisputed.

237.  **A second measure included the establishment of a Demonstration Area.  Demonstration Area Sub-Committee.  After-Action Report, Bates 127466; Smolka Decl. ¶8.**  Plaintiffs do not dispute that the NYPD designated a "Demonstration Area" therefore this fact should be deemed undisputed.

238.  **A third measure included the issuance of parading permits in accordance with the laws of the City of New York.  N.Y.C. Admin. Code § 10-110(a) (2004);**

**Kerry Sweet Depo. 35:18-25, annexed to the Dougherty Decl. as Ex. P.**  Plaintiffs do not dispute that the NYPD issued parade permits.   Accordingly, this fact should be deemed undisputed.

239.   **In addition, City officials met with demonstration organizers, including representatives from the New York Civil Liberties Union (NYCLU), in preparation of large-scale demonstration activity.  RNC Executive Summary, Bates 7090.** This fact is undisputed by Plaintiffs.

240.   **A fourth measure included accommodating unplanned marches to proceed with their demonstrations.  NSPV at Ch. 1.**  Plaintiffs do not dispute that "on at least three occasions the NYPD allowed marches to take place on City streets even though no formal parade permit was issued."  Accordingly, this fact should be deemed undisputed.

241.   **The goal of the NYPD was to have demonstrations and marches with no unlawful behavior and no arrests.   Thomas Graham Depo. at 414:15-20; 419:3-6.** Plaintiffs do not dispute that the citation supports this fact and otherwise seek to dispute this fact, but cite no evidence from the record to contradict it.  Accordingly, this fact should be deemed undisputed.

**The City Educated and Trained Law Enforcement Personnel To Facilitate First Amendment Activity**

242.   **The NYPD's key responsibilities included maintaining order, protecting persons and property, and impartially enforcing the law during protests and demonstrations.  NYPD Officers' Guide to the RNC, Bates 7306.**  This fact is undisputed by Plaintiffs.

243.   **The NYPD provided training to its Members of Service in how to protect the rights of others to lawfully protest against the RNC.  RNC Training materials,**

**Bates 7024-7025.**  Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.  Accordingly, this fact should be deemed undisputed.

**244.    The role of the Police Department includes protecting the right of protesters to express their views and protecting the rights of non-protesters to go about their daily life unaffected by public disorder.  Police Student's Guide, Maintaining Public Order, Bates 8222, annexed to the Dougherty Depo. as Ex. P.**  This fact is undisputed by Plaintiffs.

**245.    Officers were trained that it is the policy of the New York Police Department to protect the rights of assembly and free speech, as well as the right of safe and unhindered passage for all people.  The successful implementation of this policy requires a balance between the Department's mandate to preserve public order and its obligation to protect the First Amendment rights of varied and often competing groups. Executive Development, May 2004 Cycle Course, "Civil Disturbance," Bates 7052, annexed to the Dougherty Decl. as Ex. Q.**  Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.  Accordingly, this fact should be deemed undisputed.

**246.    Prior to the RNC, NYPD officers were trained in policing the RNC. No Summons Policy Video ("NSPV") at Ch. 1; Deposition of Thomas Doepfner ("Doepfner Depo."), annexed to Dougherty Decl. as Ex. O at 33:15-36:18.**  Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.  Accordingly, this fact should be deemed undisputed.

**247.    Officers were instructed on the laws concerning demonstration activity and other protected First Amendment activity, such as observing. NSPV at Ch. 1; Doepfner Depo. at 33:15-36:18.**  Plaintiffs do not dispute that members of the NYPD's Legal Bureau received some training or that the Legal Bureau developed training.  Plaintiffs otherwise

seek to dispute this fact, but cite no evidence from the record to contradict it. Accordingly, this fact should be deemed undisputed.

**248.    Officers were trained that participants in the RNC could exercise their First Amendment rights. NSPV at Ch. 1, Thomas Doepfner Depo. at 33:15-22, 36:4-12.** Plaintiffs do not dispute that members of the NYPD's Legal Bureau received some training or that the Legal Bureau developed training. Plaintiffs otherwise seek to dispute this fact, but cite no evidence from the record to contradict it. Accordingly, this fact should be deemed undisputed.

**249.    Officers were trained to be neutral in their policing of any demonstrations that would arise during the RNC. NSPV at Ch. 1- TARU Tape 159 at 11:11 and TARU Tape 160 at 1:30.** Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it. Accordingly, this fact should be deemed undisputed.

**250.    Officers were trained to expect pop-up demonstrations during the RNC and to facilitate any such demonstrations by working with organizers, if possible to safely do so. NSPV at Ch. 1- TARU Tape 159 at 4:10.** Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it. Accordingly, this fact should be deemed undisputed.

## The City Established a Demonstration Area by the Convention

**251.    The NYPD established a "free speech" zone at 31st Street and 8th Avenue, directly adjacent to the southwest corner of Madison Square Garden. Diagram of Safety Zone, Bates 10558;** *Marcavage*, **05 Civ. 4949, 2010 U.S. Dist. LEXIS 107724, at \*5-6 (S.D.N.Y. Sept. 29, 2010).** Plaintiffs do not dispute that the NYPD created an area on Eighth Avenue where demonstrators could assemble. Plaintiffs otherwise seek to dispute this fact, but

cite no evidence from the record to contradict it.  Accordingly, this fact should be deemed undisputed.

   252. **Madison Square Garden occupies the entire area from 31st Street to 33rd Street and from 7th Avenue to 8th Avenue.  Diagram of Safety Zone, Bates 10558, annexed to the Dougherty Decl. as Ex. Q.**  This fact is undisputed by Plaintiffs.

   253. **The demonstration area encompassed 8th Avenue from West 32nd Street to West 14th Street, with cut-off posts on 7th and 9th Avenues from West 31st Street to West 14th Street. Demonstration Area Sub-Committee After-Action Report, Bates 127472.** This fact is essentially undisputed by Plaintiffs because they do not dispute that the NYPD created an area as described by Defendants where demonstrators could assemble.

   254. **The demonstration area was established in order to provide a safe and orderly venue for rally participants, visitors, and spectators, while maintaining the flow of pedestrian and vehicle traffic in the area.  Demonstration Area Sub-Committee After-Action Report, Bates 127466.**  Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it.  Accordingly, this fact should be deemed undisputed.

   255. **This space was monitored by NYPD to ensure it remained safe for everyone who wished to participate.  *Marcavage*, 2010 U.S. Dist. LEXIS 107724, at \*5-6.** This fact is undisputed by Plaintiffs.

**The City Issued Parade Permits For Demonstrations Scheduled To Take Place During the RNC Period**

   256. **Groups who wished to parade, or conduct events otherwise governed by N.Y.C. Admin. Code §10-110, could apply for permits from the NYPD.  N.Y.C. Admin. Code §10-110, 38 R.C.N.Y. §19-01, et seq.**  This fact is undisputed by Plaintiffs.

   257. **Permit applications for RNC-related events were generally granted. Kerry Sweet Depo. 36:8-9, annexed to the Dougherty Decl. as Exhibit P.**  Plaintiffs seek to

dispute this fact, but cite no evidence from the record to contradict it. Accordingly, this fact should be deemed undisputed.

258. **NYPD would meet with any group that wished to speak with the NYPD regarding the planning for each event. Bruce Smolka Depo. at 413:18-24, annexed to the Dougherty Decl. as Ex. P.** This fact is undisputed by Plaintiffs.

259. **In the absence of a written permit, permission to go forward with a parade may be granted orally on the scene by the ranking NYPD officer. Deposition of Bruce Smolka ("Smolka Depo."), annexed to the Dougherty Decl. as Ex. P at 54:20-55:6.** Plaintiffs do not dispute that "NYPD officials can orally grant permission for persons to engage in marches that require a permit." Therefore, this fact should be deemed undisputed.

260. **This oral permission is granted provided the group abides by the conditions set by the NYPD. Kerry Sweet Depo. at 40:6-19; 43:7-9.** Plaintiffs seek to dispute this fact, but cite no evidence from the record to contradict it. Accordingly, this fact should be deemed undisputed.

**Planned Parenthood March – 8/28/04**

261. **On May 26, 2004, Planned Parenthood of New York City applied for a parade permit for a march of approximately 10,000 people to be held on August 28, 2004. Permit Materials, Bates 91505, annexed to the Dougherty Decl. as Ex. P.** This fact is undisputed by Plaintiffs.

262. **The organizers requested that the march begin in Camden Plaza, in Brooklyn, then proceed over the Brooklyn Bridge pedestrian walkway, turning onto Park Row, then Broadway, and terminating in Battery Park. Permit Materials, Bates 91505.** This fact is undisputed by Plaintiffs.

263.    Representatives of Planned Parenthood met with representatives of NYPD Patrol Borough Manhattan South Operations, and negotiated changes to the proposed parade route, resulting in the parade's conclusion at City Hall Park rather than Battery Park.  **Permit Materials, Bates 91503.**  This fact is undisputed by Plaintiffs.

264.    On June 15, 2004, the NYPD granted Planned Parenthood's permit application with the route modification.  **Permit Materials, Bates 91504.**  The City of New York issued a parading permit to Planned Parenthood.  **List of Scheduled Events, Bates No. 15969, annexed to the Dougherty Decl. as Ex. P.**  This fact is undisputed by Plaintiffs.

265.    The Planned Parenthood March took place on August 28, 2004.  **MACC RNC Daily Briefing Sheets, Bates 7174, annexed to the Dougherty Decl. as Ex. Q; NSPV at Ch. 5.**  This fact is undisputed by Plaintiffs.

266.    The event began at approximately 10:00 in Brooklyn, and concluded at approximately 5:00 p.m. **MACC RNC Daily Briefing Sheets, Bates 7174.**  This fact is undisputed by Plaintiffs.

267.    It was estimated that between 7,000 – 15,000 people participated in the event. **NSPV at Ch. 5, List of Scheduled Events Bates No. 15969; MACC RNC Daily Briefing Sheets, Bates 7174; NYPD Emergency Operations Center RNC Daily Reports (hereinafter "EOC Daily Reports"), Bates 7243, annexed to the Dougherty Decl. as Ex. Q.** This fact is undisputed by Plaintiffs.

268.    There were about 30 counter-protesters. **EOC Daily Reports, Bates 7243.**  This fact is undisputed by Plaintiffs.

269.    There were no arrests during the march except for 2 arrests for criminal possession of knives.  **List of Scheduled Events Bates No. 15969; MACC RNC**

**Daily Briefing Sheets, Bates 7174; EOC Daily Reports, Bates 7243.** This fact is undisputed by Plaintiffs.

**United For Peace And Justice March – 8/29/04**

270. **On August 29, 2004, the organization United for Peace and Justice ("UPJ") held a demonstration march that ran from 7th Avenue and 33rd Street to Union Square Park. List of Scheduled Events, Bates 15970.** Plaintiffs do not dispute that the UPJ "held a march that proceeded from 23rd Street and Seventh Avenue up Seventh Avenue past Madison Square Garden, across 34th Street to Fifth Avenue, down Fifth Avenue to Broadway, and then down Broadway to Union Square Park."

271. **UPJ had previously obtained a permit for this event. List of Scheduled Events, Bates 15970.** This fact is undisputed by Plaintiffs.

272. **Video footage of the event clearly depicts thousands of people marching with no interference from the NYPD. NSPV at Ch. 3.** This fact is undisputed by Plaintiffs.

**NYC Central Labor Council Protest—9/1/04**

273. **On Wednesday, September 1, 2004, approximately 25,000 people participated in a NYC Central Labor Council rally in the "demonstration area" with no incidents. Demonstration Area Sub-Committee After-Action Report, Bates 127469; List of Scheduled Events Bates No. 15972.** This fact is undisputed by Plaintiffs.

274. **There was a sound permit issued for this event. List of Scheduled Events Bates No. 15972.** This fact is undisputed by Plaintiffs.

275. **The event lasted from 4:00 p.m. to 7:00 p.m. List of Scheduled Events Bates No. 15972.** This fact is undisputed by Plaintiffs.

276. **There were no arrests. Emergency Operations Center Documents, Bates 7282.** This fact is undisputed by Plaintiffs.

277.    In addition, the City issued permits to numerous other events.  See e.g. **MACC RNC Daily Briefing Sheets, Bates 7156 (Paul Revere Bike Ride); MACC RNC Daily Briefing Sheets, Bates 7160 (UPJ rally outside New York State Supreme Court building), (Not in Our Name press conference); NSPV at Ch. 13 (Hilton Hotel, Halliburton "Billionaires for Bush" demonstration); MACC RNC Daily Briefing Sheets, Bates 7190, NSPV at Ch. 4, EOC Daily Reports, Bates 7256 (AIDS March, "Still We Rise").**  This fact is undisputed by Plaintiffs.

## NYPD Also Facilitated Parades That Did Not Have Permits

### DNC2RNC "Times Up" Event - 8/26/04

278.    **On August 26, 2004, there occurred the DNC2RNC Times Up event. NSPV at Ch. 2; List of Scheduled Events Bates No. 15968.**  This fact is undisputed by Plaintiffs.

279.    **This event was facilitated by the NYPD although no parade permit had been issued.  NSPV at Ch. 2; List of Scheduled Events Bates No. 15968. Monahan Depo. at 127:2-3**  This fact is undisputed by Plaintiffs.

280.    **Organizers informed NYPD officers that they wished to march on Broadway through Times Square, past Madison Square Garden to Union Square Park NSPV at Ch. 2 at 00:00-7:15, Monahan Depo. at 125:13-21.**  This fact is undisputed by Plaintiffs.

281.    **Police officers on the scene agreed to this route and provided one lane of Broadway for the event because the march was traveling with the flow of traffic. Monahan Depo. 125:21-25.**  This fact is undisputed by Plaintiffs.

282.    **Organizers also planned for participants to put on masks in front of a theater on Broadway, stamp their feet, and then remove the masks.  The NYPD did not**

object to this despite it being a violation of the Penal Law because, after talking to the march organizer, Monahan was "comfortable that this was all they were going to do.  He told me that they would remove the masks right after they passed the theater," and Monahan was present during this portion of the march.  **Monahan Depo. 126:2-16.**  This fact is undisputed by Plaintiffs.

      **283.**    **The march began in Central Park, to Columbus Circle, then down Broadway, to Madison Square Garden to Union Square.  NSPV at Ch. 2, Galati Depo. at 713:6-23.**  This fact is undisputed by Plaintiffs.

      **284.**    **No arrests were made during this event.  Galati Depo. at 718:24-719:6.**  This fact is undisputed by Plaintiffs.

**<u>Union Square To Madison Square Garden Pop- Up March –9/2/04</u>**

      **285.**    **On September 2, 2004 a pop up demonstration occurred at Union Square Park.  NSPV at Ch. 12.**  This fact is undisputed by Plaintiffs.

      **286.**    **Participants were at Union Square Park by 8:30 p.m.  NSPV at Ch. 12.**  This fact is undisputed by Plaintiffs.

      **287.**    **Participants wanted to march to Madison Square Garden.  NSPV at Ch. 12.**  This fact is undisputed by Plaintiffs.

      **288.**    **No permit had been previously sought or obtained for this march. NSPV at Ch. 12 at 9:24.**  This fact is undisputed by Plaintiffs.

      **289.**    **NYPD officers negotiated with event organizers and facilitated the march to go forward.  NSPV at Ch. 12.**  This fact is undisputed by Plaintiffs.

      **290.**    **Event organizers can be seen cooperating with NYPD.  NSPV at Ch. 12.**  This fact is undisputed by Plaintiffs.

**291.    Hundreds of people participated in this event.  NSPV at Ch. 12.**  This fact is undisputed by Plaintiffs.

**292.    The route of the march was to go west on 15th Street, and then North on 8th Avenue until reaching Madison Square Garden.  NSPV at Ch. 12.**  Plaintiffs do not dispute that "the NYPD allowed the march to proceed across 15th Street and up Eighth Avenue."

**293.    In addition, numerous events went forward during the RNC with little or no incident.  EOC Daily Reports, Bates 7229 (UPJ rally to overturn City's denial of a second permit application for a Central Park demonstration-8/29/04); List of Unscheduled Events, Bates No. 15974, annexed to the Dougherty Decl. as Ex. Q (Mothers Against Bush pop-up demonstration-8/29/04), (Police/Fire Union Rally of 8/29/04), (pop-up event at Lincoln Center- 8/29/04), (pop-up event at Pier 57-8/29/04), (pop-up event at Amsterdam Theater- 8/29/04); List of Unscheduled Events, Bates No. 15975 (Crow Bar event-8/30/04), (Union Square pop-up event- 8/30/04), (Pop-up demonstration at Cipriani's Restaurant- 8/30/04), (Lincoln Center pop-up event- 8/31/04), (Tavern on the Green pop-up event- 8/31/04 (see also NSPV at ch. 7)), (pop-up demonstration on Lexington Avenue- 8/31/04), (pop-up demonstration at Times Square- 8/31/04); List of Unscheduled Events, Bates No. 15976 (pop-up Philadelphia Cluster Demonstration- 8/31/04), (pop-up demonstration at the Exxon Building); (pop-up demonstration at Washington Square Park-8/31/04), (pop-up demonstration on 40th Street and 6th Avenue-8/31/04); List of Unscheduled Events, Bates No. 15978 (pop-up demonstration on 37th Street between 6th and 7th Avenues-8/31/04), (pop-up demonstration on Broadway between 48th and 49th Streets-8/31/04), (pop-up demonstration on 34th Street and Broadway-8/31/04), (Pier 57 pop-up demonstration- 9/1/04), (pop-up demonstration at 36th Street and Broadway-9/1/04), (pop-up demonstration at 40th Street and 3rd Avenue-9/1/04), (pop-up demonstration at 34th Street**

and 9th Avenue- 9/1/04); NSPV at Ch. 6 (Financial Center/Ground Zero demonstration-8/29/04); NSPV at Ch. 9 (Plaza Hotel Demonstration-8/31/04); NSPV at Ch. 10 (Regency Hotel Protest- 8/30/04); NSPV at Ch. 11 ("March on the Media" Event- 9/1/04); NSPV at Ch. 12 (Union Square to Madison Square Garden pop-up march- 9/2/04); NSPV at Ch. 14 (pop-up demonstration at corner of Centre and Worth Streets, see also Monahan Depo. 149:2-150:2); List of Unscheduled Events, Bates No. 15979 (pop-up demonstration at 34th Street and the FDR- 9/2/04), (pop-up demonstration at 100 Centre Street- 9/2/04), (pop-up demonstration at 6th Avenue and 42nd Street-9/2/04), (pop-up demonstration at Union Square- 9/2/04, see also EOC Daily Reports, Bate 7291).  This fact is undisputed by Plaintiffs.

**DEFENDANTS' RESPONSE TO PLAINTIFFS' PROPOSED UNDISPUTED FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*Schiller v. City of N.Y., et al*  04-cv-7922 (RJS)(JCF); *Dinler v. City of N.Y., et al.*  04-cv-7921 (RJS)(JCF)[9]

1.  Paragraph 1 of the *Schiller v. City of N.Y., et al*  04-cv-7922 (RJS)(JCF); *Dinler v. City of N.Y., et al.*  04-cv-7921 (RJS)(JCF) Plaintiffs' Proposed Undisputed Facts in Opposition to Defendants' Motion for Summary Judgment ("*Schiller* Opp. 56.1") is not a statement of material fact which would create a genuine issue for trial.  In addition, this fact is disputed.  The citation does not support the existence of a "normal NYPD practice" regarding the issuance of summonses.

2.  Paragraph 2 of the *Schiller* Opp. 56.1 is not a statement of material fact that would create a genuine issue for trial.  In addition, this fact is disputed.  The citation does not support the existence of any "NYPD policy."  Defendants do not dispute that the citation indicates Chief Esposito testified that "in a perfect world" a warrant check is conducted before someone is issued a summons.

3.  Paragraph 3 of the *Schiller* Opp. 56.1 is not a statement of material fact that would create a genuine issue for trial.  In addition, this fact is disputed.  The citation does not support any "understanding" that Chief Esposito had and merely indicates that Chief Esposito would "probably" agree that at any event some number of people would be likely to possess false identification.

---

[9] The 56.1 Counterstatement below responds to and supplements the purportedly undisputed material facts posed by Plaintiffs in *Schiller v. City of N.Y., et al*  04-cv-7922 (RJS)(JCF); *Dinler v. City of N.Y., et al.*  04-cv-7921 (RJS)(JCF).

4. Paragraph 4 of the *Schiller* Opp. 56.1 is not a statement of material fact that would create a genuine issue for trial. In addition, this fact is disputed. First, the citation provided only discusses demonstrations in New York City. Second, when read in context the testimony makes it clear that Plaintiffs' fact as stated is immaterial because it is based on a hypothetical question about events vastly different in magnitude when compared to the RNC and also fails to account for intelligence received in advance of the RNC and is also therefore inaccurate. (Esposito Depo. 1079:6 – 1081:7; Defs' Reply 56.1 at ¶¶ 46 -148.)

5. Paragraph 5 of the *Schiller* Opp. 56.1 is not a statement of material fact that would create a genuine issue for trial. When read in a fair context it is evident this citation neither refers to any policing decision regarding the RNC nor the Policies. Instead it refers to a hypothetical scenario posed to Chief Esposito about circumstances unlike the RNC and also specifically excludes circumstances in which intelligence indicates people will possess false identification. (Esposito Depo. 101:23 – 102:21). Defendants do not dispute that Chief Esposito testified that "phony identification is always an issue. Proper identification is key to issuing a C summons. So it's always a concern."

6. Paragraph 6 of the *Schiller* Opp. 56.1 is not a statement of material fact that would create a genuine issue for trial. In addition, this fact is dispute because the cited testimony does not supports the existence of any "standard NYPD practice prior the Convention." (*But see* Defs' Reply 56.1 at ¶¶ 161-63 (discussing processing RNC arrestees for DATs and Fingerprinting).

7. Paragraph 7 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because this summary judgment motion is limited by the Court's Order dated June 20, 2011 to the issues of "group probable cause", and the City's alleged "no-summons" and "blanket fingerprinting" policies.   In addition, this fact is disputed because the citation provided in no way supports the fact that "at most" a person issued a summons is released within one hour.

8. Paragraph 8 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because this summary judgment motion is limited by the Court's Order dated June 20, 2011 to the issues of "group probable cause", and the City's alleged "no-summons" and "blanket fingerprinting" policies.

9. Paragraph 9 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because this summary judgment motion is limited by the Court's Order dated June 20, 2011 to the issues of "group probable cause", and the City's alleged "no-summons" and "blanket fingerprinting" policies.   This fact also poses an irrelevant hypothetical scenario. *See* Defs' Reply 56.1 at ¶¶ 161-63.

10. Paragraph 10 the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because this summary judgment motion is limited by the Court's Order dated June 20, 2011 to the issues of "group probable cause", and the City's alleged "no-summons" and "blanket fingerprinting" policies.   In addition, this fact is disputed because the citation provided does not in any way whatsoever support the existence of any "normal NYPD policy concerning the issuance of summonses."   In

addition, Chief Esposito explained that "Intelligence is always used to help [the NYPD]" decide whether to adopt a no summons policy for a given event.  (Esposito Depo 738:23-25, 739:2-10).

11. Undisputed.

12. Paragraph of 12 the *Schiller* Opp. 56.1 is disputed.  The citation provided does not support the fact as written.  *See also* Defs' Reply 56.1 at ¶¶ 165 – 172.

13. Paragraph of 13 the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because this summary judgment motion is limited by the Court's Order dated June 20, 2011 to the issues of "group probable cause", and the City's alleged "no-summons" and "blanket fingerprinting" policies.  In addition, this fact is disputed because the citation provided does not support the fact as affirmatively as it is written.  (Esposito Depo. 76:2-3) ("I think we used it during WEF"); 724:20 ("I believe" there was a no summons policy for the 2/03 demonstration); 725:16 ("I'm not sure" if a no summons policy was adopted for the 4/03 demonstration).  Chief Esposito also explained that the reason a no summons rule was used during the World Economic Forum was for "[m]any of the same reasons" that policy was utilized during the RNC (Esposito Depo. at 726:11-16) and that intelligence always informs the decision to adopt a no summons policy.  (See Response to ¶ 29 *infra*).

14. Paragraph 14 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because this summary judgment motion is limited by the

Court's Order dated June 20, 2011 to the issues of "group probable cause", and the City's alleged "no-summons" and "blanket fingerprinting" policies.  In addition, this fact is disputed.  (Esposito Depo. 287:11 – 19; 723:14 – 724:3) (explaining no summons policy used at "large gatherings", "[the] New Year's Eve [event]", "concerts", "other types of demonstrations where its not just political", and labor strikes).

15. Paragraph 15 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because this summary judgment motion is limited by the Court's Order dated June 20, 2011 to the issues of "group probable cause", and the City's alleged "no-summons" and "blanket fingerprinting" policies.  In addition, this fact is disputed because the citation provided does not in any way whatsoever support the fact as it is written.  Chief Esposito's response to the question posed was simply that he did not "recall specifically." (*See also* Esposito Depo. 287:11 – 19; 723:14 – 724:3).  Moreover, this fact is disputed by clarifying testimony Chief Esposito gave.  Esposito Depo 722: 18-25, 723: 2-3, 14-25, 724:2-3. (explaining the no summons rule "is an option that is used at the New Year's Eve celebration," "at some concerts, big gatherings, not just demonstrations," but it is an option that is used at "large gatherings," "[c]oncerts in parks," and "other types of demonstrations, where it's not just political" such as labor strikes).

16. Paragraph of 16 the *Schiller* Opp. 56.1 if disputed.  First, the citations provided in no way support the fact as written.  Second, when read in a fair context, or in context with other testimony by Chief Esposito it is evident that Plaintiffs have mischaracterized the testimony on this issue.  (Esposito Depo. 174:5 – 176:5) (Esposito Depo. 389:2-24,

390:2-6) ("just their free-speech statement" alone would not justify their arrest, "of course not"); *see also* Defs' Reply 56.1 Statement at ¶¶ 165 – 173.

17. Paragraph of 17 the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because there is no evidence in the record that anyone was arrested subject to the Policies anywhere other than in Manhattan.  Defendants also dispute this fact as it is written because it seeks to render a single isolated statement as a material fact.  Defendants do not dispute that in the citation provided Chief Esposito testified that he "believe[d]" that "with regard to the RNC" the Policies applied in all five boroughs.  However, Chief Esposito explained that the "RNC-related [illegal] conduct" that subject someone to the Polices was based on the intelligence information, which was focused on the individuals coming to the RNC to engage in unlawful acts and was not geared at for example "a fellow who is, or a gal who is drinking a beer at Yankee Stadium."  (Esposito Depo 387:19-25, 388:2-14; *see also* Defs' Reply 56.1 Statement at ¶¶ 165 – 173.

18. Paragraph of 18 of the *Schiller* Opp. 56.1 is disputed.  Defs' Reply 56.1 Statement at ¶¶ 165 – 173.  Settled plaintiff Georgianna Page was arrested while she was blocking the entrance to a City business, the Hummer dealership in Manhattan.  Deposition of Joseph Dowling dated August 25, 2005 at p. 15:4-16, annexed to the 11/23/11 Dougherty Decl. as Ex. L; Deposition of Mason Wang dated October 24, 2008 at pp. 106:14 – 109:07, annexed to the 11/23/11 Dougherty Decl. as Ex. M.

19. Paragraph 19 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial. The enforcement efforts of the Quality of Life Team were not considered "directly related to the RNC." (Esposito Depo 1142:20-1143:2-18). That is because the "vast majority" of the "folks [subject to] these quality of life offenses, vendors, peddlers, things of that nature, would have been there whether the RNC was there or not." (Esposito Depo 1143:4-25, 1144:2). For example, "the pretzel vendor in front of Madison Square Garden was going to be there whether the RNC was there or not." (Esposito Depo 1143:19 – 1144:2). Indeed, "these were people that for the most part have been vending at those locations for years and years, known to many of the law enforcement officers that are out there." (Esposito Depo 1147:8-25, 1148:2-5). This is distinct from the individuals who were "[o]nly demonstrating, illegally engaged in unlawful activity, continued unlawful activity, because the RNC was in town." (Esposito Depo 1143:4-25, 1144:2). The reason the no-summons policy applied only to illegal conduct occurring at RNC-related events and not to quality-of-life offenses was based on "fair[ness]" and the intelligence that the NYPD through the course of the year leading up to the RNC. (Esposito Depo 1145:8-25, 1146:2-12). That is because the "intelligence [the NYPD] got was <u>not about the vendor that's been there for the last 20 years</u>. It was about the people that were coming to New York City for the purposes of … illegal activity to shut down and disrupt the City and the RNC … [i]t was not about the hot dog salesman on Eighth Avenue." Esposito Depo 1145:8-25, 1146:2-12. (emphasis added).

20. Paragraph 20 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because this summary judgment because the citation provided lacks salient details about the circumstances in which the "1,826" summonses

were issued such as whether they were issued to individuals who were exercising their First Amendment rights. Indeed, the record is wholly devoid of such evidence. In addition, this fact is immaterial for the reasons stated in Defendants' response to Paragraph 19 above. (Esposito Depo 1142:20-1148:5).

21. Paragraph 20 of the *Schiller* Opp. 56.1 is disputed. The cited testimony does not support the fact as it is written. (*See also* Esposito Depo 693:9-10, 705:25-706:2-9, 734:18-25, 735:2-4, 741:8-23, 776:12-13).

22. Paragraph 22 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.

23. Paragraph 20 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because this summary judgment. In addition, this fact is disputed. First, the citations provided do not support this fact. Second, the citation to retired Chief Devlin's deposition testimony is irrelevant and misplaced because he was not a final decision maker for purposes of the Policies and he retired in July 2004, before the RNC began. Deposition of Patrick Devlin ("Devlin Depo") at pp. 16:12-17:7, annexed to the 11/23/11 Dougherty Decl. as Ex. N (Devlin retired from the NYPD on July 31, 2004, about one month before the RNC); Devlin Depo. 615:4-20 (does not recall meetings regarding Policies); Devlin Depo. 734:3-7 (Devlin not a decision maker for purposed of Policies.); Devlin Depo. 1116:9-1117:10 (planning for the RNC "continued to evolve after [Devlin] retired" and Devlin does not know what the "final plan was"); *see also* Defs' Reply 56.1 at ¶¶ 149 – 160) (describing circumstances under which

Policies were adopted and noting Chief Esposito and Commissioner Kelly participated in the decision to adopt the Policies).  Third, the record clearly illustrates the blatant inaccuracy of this fact and also establishes that the cited May 4, 2004 Memorandum from the Criminal Justice Bureau (the "May 4th Memoranda") cannot credibly establish the timing of the adoption of the Policies.  When presented with the May 4th Memoranda Chief Esposito, an individual who participated in the decision to adopt the Policies, explained that he would "not at all agree" that the decision to adopt the Policies was made prior to May 4, 2004.  (Esposito Depo. 946:4-947:10).  Chief Esposito explained that the May 4th Memoranda "is a committee report on the subcommittee, and if you realize [or review] the first paragraph, it says "[t]he following items were <u>discussed</u>.  <u>It doesn't say they were decided upon</u>, it doesn't say it was determined.  They were discussed, these are items that were discussed at that meeting."  (Esposito Depo 947:11-21) (emphasis added).  "That's the way they decided to type it.  This report indicates to me that the items listed here [i.e. the no-summons policy] were discussed at that meeting."  (Esposito Depo 947:22-25, 949:4).  Fourth, Chief Esposito explained why some members of the NYPD may have had the inaccurate belief that the decision to adopt the Polices was made as early as Spring 2004, "[t]here are people in the process … that in May, in March and June [of 2004] felt that in their mind the was a no summons policy [and] [t]hat's what they're operating under."  (Esposito Depo 1031:4-16).

24. Paragraph 24 of the *Schiller* Opp. 56.1 is disputed insomuch as it suggests the Policies were adopted as a result of a single meeting.  Indeed, in the citation Plaintiffs provide, Chief Esposito explains "we had <u>meetings</u>, I was at them, the decision was made." (Esposito Depo. 874:11-12) (emphasis added).  Defendants do not dispute that Chief

Esposito and Commissioner Kelly attended meetings related to adopting the Policies. *See also* Defs' Reply 56.1 at ¶¶ 149 – 160.

25. Defendants do not dispute that Commissioner Cohen did not directly participate in making the decision to adopt the Policies. *See* Defs' Reply 56.1 at ¶ 156. The remaining facts in Paragraph 25 the *Schiller* Opp. 56.1 are not statements of material fact which would create a genuine issue for trial because this summary judgment. In addition, Defendants dispute these fact because Plaintiffs' citation, a statement by Mr. Dunn cannot establish them. Defendants also dispute this fact insomuch as it implies that Commissioner Cohen and the intelligence and information he provided had no impact on the decision to adopt the policies. *See* Defs' Reply 56.1 at ¶¶ 21-160, 173-226; Cohen Decl. ¶¶ 4 -24).

26. Paragraph 26 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because this summary judgment motion is limited by the Court's Order dated June 20, 2011 to the issues of "group probable cause", and the City's alleged "no-summons" and "blanket fingerprinting" policies.

27. Paragraph 27 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial. *See* Defs' Reply 56.1 at ¶¶ 149-16 (indicating, *inter alia* that final decision making meeting regarding the Policies took place in August 2004). Defendants also note that Plaintiffs' citation fails to conclusively establish the fact as written. (*See* Esposito Depo. at 1055:5-7) ("it's possible that we discussed [the Policies] during follow-up meetings, updated meetings during the convention").

28. Paragraph 28 of the *Schiller* Opp. 56.1 is disputed.  The citation provided, even in the limited format presented by Plaintiffs, makes it clear Chief Esposito was discussing the adoption of a no-summons policy at events pre-dating the RNC.  (Esposito Depo. at 726:11 – 727:19) (discussing World Economic Forum demonstrations and March 2003 anti-war march).

29. Paragraph 29 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition this fact is disputed.  The citation provided does not support the fact.  Chief Esposito explained that "Intelligence is always used to help [the NYPD]" decide whether to adopt a no summons policy for a given event.  (Esposito Depo 738:23-25, 739:2-10).   Chief Esposito also explained the general rationales for adopting a no summons policies.  (Esposito Depo 83:9-12, 84:11-18, 87:2-20. (continuous unlawful conduct); 83:9-12, 84:11-18, 91:7-18, 97:5-19 (attempts to shut down the City or a venue); 83:9-12, 84:11-18, 98:22-25, 99:2-9 (false identification and ensuring the best criminal prosecution); 83:9-12, 84:19-25, 85:2-3 (criminals and people with histories of violence).

30. Paragraph 30 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because Chief Esposito's inability to recall irrelevant "specifics" and immaterial details about RNC planning meetings during a deposition that took place nearly <u>two years</u> after the RNC has nothing to do with the issues in this litigation or the arguments presented in Defendants' brief.  During that same deposition,

Chief Esposito <u>did</u> clearly and succinctly recall and explain the <u>reasons</u> for adopting the Policies.  (Esposito Depo. at 182:13 – 184:20).

31. Paragraph 31 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because Chief Esposito's inability to recall irrelevant "specifics" and immaterial details about RNC planning meetings during a deposition that took place over <u>six and one half years</u> after the RNC has nothing to do with the issues in this litigation or the arguments presented in Defendants' brief.   During that same deposition, Chief Esposito <u>did</u> clearly and succinctly recall and explain the <u>reasons</u> for adopting the Policies.  (Esposito Depo. at 877:9 – 879:14, 898:20 – 900:23).

32. Paragraph 32 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because Chief Esposito's inability to recall irrelevant "specifics" and immaterial details about RNC planning meetings during a deposition that took place over <u>six and one half years</u> after the RNC has nothing to do with the issues in this litigation or the arguments presented in Defendants' brief.  The record as a whole clearly establishes the rationales for the NYPD's adoption of the Polices.  Defs' Reply 56.1 at ¶¶ 173.

33. Paragraph 33 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because Chief Esposito's inability to recall irrelevant "specifics" and immaterial details about RNC planning meetings during a deposition that took place over <u>six and one half years</u> after the RNC has nothing to do with the issues in this litigation or the arguments presented in Defendants' brief.  In addition, Defendants

dispute this fact insomuch as it suggests that the decision to adopt the policy was not the result of multiple meetings and discussions.  Defs' Reply 56.1 at ¶¶ 149 – 160.

34. Paragraph 34 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition, this fact is disputed.  The citation does not support the asserted fact and fails to consider the errata sheet.  (Defendants Errata Sheet for the February 11, 2011 Deposition of Joseph Esposito annexed to the 11/23/11 Dougherty Decl. as Ex. O; Defs' Reply 56.1 at ¶ 156.

35. Paragraph 35 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  *See also* Defs' Reply 56.1 at ¶ 156.

36. Paragraph 36 of the *Schiller* Opp. 56.1 is disputed.  The citation does not support the fact as it is written.  In addition, Paragraph 36 the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because Chief Esposito's inability to recall irrelevant "specifics" and immaterial details about RNC planning meetings during a deposition that took place over <u>six and one half years</u> after the RNC has nothing to do with the issues in this litigation or the arguments presented in Defendants' brief.  During that same deposition, Chief Esposito <u>did</u> clearly and succinctly recall and explain the <u>reasons</u> for adopting the Policies.  (Esposito Depo. at 877:9 – 879:14, 898:20 – 900:23).

37. Paragraph 37 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because Chief Esposito's inability to recall whether

Commissioner Cohen was present at RNC planning meetings during a deposition that took place nearly <u>seven years</u> after the RNC has nothing to do with the issues in this litigation or the arguments presented in Defendants' brief.  During that same deposition, Chief Esposito <u>did</u> clearly and succinctly recall and explain the <u>reasons</u> for adopting the Policies.  (Esposito Depo. at 957:9-15, 958:23 – 959:17, 967:23 – 974:5, 985:16 – 987:22).

38. Undisputed.  *See also* Defs' Reply 56.1 at ¶¶ 41-45.  Indeed, Commissioner Cohen explained that "Chief Esposito … was a principal consumer of both the [End User] reports  the information, the reports, and the briefings that [he] provided."  Cohen Depo. 468:6-15.

39. Paragraph 39 of the *Schiller* Opp. 56.1 is disputed.  The citation provided does not clearly support the fact as it is written because when viewed in a fair context and in connection with the record in its entirety it is clear that Plaintiffs mischaracterize Chief Esposito's testimony on this issue.  Esposito Depo. 1007:13-1008:6 (explaining how custodial arrest prevents continuous unlawful conduct); Defs' Reply 56.1 at ¶¶ 173-195.

40. Paragraph 40 of the *Schiller* Opp. 56.1 is disputed.  The citation provided does not clearly support the fact as it is written because when viewed in a fair context and in connection with the record in its entirety it is clear that Plaintiffs mischaracterize Chief Esposito's testimony on this issue.  Defs' Reply 56.1 at ¶¶ 133, 179-81, 187, 189-90, 192; Esposito Depo. at 1465:2 – 1467:11 ("if we would have given [a terrorist] that C summons with the fake ID, and him being from out of state, maybe we wouldn't have caught him or

her"); 1468:13-1469:9 ("we could have possibly made identification of someone who we know is, has been convicted, arrested, suspected of terrorism in the past, and because this person has committed a violation and was not issued a C summons, but now we have that person's fingerprints or proper identification, is it possible that we have now interrupted his plan for a terrorist attack?  Yeah, I think it is."); 1472:18 – 1474:2 ("It could be I'm Terrorist Jones who is not wanted but has done a terrorist act.  Now, Terrorist Jones comes to New York with his proper ID.  He commits a violation.  He produces identity. We give the C summons and he's on his way.  That's a person I would rather have had the chance to further talk to.").

41. Paragraph 41 of the *Schiller* Opp. 56.1 is disputed.  The citation provided does not clearly support the fact as it is written because when viewed in a fair context and in connection with the record in its entirety it is clear that Plaintiffs mischaracterize Chief Esposito's testimony on this issue.  Defs' Reply 56.1 at ¶¶ 133, 135, 173; Esposito Depo. at 1465:2 – 1467:11; 1468:13-1469:9; 1472:18 – 1474:2.

42. Paragraph 42 of the *Schiller* Opp. 56.1 is disputed.  First, the citations provided do not support the fact as written and instead indicate that during several moments of Chief Esposito's <u>nine day deposition</u>, when not physically presented with the End User Reports, he could not recall the precise reports he may have reviewed.  In addition, when viewed in a fair context and in connection with the record in its entirety it is clear that Plaintiffs mischaracterize Chief Esposito's testimony on this issue.  Defs' Reply 56.1 at ¶¶ 41-45; Cohen Decl. at ¶¶ 10-13; *see also* Defendants' Response to *Schiller* Opp. 56.1 at ¶ 47, *infra*.

43. Undisputed.

44. Paragraph 44 of the *Schiller* Opp. 56.1 is disputed.  The citation provided, especially in the limited form provided by Plaintiffs, is **intensely** misleading and neither supports the fact as written nor the implication that this "understanding" applied to the End User Reports.  (Esposito Depo. at 783:21 – 788:11) (discussing a paragraph containing the phrase "open source information" in Esposito Ex. 15, the "2004 Republican National Convention – New York City Police Department Executive Summary," – **not** the End User Reports).

45. Paragraph 45 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  Defendants dispute the implication in this fact that the intelligence information relied upon in adoption of the Polices was based upon "inaccurate" web sites.  Indeed, Plaintiffs' chosen citation indicates that Chief Esposito understood the End User Reports were based on "various sources, [o]pen web sites, [and] meetings").  *See also* Defs' Reply 56.1 at ¶¶ 41-45; Cohen Decl. at ¶¶ 10-13.

46. It is undisputed that the End User Reports played a role in the adoption of the Policies and that the cited End User Reports were among those considered in adopting the Polices.  Defendants dispute the remaining facts in Paragraph 46 of the *Schiller* Opp. 56.1.  Chief Esposito repeatedly explained that neither the End User Reports alone nor "one particular document" provided an entire or conclusive basis for adopting the Policies. (Esposito Depo 1543:12 – 1546:7; Defs' Reply 56.1 at ¶¶ 173-226.  In addition, Chief Esposito

identified numerous, specific, End User Reports which bore upon the decision to adopt the Policies and related to the following specific as: (1) (**threat of terrorism during the RNC**) Esposito Depo. 1221:13-1225:16, End User Report, Bates No. 102549; Esposito Depo. 1237:16-1242:22, End User Reports, Bates Nos. 102584-102585; Esposito Depo. 1255:17-1258:16, End User Report, Bates No. 102589; Esposito Depo. 1244:16-1255:13, End User Reports, Bates Nos. 102592-102595; Esposito Depo. 1255:14-1258:16, End User Report, Bates No. 102598; Esposito Depo. 1385:23-1389:13, End User Reports, Bates Nos. 102785-102786; (**2**) (**threat of continuous unlawful activity during the RNC**) Esposito Depo. 1526:20-1529:24, End User Reports, Bates Nos. 102515-102516; Esposito Depo. 1221:13-1225:16, End User Report, Bates No. 102549; Esposito Depo. 1225:17-1234:20, End User Reports, Bates Nos. 102564-102566; Esposito Depo. 1237:16-1242:3, End User Reports, Bates Nos. 102584-102585; Esposito Depo.1244:16-1255:13, End User Reports, Bates Nos. 102592-102596; Esposito Depo. 1255:14-1258:16, End User Report, Bates No. 102598; Esposito Depo. 1258:17-1260:13, End User Report, Bates No. 102605; Esposito Depo. 1262:13-1270:14, End User Reports, Bates Nos. 102614-102615; Esposito Depo.1270:15-1273:6, End User Reports, Bates Nos. 102617-102618; Esposito Depo. 1274:2-1276:15, End User Report, Bates No. 102621; Esposito Depo. 1276:16-1284:2, End User Reports, Bates Nos. 102626-102627; Esposito Depo. 1285:7-1286:10, End User Report, Bates No. 102629; Esposito Depo. 1286:11-1289:25, End User Report, Bates No. 102632; Esposito Depo. 1290:2-1292:6, End User Report, Bates No. 102636; Esposito Depo. 1293:4-1294:15, End User Report, Bates No. 102644; Esposito Depo. 1296:17-1305:5, End User Reports, Bates Nos.102652-102653; Esposito Depo. 1305:6-1307:17, End User Report, Bates No. 102655; Esposito Depo. 1310:7-1318:20, End User Reports, Bates Nos. 102662-102663;

Esposito Depo. 1319:19-1321:13, End User Report, Bates No. 102668; Esposito Depo. 1321:19-1327:4, End User Reports, Bates Nos. 102676-102677; Esposito Depo. 1333:23-1335:5, End User Report, Bates No. 102690; Esposito Depo. 1336:7-1337:24, End User Report, Bates No. 102693; Esposito Depo. 1341:19-1343:17, End User Report, Bates No. 102699; Esposito Depo. 1346:14-1351:10, End User Reports, Bates Nos. 102705-102707; Esposito Depo. 1355:23-1360:18, End User Reports, Bates Nos. 102719-102721; Esposito Depo. 1362:13-1363:20, End User Report, Bates No. 102725; Esposito Depo. 1363:21-1365:13, End User Report, Bates No. 102732; Esposito Depo. 1367:16-1369:21, End User Reports, Bates Nos. 102742; Esposito Depo. 1370:5-1373:10, End User Report, Bates No. 102761; Esposito Depo. 1376:8-1377:9, End User Report, Bates No. 102763; Esposito Depo. 1377:10-1381:2, End User Report, Bates No. 102765; Esposito Depo. 1382:15-1383:23, End User Report, Bates No. 102780; Esposito Depo. 1389:25-1391:8, End User Report, Bates No. 102792; **(3) (<u>shutting down the RNC</u>)** Esposito Depo. 1529:6-1529:19, End User Reports, Bates No. 102516; Esposito Depo. 1217:11-1221:12, End User Report, Bates No. 102536; Esposito Depo. 1221:13-1225:16, End User Report, Bates No. 102549; Esposito Depo. 1225:17-1228:4, End User Reports, Bates Nos. 102564; Esposito Depo. 1230:14-1231:10, End User Report, Bates No. 102566; Esposito Depo. 1237:16-1242:3, End User Reports, Bates Nos. 102584-102585; Esposito Depo. 1243:13-1244:15, End User Report, Bates No. 102589; Esposito Depo. 1244:16-1255:13, End User Reports, Bates Nos. 102592-102596; Esposito Depo. 1255:14-1258:16, End User Report, Bates No. 102598; Esposito Depo. 1258:17-1260:13, End User Report, Bates No. 102605; Esposito Depo. 1262:13-1270:14, End User Reports, Bates Nos. 102614-102615; Esposito Depo. 1270:15-1273:6, End User Reports, Bates Nos. 102617-102618; Esposito Depo. 1274:2-1276:15, End User Report, Bates No.

102621; Esposito Depo. 1276:16-1284:2, End User Reports, Bates Nos. 102626-102627; Esposito Depo. 1285:7-1286:10, End User Report, Bates No. 102629; Esposito Depo. 1286:11-1289:25, End User Report, Bates No. 102632; Esposito Depo. 1290:2-1292:6, End User Report, Bates No. 102636; Esposito Depo. 1293:4-1294:15, End User Report, Bates No. 102644; Esposito Depo. 1296:17-1305:5, End User Reports, Bates Nos.102652-102653; Esposito Depo. 1305:6-1307:17, End User Report, Bates No. 102655; Esposito Depo. 1310:7-1317:15, End User Reports, Bates Nos. 102662-102663; Esposito Depo. 1325:7-1327:4, End User Report, Bates No. 102677; Esposito Depo. 1328:15-1332:21, End User Report, Bates No. 102684; Esposito Depo. 1333:23-1335:5, End User Report, Bates No. 102690; Esposito Depo. 1336:7-1337:24, End User Report, Bates No. 102693; Esposito Depo. 1341:19-1343:17, End User Report, Bates No. 102699; Esposito Depo. 1346:14-1351:10, End User Reports, Bates Nos. 102705-102707; Esposito Depo. 1355:23-1361:16, End User Reports, Bates Nos. 102719-102721; Esposito Depo. 1362:13-1363:20, End User Report, Bates No. 102725; Esposito Depo. 1363:21-1365:13, End User Report, Bates No. 102732; Esposito Depo. 1370:5-1373:10, End User Report, Bates No. 102761; Esposito Depo. 1376:8-1377:9, End User Report, Bates No. 102763; Esposito Depo. 1377:10-1381:2, End User Report, Bates No. 102765; Esposito Depo. 1382:15-1383:23, End User Report, Bates No. 102780; Esposito Depo. 1385:23-1389:13, End User Reports, Bates Nos. 102785-102786; Esposito Depo. 1389:25-1391:8, End User Report, Bates No. 102792; **(4) (<u>shutting down New York City</u>);** Esposito Depo. 1529:6-1529:19, End User Reports, Bates No. 102516; Esposito Depo. 1217:11-1221:12, End User Report, Bates No. 102536; Esposito Depo. 1221:13-1225:16, End User Report, Bates No. 102549; Esposito Depo. 1225:17-1228:4, End User Reports, Bates Nos. 102564; Esposito Depo. 1230:14-1231:10, End User Report, Bates

No. 102566; Esposito Depo. 1237:16-1242:3, End User Reports, Bates Nos. 102584-102585; Esposito Depo. 1243:13-1244:15, End User Report, Bates No. 102589; Esposito Depo. 1244:16-1255:13, End User Reports, Bates Nos. 102592-102596; Esposito Depo. 1255:14-1258:16, End User Report, Bates No. 102598; Esposito Depo. 1258:17-1260:13, End User Report, Bates No. 102605; Esposito Depo. 1262:13-1270:14, End User Reports, Bates Nos. 102614-102615; Esposito Depo. 1270:15-1273:6, End User Reports, Bates Nos. 102617-102618; Esposito Depo. 1274:2-1276:15, End User Report, Bates No. 102621; Esposito Depo. 1277:24-1284:2, End User Report, Bates No. 102627; Esposito Depo. 1285:7-1286:10, End User Report, Bates No. 102629; Esposito Depo. 1286:11-1289:25, End User Report, Bates No. 102632; Esposito Depo. 1290:2-1292:6, End User Report, Bates No. 102636; Esposito Depo. 1296:17-1305:5, End User Reports, Bates Nos.102652-102653; Esposito Depo. 1305:6-1307:17, End User Report, Bates No. 102655; Esposito Depo. 1310:7-1317:15, End User Reports, Bates Nos. 102662-102663; Esposito Depo. 1328:15-1332:21, End User Report, Bates No. 102684; Esposito Depo. 1333:23-1335:5, End User Report, Bates No. 102690; Esposito Depo. 1336:7-1337:24, End User Report, Bates No. 102693; Esposito Depo. 1346:14-1351:10, End User Reports, Bates Nos. 102705-102707; Esposito Depo. 1363:21-1365:13, End User Report, Bates No. 102732; Esposito Depo. 1367:16-1369:21, End User Report, Bates No. 102742; Esposito Depo. 1376:8-1377:9, End User Report, Bates No. 102763; Esposito Depo. 1385:23-1387:10, End User Report, Bates No. 102785; Esposito Depo. 1389:25-1391:8, End User Report, Bates No. 102792) **(5) (obtaining best criminal prosecutions)** Chief Esposito identified several End User Reports which indicate the NYPD was concerned with ensuring the best criminal prosecutions possible during the RNC.  See Esposito Depo. 1225:17-1234:20, End User Reports, Bates Nos. 102564-102566;

Esposito Depo. 1243:13-1244:15, End User Report, Bates No. 102589; Esposito Depo. 1252:12-1253:7, End User Report, Bates No. 102595; Esposito Depo. 1270:15-1273:6, End User Reports, Bates Nos. 102617-102618; Esposito Depo. 1310:7-1315:8, End User Report, Bates No. 102662; Esposito Depo. 1323:19-1324:18, End User Report, Bates No. 102676; Esposito Depo. 1333:23-1335:5, End User Report, Bates No. 102690; Esposito Depo. 1355:23-1356:23, End User Report, Bates No. 102719; Esposito Depo. 1359:20-1360:18, End User Report, Bates No. 102721); *see also* Defendants Reply 56.1 at ¶ 124 (regarding End-User Reports indicating **threats regarding identification**).

47. Paragraph 47 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because the record establishes that the decision to adopt the Polices was <u>not</u> made <u>before</u> April 27, 2004.  Defs' Reply 56.1 at ¶¶ 149 – 160; *see also* Defendants response to *Schiller* Opp. 56.1 at ¶ 23, 46 *supra*.

48. Paragraph 48 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because the record establishes that the decision to adopt the Polices was <u>not</u> made <u>before</u> April 27, 2004.  Defs' Reply 56.1 at ¶¶ 149 – 160; *see also* Defendants response to *Schiller* Opp. 56.1 at ¶ 23, 46 *supra*.

49. Paragraph 49 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because the record establishes that the decision to adopt the Polices was <u>not</u> made <u>before</u> April 27, 2004.  Defs' Reply 56.1 at ¶¶ 149 – 160; *see also* Defendants response to *Schiller* Opp. 56.1 at ¶ 23, 46 *supra*.

50. It is undisputed that Chief Esposito identified certain End User Reports during his deposition which bore upon the decision to adopt the Policies and that he interpreted some of them as raising concerns about false identification. Defendants dispute the implication that the intelligence regarding "false identification" was limited to the End User Reports generally or the those in Plaintiffs' citation. Esposito Depo 1543:12 – 1546:7; Defs' Reply 56.1 at ¶¶ 124 – 135, 200-226; *see also* Defendants response to *Schiller* Opp. 56.1 at ¶ 23, 46 *supra.*

51. Paragraph 51 of the *Schiller* Opp. 56.1 is disputed. The citation provided does not clearly support the fact as it is written because when viewed in a fair context and in connection with the record in its entirety it is clear that Plaintiffs mischaracterize Chief Esposito's testimony on this issue. Defs' Reply 56.1 at ¶¶ 124 – 135, 200-226; *see also* Defendants response to *Schiller* Opp. 56.1 at ¶ 23, 46 *supra.*

52. Paragraph 52 of the *Schiller* Opp. 56.1 is disputed. The citation provided does not clearly support the fact as it is written because when viewed in a fair context and in connection with the record in its entirety it is clear that Plaintiffs mischaracterize Chief Esposito's testimony on this issue. Defs' Reply 56.1 at ¶¶ 133, 135, 173; Esposito Depo. at 1465:2 – 1467:11; 1468:13-1469:9; 1472:18 – 1474:2; *see also* Defendants response to *Schiller* Opp. 56.1 at ¶ 23, 46 *supra.*

53. Paragraph 53 of the *Schiller* Opp. 56.1 is disputed. The citation provided does not clearly support the fact as it is written because when viewed in a fair context and in connection with the record in its entirety it is clear that Plaintiffs mischaracterize Chief Esposito's

testimony on this issue. Defs' Reply 56.1 at ¶¶ 133, 135, 173; Esposito Depo. at 1465:2 – 1467:11; 1468:13-1469:9; 1472:18 – 1474:2; *see also* Defendants response to *Schiller* Opp. 56.1 at ¶ 23, 46 *supra*.

54. Paragraph 54 of the *Schiller* Opp. 56.1 is disputed. The citation provided does not clearly support the fact as it is written because when viewed in a fair context and in connection with the record in its entirety it is clear that Plaintiffs mischaracterize Chief Esposito's testimony on this issue. Defs' Reply 56.1 at ¶¶ 124-125, 133-35, 203, 210-11; Esposito Depo. at 1465:2 – 1467:11; 1468:13-1469:9; 1472:18 – 1474:2; *see also* Defendants response to *Schiller* Opp. 56.1 at ¶ 23, 46 *supra*.

55. Paragraph 55 of the *Schiller* Opp. 56.1 is disputed. The citation provided does not clearly support the fact as it is written because when viewed in a fair context and in connection with the record in its entirety it is clear that Plaintiffs mischaracterize Chief Esposito's testimony on this issue. Defs' Reply 56.1 at ¶¶ 101-120, 175-195; *see also* Defendants response to *Schiller* Opp. 56.1 at ¶ 23, 46 *supra*.

56. Paragraph 56 of the *Schiller* Opp. 56.1 is disputed. The citation provided does not clearly support the fact as it is written because when viewed in a fair context and in connection with the record in its entirety it is clear that Plaintiffs mischaracterize Chief Esposito's testimony on this issue. Defs' Reply 56.1 at ¶¶ 210-211, 215-220, 224; *see also* Defendants response to *Schiller* Opp. 56.1 at ¶ 23, 46 *supra*.

57. It is undisputed that the End User Reports bearing Bates Nos. 102589, 102617 and 102618 identify Daniel Andreas, Lisa Fithian and Jaggi Singh, who are "known terrorists or known persons suspected of violent criminal histories." *See also* Defendants response to *Schiller* Opp. 56.1 at ¶ 23, 46 *supra*).

58. It is undisputed that Commissioner Cohen testified that he "think[s]" the only documents he provided to the RNC Executive Committee were the End User Reports and his PowerPoint presentation. (Cohen Depo. at 276:5-11). It is also undisputed that Commissioner Cohen made a PowerPoint presentation to ranking members of the NYPD, including Commissioner Kelly and Chief Esposito in or about August 2004. (Cohen Decl. at ¶¶ 16 – 19).

59. Paragraph 59 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.

60. Paragraph 60 of the *Schiller* Opp. 56.1 is disputed. The cited excerpt of Chief Esposito's testimony is about "process[ing]" of "people who were [already] arrested" and fails to supports the fact as it is written. *See also* Defs' Reply 56.1 at ¶¶ 17, 146-48.

61. Paragraph 61 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial. *See also* Defs' Reply 56.1 at ¶¶ 17, 146-48.

62. Paragraph 62 of the *Schiller* Opp. 56.1 is disputed. The citation provided does not clearly support the fact as it is written because when viewed in a fair context and in connection

with the record in its entirety it is clear that Plaintiffs mischaracterize Chief Esposito's testimony on this issue. (Defs' Reply 56.1 at ¶¶ 46-51, 60-61, 80-95, 173). In addition, Plaintiffs citation to Chief Esposito's deposition, when provided in a fair context in no way suggests that the intelligence revealing a threat of anarchist violence during the RNC did not inform the decision to adopt the Policies. (*See* Esposito Depo. 365:2 – 369:20) (discussing intelligence that violent criminals were coming to the City during the RNC to engage in civil disobedience indicating Chief Esposito "did not know how to define them" yet noting a concern about "criminal activity"). Indeed, Chief Esposito also identified specific End-User Reports as well as intelligence he received regarding "anarchist groups" and "anarchist" tactics which he explained <u>did</u> inform the decision to adopt the Polices. (Esposito Depo. 1225:17 – 1229:23; End User Reports Bearing Bates No. 102564-67); Esposito Depo 1257:22 – 1258:16; End User Reports Bearing Bates Nos. 102598; Esposito Depo 1305:6 – 1308:15, End User Reports Bearing Bates No. 102655); Esposito Depo. 1595:15 – 1602:20 (End-User Reports Bearing Bates No. 102565-66; Esposito Depo. 1847:14 – 1848:11; End User Reports Bearing Bates No. 102596; Esposito Depo 1850:7-18).

63. Paragraph 63 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.

64. Paragraph 64 of the *Schiller* Opp. 56.1 is disputed. The citation provided does not clearly support the fact as it is written because when viewed in a fair context and in connection with the record in its entirety it is clear that Plaintiffs mischaracterize Chief Esposito's testimony on this issue. (Defs' Reply 56.1 at ¶¶ 124-135, 173, 200-214).

65. Paragraph 65 of the *Schiller* Opp. 56.1 is disputed.  The citation provided does not support the fact as it is written and when viewed in a fair context and in connection with the record in its entirety it is clear that Plaintiffs mischaracterize Chief Esposito's testimony on this issue.  (Defs' Reply 56.1 at ¶¶ 14, 20, 46-79, 133, 135, 173, 187-92; Esposito Depo. at 1465:2 – 1467:11; 1468:13-1469:9; 1472:18 – 1474:2).

66. Paragraph 66 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition, this fact is disputed.  The citation does not support the fact as it is written.  (Esposito Depo. 743:19-20) ("You can't give a C-Summons for a misdemeanor <u>generally</u> <u>speaking</u>") (emphasis added); 954:22 – 956:6) (Chief Esposito testifies that the Patrol Guide "<u>appears</u> to indicate" misdemeanors under the Penal Law were not summons eligible).

67. Paragraph 67 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition, this fact is disputed because the citation merely indicates Chief Esposito <u>did not recall</u> a discussion about limiting the Policies to who were believed to possess false identification.

68. Paragraph 68 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  (*See* Defs' Reply 56.1 at ¶¶ 165-172).

69. Paragraph 69 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  Chief Esposito explained why the option of removing

arrestees from a given arrest location was "problematic." (Esposito Depo 1028:2-12, 1802:15-25, 1803:2-8. (failed to address concern regarding false identification and out of state identification); 1802:15-25, 1803:2-8, 24, 1804:2-25, 1805:2-3 (issuing large number of summonses would create strain on police manpower and resources)).  Chief Esposito further explained that "[i]n an arrest situation, it was distinctly possible to lodge the prisoners and have the officer go back to the location" "and do police work again." (Esposito Depo 1802:15-25, 1803:2-8, 24, 1804:2-25, 1805:2-3).

70. Paragraph 70 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.

71. Paragraph 71 of the *Schiller* Opp. 56.1 is disputed.  The citation provided fails to conclusively establishes this fact.  (Defs' Reply 56.1 at ¶¶ 14, 20, 46-79, 133, 135, 173, 187-92).  Defendants do not dispute the cited document contains the language asserted in Paragraph 71 of the *Schiller* Opp. 56.1.

72. Paragraph 72 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition this fact is disputed because the citation merely indicates Chief Esposito <u>did not recall</u> an instance of a summons being issued to someone arrested in connection with the Convention and that "there may have been."

73. Paragraph 73 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.

74. Paragraph 74 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition this fact is disputed.  First, the citation provided in no way supports this fact because when Chief Esposito was asked during his nine day deposition whether people subject to the Polices turned out to be a known or suspected terrorist he responded "I'm not sure" (Esposito Depo. 998:23) and "As I sit here now, I don't have that information." (Esposito Depo. 1971:25-1972:2).  ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████  annexed to the 11/23/11 Dougherty Decl. as Ex. P; *see also* End User Reports, Bates Nos. 102617-18 ("Fithian was instrumental in the training and planning and activity that were involved in shutting down the WTO in Seattle.") (noting both Fithian and Miriam adhere to "direct action" which "<u>incorporates a physical resistance</u> that often results in conflict with the police."). (emphasis in the original).

75. Paragraph 75 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition this fact is disputed.  The citation provided in no way supports this fact because when Chief Esposito was asked during his nine day deposition whether people subject to the Polices turned out to have false identification he responded  "I don't recall right now." (Esposito Depo. 1972:5).

76. Paragraph 76 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition this fact is disputed.  First, the citation

provided in no way supports this fact because when Chief Esposito was asked during his nine day deposition whether people subject to the Polices turned out to have a violent criminal history he responded "I don't recall for sure" (Esposito Depo. 1972:16).

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████ (11/23/11 Dougherty Decl. as Ex. P); *see also* End User Reports, Bates Nos. 102617-18 ("Fithian was instrumental in the training and planning and activity that were involved in shutting down the WTO in Seattle.") (noting both Fithian and Miriam adhere to "direct action" which "<u>incorporates a physical resistance</u> that often results in conflict with the police."). (emphasis in the original).

77. Paragraph 77 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial. In addition this fact is disputed. First, the citation provided in no way supports this fact because when Chief Esposito was asked during his nine day deposition whether people subject to the Polices committed unlawful acts related to the RNC after being released he responded "I never checked for that. I'd have to go back and check." (Esposito Depo. 1973:18-19). The other citation provided by Plaintiffs is not even necessarily about the RNC and therefore is both misleading and irrelevant. (Esposito Depo. 728:25 -731:11) (discussing recollections generally and also noting Chief Esposito "ha[s] a specific memory" of persons issued summonses who returned to engage in same criminal behavior). Second, at least twenty-five RNC arrestees were subject to the Policies on two separate occasions because they were

arrested twice during the RNC for engaging in RNC related unlawful conduct. *See* Chart and Records of RNC Arrestees arrested twice, annexed to 11/23/11 Dougherty Decl. as Ex. R (this exhibit has been redacted in the public filing).

78. Paragraph 78 of the *Schiller* Opp. 56.1 is disputed because it mischaracterizes the Fingerprinting Policy. *See* Defs' Reply 56.1 at ¶¶ 1-226.

79. Paragraph 79 of the *Schiller* Opp. 56.1 is disputed. The citation provided does not clearly support the fact as it is written because when viewed in a fair context and in connection with the record in its entirety it is clear that Plaintiffs mischaracterize Chief Esposito's testimony on this issue. (Esposito Depo. 112:2-25; Defs' Reply 56.1 at ¶¶ 161-64).

80. Paragraph 80 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.

81. Paragraph 81 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial. Defendants do not dispute that the fingerprint records for all individuals arrested in Manhattan during the time period of the RNC, August 25, 2004 to September 4, 2004, for whom a violation was the top charge were deleted from the NYPD's Automated Fingerprint System and the NYPD Archival System on October 25, 2004. (Defs' Reply 56.1 at ¶ 164).

82. Paragraph 82 of the *Schiller* Opp. 56.1 is disputed. The cited testimony does not support this fact. (*But see* Defs' Reply 56.1 at ¶¶ 151-53).

83. Paragraph 83 of the *Schiller* Opp. 56.1 is disputed.  First, the cited testimony does not support this fact and instead provides some basis to dispute it.  (Esposito Depo. 1063:3) ("I don't recall right now"); Esposito Depo: 163:11-14 ("I believe I could talk to other people in the department who may have a better memory than me, who may have information about it."); Esposito Depo. 1062:21-23) (discussing intelligence supporting custodial arrests at Church and Fulton Streets, "…what I've [already] articulated in the past about continual illegal activity and false identification.")  Second, when viewed in a fair context and in connection with the record in its entirety it is clear that Plaintiffs mischaracterize Chief Esposito's testimony on this issue.  (Esposito Depo. 192:18-195:13) (explaining all of the concerns the NYPD had and relied upon in adopting the Policies were present at the RNC-related demonstrations); Defs' Reply 56.1 at ¶¶ 84-226).

84. Paragraph 84 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition, this fact is disputed.  First, the cited testimony does not support this fact and instead provides some basis to dispute it. (Esposito Depo. 1066:23-24) ("I don't recall right now.  I may have back then, but right now I can't recall."); Esposito Depo. 1066:6-10 "It was always our concern during [the] RNC about continued illegal activity, about groups trying to shut down the City, sections of the City, the RNC, parts of the RNC.").  Second, when viewed in a fair context and in connection with the record in its entirety it is clear that Plaintiffs mischaracterize Chief Esposito's testimony on this issue.  (Esposito Depo. 192:18-195:13) (explaining all of the concerns the NYPD had and relied upon in adopting the Policies were present at the

RNC-related demonstrations); Esposito Depo. 1066:6 – 1068:9; Defs. 56.1 at ¶¶ 101-145); *see also* Defendants' 56.1 Statement of Undisputed Material Facts in Support of their Motion for Summary Judgment to Dismiss Plaintiffs False Arrest Claims at Church & Fulton Streets at ¶¶ 5-15, 22-25; *see also* Defs' Reply 56.1¶¶ 1-226.

85. Paragraph 85 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition this fact is disputed because the cited testimony does not support this fact and instead provides some basis to dispute it.

86. Paragraph 86 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition, this fact is disputed.  *See* Defendants Response to *Schiller* Opp. 56.1 Paragraph 84 *supra*.

87. Paragraph 87 of the Schiller Opp. 56.1 contains statements that are not statements of material fact that would create a genuine issue for trial because this summary judgment motion is limited by the Court's Order dated June 20, 2011 to the issues of "group probable cause," and the City's alleged "no-summons" and "blanket fingerprinting" policies.

88. Paragraph 88 of the Schiller Opp. 56.1 is undisputed.

89. Paragraph 89 of the Schiller Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial, because intelligence information revealed that people expected to engage in unlawful activity during the RNC would use fraudulently obtained

identification or authentic looking or real looking false identification and it was not difficult to obtain false identification or fraudulent identification at the time of the 2004 RNC. Defendants' Local Civil Rule 56.1 Counterstatement in Response to Plaintiffs' Local Civil Rule 56.1 Statement, at *Schiller v. City of N.Y.*, 04-cv-7922, DE # 598 at ¶¶ 16, which sets for the facts and evidence relied upon by defendants to controvert these statements.) Further, it is disputed that at no point did anyone suggest Schiller's identification was not accurate. (*Id*.) The evidence cited to support the contention that Schiller "was not sought by law enforcement officials for the commission of any offense," is insufficient to establish this fact. (*Id*.)

90. Paragraph 90 of the Schiller Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.

91. Paragraph 91 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial. In addition, this fact is disputed. *See* Defendants Response to *Schiller* Opp. 56.1 Paragraph 84 *supra*.

92. Paragraph 92 of the Schiller Opp. 56.1 is undisputed. In addition, Robert Curley accepted an adjournment in contemplation of dismissal (ACD) at arraignment. (*Schiller v. City of N.Y.*, 04-cv-7922, DE # 598 at ¶ 40).

93. Paragraph 93 of the Schiller Opp. 56.1 is undisputed.

94. Paragraph 94 of the Schiller Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial, because intelligence information revealed that people expected to engage in unlawful activity during the RNC would use fraudulently obtained identification or authentic looking or real looking false identification and it was not difficult to obtain false identification or fraudulent identification at the time of the 2004 RNC.  (*Schiller v. City of N.Y.*, 04-cv-7922, DE # 598 at ¶ 37). It is disputed that at no point did anyone suggest that Robert Curley's identification was not accurate.  (*Id.*) The evidence cited to support the contention that Robert Curley "was not sought by law enforcement officials for the commission of any offense," is insufficient to establish this fact.  (*Id.*).  In addition, Robert Curley's arresting officer was not able to verify his identification.  *(Id)*.

95. Paragraph 95 of the Schiller Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.

96. Paragraph 96 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition, this fact is disputed.  *See* Defendants Response to *Schiller* Opp. 56.1 Paragraph 84 *supra*.

97. Paragraph 97 of the Schiller Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.   In addition, Neal Curley accepted an ACD at arraignment.  (*Schiller v. City of N.Y.*, 04-cv-7922, DE # 598 at ¶ 41).

98. Paragraph 98 of the Schiller Opp. 56.1 is undisputed.

99. Paragraph 99 of the Schiller Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial, because intelligence information revealed that people expected to engage in unlawful activity during the RNC would use fraudulently obtained identification or authentic looking or real looking false identification and it was not difficult to obtain false identification or fraudulent identification at the time of the 2004 RNC.  (*Schiller v. City of N.Y.*, 04-cv-7922, DE # 598 at ¶ 39). It is disputed that at no point did anyone suggest that Neal Curley's identification was not accurate.  (*Id.*).  The evidence cited to support the contention that Neal Curley "was not sought by law enforcement officials for the commission of any offense," is insufficient to establish this fact.  (*Id.*).  In addition, Neal Curley's arresting officer was not able to verify his identification. (*Id.*).

100.    Paragraph 100 of the Schiller Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.

101.    Paragraph 101 of the *Schiller* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition, this fact is disputed.  *See* Defendants Response to *Schiller* Opp. 56.1 Paragraph 84 *supra*.

102.    Paragraph 102 of the Schiller Opp. 56. is not a statement of material fact that would create a genuine issue for trial because this summary judgment motion is limited by the Court's Order dated June 20, 2011 to the issues of "group probable cause," and the City's alleged "no-summons" and "blanket fingerprinting" policies.

103.     Paragraph 103 of the Schiller Opp. 56.1 is undisputed.

104.     Paragraph 104 of the Schiller Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial, because intelligence information revealed that people expected to engage in unlawful activity during the RNC would use fraudulently obtained identification or authentic looking or real looking false identification and it was not difficult to obtain false identification or fraudulent identification at the time of the 2004 RNC.  (*Schiller v. City of N.Y.*, 04-cv-7922, DE # 598 at ¶ 57). It is disputed that at no point did anyone suggest that Ms. Fiorentini's identification was not accurate.  (*Id.*). The evidence cited to support the contention that Ms. Fiorentini "was not sought by law enforcement officials for the commission of any offense," is insufficient to establish this fact.  (*Id.*).   In addition Ms. Fiorentini's arresting officer did not know whether her California drivers license was valid and was unable to verify her California address. (*Id.*).

105.     Paragraph 105 of the Schiller Opp. 56.1 is undisputed.

106.     Paragraph 106 of the Schiller Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition this fact is disputed because Plaintiffs Dinler and Maurer did not go to Pier 57.

107.     Paragraph 107 of the *Schiller* Opp. 56.1 is disputed.  First, the cited testimony does not support this fact and instead provides some basis to dispute it. (Esposito Depo.

1067:23-1068:9) ("Other than the information from our intelligence division about what they had learned prior to the convention about fake IDs, continuous ongoing criminal activity, attempts to shut down the RNC, attempts to shut down parts of the city, anything specific about that group or people in that group?  I can't recall right now.  There may have been some of the people that were mentioned in that group, but I can't recall right now.  And the same is true for Fulton Street, I just can't recall.:).  Second, when viewed in a fair context and in connection with the record in its entirety it is clear that Plaintiffs mischaracterize Chief Esposito's testimony on this issue.  (Esposito Depo. 192:18-195:13; Defs. 56.1 at ¶¶ 101-145). *see also* Defendants Statement of Undisputed Facts in Support of their Motion for Summary Judgment to Dismiss the False Arrest Claims of Plaintiffs Arrested on East 16[th] Street at ¶¶ 5-12; *see also* Defs' Reply 56.1¶¶ 1-226.

108.      Paragraph 108 of the Schiller Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition, this fact is disputed. *See* Defendants Response to *Schiller* Opp. 56.1 Paragraph 107 *supra*.

109.      Paragraph 109 of the Schiller Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition, this fact is disputed. *See* Defendants Response to *Schiller* Opp. 56.1 Paragraph 107 *supra*.

110.      Paragraph 110 of the Schiller Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because this summary judgment motion is limited

by the Court's Order dated June 20, 2011 to the issues of "group probable cause," and the City's alleged "no-summons" and "blanket fingerprinting" policies.

111.     Paragraph 111 of the Schiller Opp. 56.1 is undisputed.

112.     Paragraph 112 of the Schiller Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.

113.     Paragraph 113 of the Schiller Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition, this fact is disputed. *See* Defendants Response to *Schiller* Opp. 56.1 Paragraph 107 *supra*.

114.     Paragraph 114 of the Schiller Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial because this summary judgment motion is limited by the Court's Order dated June 20, 2011 to the issues of "group probable cause," and the City's alleged "no-summons" and "blanket fingerprinting" policies.

115.     Paragraph 115 of the Schiller Opp. 56.1 is undisputed.

116.     Paragraph 116 of the Schiller Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.

117.     Paragraph 117 of the Schiller Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial. In addition, it is disputed that no police officer ever

asked to examine Ms. Waters' identification and it is disputed that no officer expressed any doubts about Ms. Waters' identity.  (Defendants' 56.1 Counterstatement, *Dinler v. City of New York*, 04-civ-7921, DE # 280, at ¶ 30).  The evidence cited to support the contention that "Ms. Waters was not being sought by law enforcement officials for the commission of any other offense, nor would the officers have had any reason to suspect that she was" is insufficient to establish this fact.  (*Id.*).

118.     Paragraph 118 of the Schiller Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial, because intelligence information revealed that people expected to engage in unlawful activity during the RNC would use fraudulently obtained identification or authentic looking or real looking false identification and it was not difficult to obtain false identification or fraudulent identification at the time of the 2004 RNC. (*Dinler* DE # 280 at ¶ ¶ 48-49).    It is undisputed that Ms. Maurer was fingerprinted.  It is disputed that no officer expressed any doubts about Ms. Maurer's identity (*Id.*).  The evidence cited to support the contention that "Ms. Maurer was not being sought by law enforcement officials for the commission of any other offense, nor would the officers have had any reason to suspect that she was" is insufficient to establish this fact.  (*Id.*).

**_MacNamara v. City of N.Y., et al_ 04-cv-9216 (RJS)(JCF)**

1. Paragraph 1 of the MacNamara Plaintiffs Response to Defendants' Statement of Undisputed Facts in Support of their Motion for Summary Judgment On the City's "No Summons Policy" and "Fingerprinting Policy" During the RNC, filed in _MacNamara v. City of N.Y., et al_ 04-cv-9216 (RJS)(JCF) as Docket Entry No. 478 ("_MacNamara_ Opp. 56.1") is not a statement of material fact which would create a genuine issue for trial. In addition, Defendants incorporate by reference their response to Paragraphs 19 and 20 of the _Schiller_ Opp. 56.1 (discussing immateriality of evidence regarding Quality of Life Team).

2. Paragraph 2 of the _MacNamara_ Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial. In addition, Defendants incorporate by reference their response to Paragraphs 19 and 20 of the _Schiller_ Opp. 56.1 (discussing immateriality of evidence regarding Quality of Life Team).

3. Paragraph 3 of the _MacNamara_ Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial. In addition, Defendants incorporate by reference their response to Paragraphs 19 and 20 of the _Schiller_ Opp. 56.1 (discussing immateriality of evidence regarding Quality of Life Team).

4. Paragraph 4 of the _MacNamara_ Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial. In addition, Defendants incorporate by reference their response to Paragraphs 19 and 20 of the _Schiller_ Opp. 56.1 (discussing immateriality of evidence regarding Quality of Life Team).

5.  Paragraph 5 of the *MacNamara* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition, Defendants incorporate by reference their response to Paragraphs 19 and 20 of the *Schiller* Opp. 56.1 (discussing immateriality of evidence regarding Quality of Life Team).

6.  Paragraph 6 of the *MacNamara* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition, Defendants incorporate by reference their response to Paragraphs 19 and 20 of the *Schiller* Opp. 56.1 (discussing immateriality of evidence regarding Quality of Life Team).

7.  Paragraph 7 of the *MacNamara* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition, Defendants incorporate by reference their response to Paragraphs 19 and 20 of the *Schiller* Opp. 56.1 (discussing immateriality of evidence regarding Quality of Life Team).

8.  Paragraph 8 of the *MacNamara* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition, Defendants incorporate by reference their response to Paragraphs 19 and 20 of the *Schiller* Opp. 56.1 (discussing immateriality of evidence regarding Quality of Life Team).

9.  Paragraph 9 of the *MacNamara* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition, Defendants incorporate by reference their

response to Paragraphs 19 and 20 of the *Schiller* Opp. 56.1 (discussing immateriality of evidence regarding Quality of Life Team).

10. Paragraph 10 of the *MacNamara* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial. In addition, Defendants incorporate by reference their response to Paragraphs 19 and 20 of the *Schiller* Opp. 56.1 (discussing immateriality of evidence regarding Quality of Life Team).

11. Paragraph 11 of the *MacNamara* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial. In addition, Defendants incorporate by reference their response to Paragraphs 19 and 20 of the *Schiller* Opp. 56.1 (discussing immateriality of evidence regarding Quality of Life Team).

12. Paragraph 12 of the *MacNamara* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial. In addition, Defendants incorporate by reference their response to Paragraphs 19 and 20 of the *Schiller* Opp. 56.1 (discussing immateriality of evidence regarding Quality of Life Team).

13. Paragraph 13 of the *MacNamara* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial. In addition, Defendants incorporate by reference their response to Paragraphs 19 and 20 of the *Schiller* Opp. 56.1 (discussing immateriality of evidence regarding Quality of Life Team).

14. Paragraph 14 of the *MacNamara* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition Defendants dispute this fact because Chief McManus was not a policy maker for purposes of adopting the Policies and was not present for the Quality of Life Committee presentation.   Deposition of John McManus ("McManus Depo.") at pp.   229:19-230:9, annexed to 11/23/11 Dougherty Decl. as Ex. S ("I would attend meetings at the host committee with the RNC, sometimes very general meetings, and never tactical discussions about really anything."); McManus Depo. 225:13-227:5 ( "I don't recall being at a meeting where … issues [regarding the Policies] were discussed"); McManus Depo. 232:3-7 ( "[I]t would have been physically impossible for me to be at every meeting, and I don't recall being at this one."); McManus Depo. 237:6-25 ("As I said, I don't recall this subcommittee. I don't recall being at a presentation of [the Quality of Life] subcommittee.")   In addition, Chief McManus had retired from the NYPD at the time he was deposed.  McManus Depo. 20:23-21:13; McManus Depo. 43:2-7; McManus Depo. 186:5-9 (McManus retired on 12/01/2006, about 2 years after the RNC).

15. Paragraph 15 of the *MacNamara* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition Defendants dispute this fact because the citation provided only indicates that retired Chief Colgan had an "understanding" about certain individuals who may be fingerprinted.  In addition this is an immaterial statement because Chief Colgan was not a policy maker for purposes of the Policies and was not present for meetings regarding the decision to adopt the fingerprinting policy.  Deposition of John J. Colgan ("Colgan Dep.") at p. 75:11-76:2, annexed to 11/23/11 Dougherty Decl. as Ex. T (Colgan does not know who made the decision to adopt the

Policies and was not consulted about the decision); Colgan Depo. 116:21-119:11 ("I wasn't present for these discussions, and I don't know who had them"); Colgan Depo. 127:6-17 (does not know who made decision to adopt policies); Colgan Depo. 128:12-17 (Chief Colgan was not "present at any meeting where the specific issue of fingerprinting everyone in connection with the RNC was discussed"); Colgan Depo. 377: 7-22 (same); Colgan Depo. 503:16-504:2 (same); Colgan Depo. 1225:6-1226:5 (same); Colgan Depo. 1235:23-1236:10 (same).  In addition, Chief Colgan was not the primary consumer of the intelligence information.   Colgan Depo. 326:9-24; Colgan Depo. 497:8-11 (Colgan testified that he "was not privy to specific intelligence.").

16. Paragraph 16 of the *MacNamara* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition, Defendants dispute this fact.  *See* Response to MacNamara Opp 56.1 at ¶ 15 *supra*.

17. Paragraph 17 of the *MacNamara* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  Defendants incorporate by reference their response to Paragraphs 19 and 20 of the *Schiller* Opp. 56.1 (discussing immateriality of evidence regarding Quality of Life Team).  In addition, Defendants dispute this fact.  *See* Response to MacNamara Opp 56.1 at ¶ 15 *supra*.

18. Paragraph 18 of the *MacNamara* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial.  In addition, Defendants incorporate by reference their response to Paragraphs 19 and 20 of the *Schiller* Opp. 56.1 (discussing

immateriality of evidence regarding Quality of Life Team). Defendants also dispute this fact. *See* Defendants' Response to Paragraph 15 of the *MacNamara* Opp. 56.1.

19. Paragraph 19 of the *MacNamara* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial. In addition, Defendants incorporate by reference their response to Paragraphs 19 and 20 of the *Schiller* Opp. 56.1 (discussing immateriality of evidence regarding Quality of Life Team). In addition, Defendants dispute this fact. *See* Response to MacNamara Opp 56.1 at ¶ 15 *supra*.

20. Paragraph 19 of the *MacNamara* Opp. 56.1 is not a statement of material fact which would create a genuine issue for trial. In addition, Defendants incorporate by reference their response to Paragraphs 19 and 20 of the *Schiller* Opp. 56.1 (discussing immateriality of evidence regarding Quality of Life Team). In addition, Defendants dispute this fact. *See* Response to MacNamara Opp 56.1 at ¶ 15 *supra*.

Dated: New York, New York
       November 23, 2011

                                      Respectfully submitted,

                                        MICHAEL A. CARDOZO
                                        Corporation Counsel of the City of New York
                                          Attorneys for Defendants
                                        100 Church Street, Room 3-143
                                        New York, New York 10007
                                        Tel: 212-788-8342
                                        Fax: 212-788-9776

                    By:           /s/
                                          Jeffrey A. Dougherty
                                        Special Federal Litigation