UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MICHAEL SCHILLER, FRANCESCA
FIORENTINI, ROBERT CURLEY, and
NEAL CURLEY,                                                    ECF Cases
                Plaintiffs,

         v.                                                  04 Civ. 7922 (RCS) (JCF)

The CITY OF NEW YORK; RAYMOND
KELLY, Commissioner of the New York City
Police Department; TERENCE MONAHAN,
Assistant Chief of the Bronx Bureau of the New
York City Police Department,

                Defendants.
-----------------------------------------------------------x
HACER DINLER, ANN MAURER,
ASHLEY WATERS,
                Plaintiffs,
                                                                04 Civ. 7921 (RCS) (JCF)
         v.

The CITY OF NEW YORK; RAYMOND
KELLY, Commissioner of the New York City
Police Department; and Inspector JAMES ESSIG,
New York City Police Department

                Defendants.
-----------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR RECONSIDERATION**

      The City has moved this Court to reconsider the portion of its September 30, 2012 Order ruling that the defendants are liable for violations of section 160.10 of New York's Criminal Procedure Law for their policy of fingerprinting all persons arrested for violations during the 2004 Republican National Convention. In support of its motion, the City asserts that the Court overlooked arguments the City made in its original briefing that the defendants are entitled to

"governmental immunity" because, according to the City, the decision to adopt the blanket fingerprinting policy was a permissible discretionary act.

Though the Court's order did not expressly discuss the City's governmental immunity claim, its analysis plainly encompassed and foreclosed that claim. The Court analyzed section 160.10 and held that the defendants' blanket fingerprinting policy violated the plain terms of the statute's limited grant of authority to fingerprint certain individuals charged with violations. Thus, while certain discretionary decisions are entitled to state law immunity, the Court's analysis of section 160.10 necessarily disposes of any suggestion that the defendants had the legal discretion to adopt the blanket fingerprinting policy. Given this, no basis exists for believing the Court overlooked this issue so as to warrant reconsideration.

Moreover, even if the Court were considering this matter anew, the City has failed to point to any controlling authority that would dictate a different outcome. None of the cases or arguments it offered in its original briefing establishes an immunity defense here, and none of the many new cases the City improperly cites in its reconsideration motion provides any additional support for its position. Simply put, the defendants had no discretion to suspend section 160.10.

## LEGAL STANDARD

The City moves for reconsideration pursuant to Rule 6.3 of the Local Rules of the Southern and Eastern Districts. *See* Defendants' Notice of Motion (Nov. 7, 2012). As this Court recently explained, the standards governing such a motion are strict and narrow:

> A motion for reconsideration under . . . Rule 6.3 will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court. Alternatively, a motion for reconsideration may be granted to correct a clear error or prevent manifest injustice. The standard for reconsideration is strict and the decision is within the sound discretion of the district court. Moreover, importantly, a motion for reconsideration may not be

used to advance new facts, issues, or arguments not previously presented to the
Court, nor may it be used as a vehicle for re-litigating issues already decided by
the Court.

*R.B. ex rel. A.B. v. Dep't of Educ. of City of New York*, 2012 WL 2588888, at *3 (S.D.N.Y. July 2, 2012) (Sullivan, J.) (citations, quotations, and emendations omitted).

## ARGUMENT

The City correctly notes that in its original briefing the defendants asserted a claim for "governmental immunity" for violations of section 160.10 of the Criminal Procedure Law and further correctly notes that the Court did not expressly discuss that immunity claim in granting summary judgment to the plaintiffs. *See* Defendants' Motion for Reconsideration at 2 & n.1 (Nov. 7, 2012). No basis exists, however, for granting the City's motion for reconsideration of the Court's grant of summary judgment to the plaintiffs.

As the parties discussed in their original briefing, under New York law some government officials are entitled to "governmental immunity" for actions they take that are committed to their discretion. *See* Defendants' Memorandum of Law in Support of Summary Judgment at 54-56 (Oct. 3, 2011); Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 24 (Nov. 3, 2011). The key issue presented by the City's claim to governmental immunity, therefore, was whether it was within the defendants' discretion to adopt its blanket fingerprinting policy.

A. <u>No Basis Exists for Believing this Court "Overlooked" the City's Immunity Claim</u>.

To the extent the City's motion to reconsider is premised on the suggestion that the Court "overlooked" the City's immunity claim, Defendants' Reconsideration Motion at 2, that suggestion is without merit. Whatever may explain the absence of an express discussion of the

3


governmental immunity claim, the Court's analysis of the plaintiffs' fingerprinting claim and of section 160.10 plainly encompasses the discretion issue central to the defendants' claim. As this Court explained in its ruling,

> New York criminal procedure law provides that arrestees for felonies or misdemeanors *must* be fingerprinted. The statute further provides in relevant part that a police officer *may* take fingerprints in other cases if the officer "(a) [i]s unable to ascertain such person's identity; or (b) [r]easonably suspects that the identification given by such person is not accurate." Plaintiffs argue that their fingerprinting was unlawful because they were arrested on violations, not misdemeanors or felonies, and had valid identification that the police had no reason to believe was inaccurate.
>   Defendants appear to concede that the statute does not permit fingerprinting for violations as a general matter. Moreover, it is undisputed that the majority of Plaintiffs in fact possessed valid identification. Thus, the only question is whether Defendants had reasonable grounds to suspect that Plaintiffs' means of identification were inaccurate. The record reflects that they did not.
>   . . . . .
>   Because Defendants have not presented any grounds for reasonable suspicion that the protestors' identification documents were or would be inaccurate, the Court has little difficulty concluding that the Fingerprinting Policy violated Section 160.10(1). That provision's plain language does not permit the state to suspend ordinary enforcement of fingerprinting laws at whatever time, or with regard to whatever group, the state sees fit. To the contrary, Section 160.10(1), on its face, provides for an *individualized* determination as to the likelihood that the identification given was inaccurate. Defendants concede that they did not engage in such an individualized process. Accordingly, the Court finds that the Fingerprinting Policy adopted during the RNC violated Section 160.10.

*Dinler v. City of New York*, 2012 WL 4513352, at *18-19 (S.D.N.Y. Sept. 30, 2012) (citations omitted; emphasis in original).

This Court's recognition of the mandatory and clearly defined terms of section 160.10, which is entirely correct and which the City does not contest, forecloses the City's claim that it had the discretion under section 160.10 to adopt its blanket fingerprinting policy. Given this, no basis exists for contending that this Court's original order overlooked the City's discretion-based immunity claim.

B.  <u>No Basis Exists for Concluding this Court Committed Clear Error</u>.

Fairly read, the City's motion goes well beyond the suggestion the Court overlooked the defendants' governmental immunity claim, as the City does not simply call the Court's attention to the issue and to the parties' original briefing.  Rather, the City reargues at length the merits of its immunity claim, and in doing so cites many cases it did not cite in its original briefing.[1]  Setting aside the propriety of using a reconsideration motion to reargue a point and to introduce new authority that could and should have been cited in original briefing, the City's arguments are without substantive merit.

As an initial matter, the plaintiffs respectfully refer the Court to the parties' original briefing on this issue.  The plaintiffs reiterate the arguments they made there in response to the City's original arguments.  *See* Plaintiffs' Summary Judgment Opposition at 24.

As for the City's lengthier argument on reconsideration and the additional authorities, they provide no further basis for the Court to find the defendants entitled to governmental immunity.  The City repeatedly asserts the undisputed legal proposition that discretionary judgments are immune under New York law and cites a slew of new cases for that proposition.

Nowhere, however, does the City explain *why* the decision to adopt the blanket fingerprinting policy should or could be considered a discretionary act.  This is not surprising, as

---

[1] Ten of the thirteen cases the defendants cite regarding governmental immunity were not mentioned in their summary judgment briefs.  *See Donald v. State of New York*, 17 N.Y.3d 389 (2011); *Tango by Tango v. Tulevech*, 61 N.Y.2d 34 (1983); *Buonanotte v. Noonan*, 534 F. Supp. 2d 385 (E.D.N.Y. 2008); *Graham v. City of New York*, 2011 WL 3625074 (E.D.N.Y. Aug. 17, 2011); *Estate of Rosenbaum by Plotkin v. City of New York*, 982 F. Supp. 894 (E.D.N.Y. 1997); *Arteaga v. State*, 72 N.Y.2d 212, 218 (1988); *Rottkamp v. Young*, 21 A.D.2d 373 (1964); *Kenavan v. City of New York*, 70 N.Y.2d 558 (1987); *Tarter v. State*, 68 N.Y.2d 511 (1986); *Murray v. Brancato*, 290 N.Y. 52 (1943).  Discussing or analyzing cases that were not cited in the original motion papers "is improper on a motion for reconsideration." *Hayles v. Advanced Travel Mgmt. Corp.*, 2004 WL 117597, at *1 (S.D.N.Y. Jan. 26, 2004).

the plain terms of section 160.10, as this Court explained, allow fingerprinting only when an individualized determination is made that a person's identification may not be accurate. *See Dinler*, 2012 WL 4513352, at *18-19.[2] Whatever might be said about the discretion inherent in a police officer's evaluation of an identification produced by a specific arrestee, the defendants' blanket fingerprinting policy was nothing short of a suspension of the statute, which this Court squarely held was unlawful: "[Section 160.10's] plain language does not permit the state to suspend ordinary enforcement of fingerprinting laws at whatever time, or with regard to whatever group, the state sees fit." *Id.* at *19.[3]

As for the cases the City cites, none offers the defendants any support. Setting aside the litany of cases it cites for the proposition that immunity attaches to discretionary decisions, the City appears to invoke four cases in support of its specific contention that the defendants'

---

[2] In asserting that adoption of the blanket fingerprinting policy was a discretionary act, the City misleadingly contends that the Court "concluded that there was insufficient evidence to support the conclusion of a risk of widespread use of false identities." Defendants' Supplemental Memorandum at 3. In truth, the Court found, correctly, that there was no evidence that the City had a basis to believe protesters would bring false identification with them to the Convention. *See Dinler*, 2012 WL 4513352 at *18 ("Contrary to Defendants' assertions that protestors were directed to bring false identification, there does not seem to be any suggestion in the intelligence provided by Defendants that RNC protesters were particularly likely, or were instructed, to carry *false* identification."; emphasis in original).

[3] Nor does the City acknowledge that, even in instances where discretionary acts are at issue, New York's governmental-immunity doctrine confers only *qualified* immunity on officials unless those acts are *judicial* or *quasi-judicial* in nature. *See Arteaga v. State of New York*, 72 N.Y.2d 212, 215-217 (1988) (explaining that discretionary acts that are not judicial or quasi-judicial receive only qualified immunity); *Davis v. City of New York*, 373 F. Supp. 2d 322, 338-39 (S.D.N.Y. 2005) (Lynch, J.) (same). The City does not and could not contend that the defendants' adoption of the blanket fingerprint policy was a judicial or quasi-judicial act. And given this Court's correct analysis of section 160.10, no basis exists to suggest that the defendants' actions were reasonable under the statute. *See Arteaga*, 72 N.Y.2d at 216 (noting that qualified immunity shields the government except when there is bad faith "or the action is taken without a reasonable basis"). Thus, even if there were a discretionary act at issue here -- and there is not -- the defendants still would not be entitled to qualified governmental immunity available under New York law.

decision to adopt the blanket-fingerprinting policy was a discretionary one entitled to immunity: *Donald v. State of New York*, 17 N.Y.3d 389 (2011); *Jackson v. New York City Transit Auth.*, 30 A.D.3d 289 (1st Dep't 2006); *Kenavan v. City of New York*, 70 N.Y.2d 558 (1987); and *Tango by Tango v. Tulevech*, 61 N.Y.2d 34 (1983). *See* Defendants' Motion for Reconsideration at 2-3; Defendants' Supplemental Memorandum of Law in Support of Their Motion for Reconsideration at 3-4 (Nov. 14, 2012).[4]

None of these cases, however, involved a court granting immunity to a defendant who violated the plain terms of a statute, the situation presented here. Moreover, they all are readily distinguishable, with one case even rejecting an immunity claim. *See Donald*, 17 N.Y.3d at 395-96 (holding that prison officials had engaged in a discretionary act entitled to immunity when they added conditions of supervised release to terms of prisoners when state statute required such terms to be included in all sentences, even though prison officials mistakenly concluded they had authority to impose such terms); *Jackson*, 30 A.D.3d at 290 (<u>denying</u> immunity for lack of handholds or grab bars on bus because defendants did not demonstrate that they had considered the question and determined that existing safety precautions would be sufficient); *Kenavan*, 70 N.Y.2d at 569 (granting immunity for Fire Department captain's tactical decision of where to park fire engine during fire, where "every witness and every regulation left room for judgment and discretion in these matters, depending on the particular circumstances presented"); *Tango*, 61 N.Y.2d at 41 (granting immunity where supervisor of Intake Unit at Family Court Probationary

---

[4] The City also cites four cases -- *Donald*, *Tango*, *Murray v. Brancato*, 290 N.Y. 52 (1943); and *Tartar v. State of New York*, 68 N.Y.2d 511 (1986) -- for the proposition that discretionary decisions motivated by malice are entitled to immunity. *See* Defendants' Supplemental Memorandum at 4. Setting aside that malice is not at issue here, this proposition applies only where judicial immunity is involved, as the language the City quotes from *Tartar* makes clear: "It is a well-settled principle that absolute immunity protects quasi-judicial decisions even when tainted by improper motives or malice." *See generally supra* n.3.

Department acted within her discretionary authority in permitting mother to retain custody of her children). Consistent with these cases, granting immunity in this case would be particularly inappropriate given that section 160.10 expressly seeks to protect individuals, like the hundreds of plaintiffs in the various cases before this Court, from the very action the defendants took in adopting the blanket fingerprinting policy.

## CONCLUSION

For all the foregoing reasons and for all the reasons set out in the plaintiffs' opposition to the City's original summary judgment motion, the *Schiller* and *Dinler* plaintiffs urge the Court to deny the defendants' motion for reconsideration.

                Respectfully submitted,

                /s/ *Christopher Dunn*
                _____
                CHRISTOPHER DUNN
                DANIEL MULLKOFF
                TAYLOR PENDERGRASS
                New York Civil Liberties Union Foundation
                125 Broad Street, 19th Floor
                New York, N.Y. 10004
                (212) 607-3300

Dated: December 12, 2012        Counsel for the *Schiller* and *Dinler* Plaintiffs
      New York, N.Y.